KW LAW, LLP
Andrea S. Tazioli, SBN 026621
6122 N. 7th St., Suite D
Phoenix, AZ 85014
Telephone: (602) 609-7367
andrea@kwlaw.co

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Roberto J. Gonzalez (*pro hac vice*)
Jake E. Struebing (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
rgonzalez@paulweiss.com
jstruebing@paulweiss.com

*Attorneys for Defendants Binance Capital Management Co., Ltd., Changpeng Zhao, Yi He, and Ted Lin*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Cox, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CoinMarketCap OpCo, LLC; Binance Capital Management Co., Ltd. d/b/a Binance and Binance.com; BAM Trading Services Inc. d/b/a Binance.US; Changpeng Zhao; Catherine Coley; Yi He; Ted Lin; and Does I-X;<br><br>Defendants. | Case No. 21-cv-08197-PCT-SMB<br><br>**DEFENDANTS BINANCE CAPITAL MANAGEMENT CO., LTD., CHANGPENG ZHAO, YI HE, AND TED LIN'S MOTION TO DISMISS THE COMPLAINT**<br><br>**(Oral Argument Requested)** |

Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6), Defendants Binance Capital Management Co. Ltd. ("BCM") and Changpeng Zhao, Yi He, and Ted Lin (collectively, the "Binance Individual Defendants") hereby move to dismiss Plaintiff's Complaint for lack of personal jurisdiction, failure to state a claim, and insufficient service of process on the Binance Individual Defendants.

This Motion is supported by the accompanying Memorandum of Points and Authorities, the entire record in this action, and the good faith certification of counsel for BCM and the Binance Individual Defendants filed concurrently herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This litigation is about cryptocurrency rankings on a website operated by CoinMarketCap OpCo, LLC ("CoinMarketCap"). Plaintiff takes issue with how CoinMarketCap has valued a particular cryptocurrency called HEX based on rankings criteria that are publicly disclosed. None of this has anything to do with BCM or the Binance Individual Defendants other than the fact that BCM acquired CoinMarketCap in 2020. The claims against BCM and the Binance Individual Defendants should be dismissed for several reasons.

*First,* Plaintiff has not—and cannot—meet his burden of establishing that this Court has personal jurisdiction over BCM, a foreign investment company with no alleged officers, employees, or operations in the United States, much less Arizona. BCM is not "at home" in Arizona for purposes of general jurisdiction. *See Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014). Nor is there specific jurisdiction because the alleged suppression of HEX is not the result of any affirmative act by BCM seeking to engage with the forum, and Plaintiff's alleged injuries do not arise from, or relate to, any alleged contacts by BCM with the forum. Indeed, the purported scheme to deflate the value of HEX has no connection whatsoever to Arizona other than Plaintiff's alleged injury happened to occur while he was residing there. Plaintiff's attempt to conflate BCM with Binance Holdings Ltd., a foreign cryptocurrency exchange platform, also fails to

demonstrate jurisdiction over BCM.  Binance Holdings Ltd. is a separate entity and, in any event, multiple federal courts have found no personal jurisdiction over Binance Holdings Ltd. based on similar allegations to those asserted here.  *See Reynolds* v. *Binance Holdings Ltd.*, 481 F. Supp. 3d 997 (N.D. Cal. 2020); *Guarini* v. *Doe*, No. 21-cv-81890-DMM (S.D. Fla. Apr. 5, 2022), ECF No. 25.

*Second*, the Complaint against BCM should be dismissed for the additional reason that Plaintiff fails to state a claim.  The claim under the Commodity Exchange Act ("CEA") fails because Plaintiff has not pleaded facts supporting any of the required elements—market influence, artificial pricing, causation, intent, or damages.  *Respondeat superior* liability also fails because it is not cognizable under the CEA to hold parent companies liable for the acts of their subsidiaries.  The claim under the Arizona Consumer Fraud Act is a nonstarter because there was no sale or advertisement of merchandise and, in any event, Plaintiff fails to allege any fraudulent misrepresentation, intent, reliance, or damage as to BCM.  Finally, the claims for control person liability and antitrust liability are facially deficient and lack any legal basis.

*Third*, the claims against the Binance Individual Defendants should be dismissed for several independent reasons. As with BCM, there is no personal jurisdiction over the Binance Individual Defendants, which Plaintiff himself alleges reside in Taiwan, Malta, and outside of Arizona.  Compl. ¶¶ 32–34.  There are no allegations that any of these executives had any contact with Arizona.  The fiduciary shield doctrine also prevents the assertion of personal jurisdiction over the Binance Individual Defendants based on nothing more than an attenuated association with BCM.  Alternatively, the claims against the Binance Individual Defendants should be dismissed for failure to state a claim because they are inadequately pled and lack any legal basis.  Finally, although this Court permitted alternative service, the Binance Individual Defendants wish to preserve their argument that Plaintiff's attempt to serve them by Twitter alone was insufficient and does not comport with constitutional due process.

## BACKGROUND

BCM is a foreign investment company organized under the laws of the British Virgin Islands.[1]  In April 2020, BCM acquired CoinMarketCap, which is incorporated and headquartered in Delaware and operates a website for tracking and ranking various cryptocurrencies and assets.  Compl. ¶¶ 13, 14, 16.  CoinMarketCap's mission is to empower "retail users with unbiased, high quality and accurate information for drawing their own informed conclusions."[2]  BCM is the corporate parent of CoinMarketCap, but there are no well-pled factual allegations that BCM controls the day-to-day management or operations of CoinMarketCap.

In this litigation, Plaintiff takes issue with the way in which CoinMarketCap ranks certain cryptocurrencies based on criteria that are publicly disclosed and available to all. Specifically, the Complaint alleges that, as of September 13, 2021, a particular cryptocurrency called HEX should have been ranked sixth near the top of the first page of results based on its market capitalization alone (notwithstanding the numerous other factors CoinMarketCap identifies as relevant to its evaluating rankings).  Compl. ¶¶ 82–86.  Instead, HEX was ranked 201 on the third page of results.  *Id.* ¶ 87.  This ranking, according to Plaintiff, artificially suppressed the value of HEX since September 27, 2020, and inflated other, higher-ranked cryptocurrencies.  *Id.* ¶¶ 93, 114–18.  Plaintiff allegedly acquired an unspecified amount of HEX prior to the alleged suppression period, but then sold an unspecified amount of HEX during the suppression period, all while residing in Arizona.  *Id.* ¶¶ 9–12.

The Complaint is brought against CoinMarketCap, its parent company BCM, a separate U.S. entity called BAM Trading Services Inc. ("BAM"), Catherine Coley, the former CEO of BAM, and three individuals affiliated with non-party Binance Holdings

---

[1]  *See* Binance Capital Management Co., Ltd., OPENLEIs, http://openleis.com/legal_entities/254900ENW84IEWDY1T88/Binance-Capital-Management-Co-Ltd- (last updated May 18, 2022).

[2]  *About CoinMarketCap*, COINMARKETCAP, https://coinmarketcap.com/about/ (last visited Apr. 28, 2022) (cited in Compl. ¶¶ 14 n.2, 76 n.31).

Ltd.  Those individuals are Binance Holdings Ltd.'s Chief Executive Officer Changpeng Zhao, Chief Marketing Officer Yi He, and Chief Growth Officer Ted Lin.  The Complaint asserts that the Binance Individual Defendants are "control persons of the Corporate Defendants," that they had "significant knowledge" about, and "financial interests" in, certain cryptocurrencies.  Compl. ¶¶ 50, 51, 104.

Plaintiff brings (i) a claim against all Defendants for price manipulation under the Commodity Exchange Act (Compl. ¶¶ 157–93); (ii) a claim against BCM for strict liability under the Commodity Exchange Act (*id.* ¶¶ 194–216); (iii) a claim against BCM under the Arizona Consumer Fraud Act (*id.* ¶¶ 217–35); (iv) a claim against the Binance Individual Defendants for control person liability under the Arizona Consumer Fraud Act (*id.* ¶¶ 236–56); and (v) a claim against BCM for alleged violations of federal and state antitrust laws (*id.* ¶¶ 257–62).

## ARGUMENT

## I.      THERE IS NO PERSONAL JURISDICTION OVER BCM.

The Complaint should be dismissed with respect to BCM for lack of personal jurisdiction.  Plaintiff bears the burden of establishing a *prima facie* showing of personal jurisdiction.  *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).[3]  Here, the Complaint is facially deficient.  Plaintiff does not allege facts that come close to establishing that BCM is "essentially at home" in Arizona for purposes of general jurisdiction or has engaged in the "purposeful direction" or "availment" necessary to support specific jurisdiction.  And none of the events involving the purported suppression of HEX are alleged to have any connection, much less a sufficient one, to Arizona.  Because Plaintiff has not and cannot allege any basis for personal jurisdiction over BCM in Arizona, the Complaint should be dismissed.

---

[3]  "Because Arizona's long-arm statute extends jurisdiction 'to the maximum extent permitted by the . . . Constitution of the United States,' the Court's personal jurisdiction inquiry largely collapses into an analysis of Due Process."  *Patterson* v. *Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1175 (D. Ariz. 2010) (quoting Ariz. R. Civ. P. 4.2(a)).

### A.     The Court Lacks General Jurisdiction Over BCM.

Plaintiff cannot meet his burden of establishing a *prima facie* case of general personal jurisdiction over BCM.  A court may assert "general jurisdiction over a foreign corporation only if the corporation's connections to the forum state 'are so "continuous and systematic" as to render it essentially at home in the forum State.'" *Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)).  A plaintiff invoking general jurisdiction must meet an "exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger* v. *Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004).  The paradigmatic basis for general jurisdiction exists when the corporation is incorporated or has its principal place of business in the forum state.  *See Daimler*, 571 U.S. at 137.  "Only in an 'exceptional case' will general jurisdiction be available anywhere else."  *Ranza* v. *Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Martinez*, 764 F.3d at 1070).

Here, Plaintiff does not allege that BCM is incorporated in Arizona, or that it maintains its principal place of business in the United States, let alone Arizona.  In the absence of these paradigmatic bases, general jurisdiction can only be established where the company's contacts with the forum state are "so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Daimler*, 571 U.S. at 139.

No such exceptional case exists here.[4]  While Plaintiff argues that it is not clear where BCM is headquartered, Compl. ¶ 35, BCM's "lack of any headquarters does not make [Arizona] its jurisdictional home."  *Reynolds*, 481 F. Supp. 3d at 1003.  And Plaintiff has failed "to identify any other facts, alleged or otherwise, that would make this

---

[4]   The only case of which we are aware that has ever been found to satisfy this test is *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as the Supreme Court recognized in *Daimler*, 571 U.S. at 130, n.8, 139, n.19.  In *Perkins*, a Philippines mining company was found to be subject to general jurisdiction in Ohio, despite its lack of incorporation and physical operations there, because wartime exigency had forced management to run the company from Ohio. 342 U.S. at 447–48.  The unique circumstances in *Perkins* are far removed from the situation here.

case exceptional under *Daimler* and place [BCM] 'at home' in [Arizona]." *Id.* Plaintiff does not even allege that BCM has any business contacts in the forum, much less so many contacts as to render BCM essentially at home in Arizona. *See BNSF Ry. Co.* v. *Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (reiterating that "the general jurisdiction inquiry does not focus on the magnitude of the defendant's in-state contacts," and the mere conducting of business "does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum]" (cleaned up)); *see also Ranza*, 793 F.3d at 1069 (finding no general jurisdiction where a foreign company had dozens of employees working at U.S. affiliate, averaged 47 trips per month to U.S. affiliate, and sold products in forum state's stores); *Handsome Music, LLC* v. *Etoro USA LLC*, LACV 20-08059-VAP (JCx), 2020 WL 8455111 at *5 (C.D. Cal. Dec. 17, 2020) (finding no general jurisdiction over online trading platform even though it maintained a "highly interactive website" and conducted "internet advertising" in the forum); *Sutcliffe* v. *Honeywell Int'l, Inc.*, No. CV–13–01029–PHX–PGR, 2015 WL 1442773, at *5 (D. Ariz. Mar. 30, 2015) (finding no general jurisdiction over plane manufacturer despite numerous "purchases of aerospace-related products from Arizona companies").

Instead, Plaintiff's jurisdictional allegations reduce to equating BCM, a foreign investment company, with Binance Holdings Ltd., a separate company that operates a foreign cryptocurrency exchange. Plaintiff then asserts that BCM "has regularly and intentionally engaged in numerous online cryptocurrency transactions inside the United States" and "has promoted, inside the United States, the sale of digital assets on its exchange." Compl. ¶ 35. As an initial matter, there is no basis to equate BCM with Binance Holdings Ltd., simply because they both have "Binance" in their names. Moreover, none of the conclusory assertions made about Binance Holdings Ltd.'s contacts with the United States are sufficient to give rise to general personal jurisdiction.

For example, a federal court declined to find general jurisdiction over Binance Holdings Ltd. in California based on the allegation that "the majority of Binance's

customers are in the United States" because, even if it were true, it does not "illustrate that Binance has the requisite affiliations with [the forum] to be essentially at home." *Reynolds*, 481 F. Supp. 3d at 1003, 1004.  More recently, a second federal court found that Binance Holdings Ltd. is not subject to general jurisdiction in Florida based on the allegation that Binance "serves customers in the United States . . . through its United States-based affiliate Binance.US." *Guarini*, ECF No. 25, at 5.  And a third federal court held that Binance Holdings Ltd. need not register as an exchange under the federal securities laws because it is not "within or subject to the jurisdiction of the United States." *Lee* v. *Binance*, No. 20-cv-02803-ALC (S.D.N.Y. Mar. 31, 2022), ECF No. 77, at 8.  The court rejected allegations about Binance's U.S. contacts as insufficient to show that the company operates as "a domestic exchange." *Id.*  Plaintiff adds nothing to the jurisdictional allegations already considered and rejected by these courts.[5]

## B.    The Court Lacks Specific Jurisdiction Over BCM.

Plaintiff has also failed to meet his burden of establishing specific personal jurisdiction over BCM.  To adequately plead specific jurisdiction over a foreign defendant, a plaintiff must establish: (i) the defendant either purposefully directed its activities toward the forum or purposefully availed itself of the benefits afforded by the forum; and (ii) the claim arises from, or relates to, the defendant's forum-related activities.  *See Williams*, 851 F.3d at 1023.  Plaintiff bears the burden of satisfying these first two prongs of the analysis. *See Schwarzenegger*, 374 F.3d at 802.  Only if the

---

[5]   In any event, Plaintiff's assertion that Binance Holdings Ltd. regularly engages in transactions with U.S. customers is belied by his very own allegations.  As alleged in the Complaint, Binance.com has not been available to U.S. users since 2019—well before the alleged suppression period began in September 2020.  Compl. ¶ 36.  During the time period relevant to the allegations in the Complaint, Plaintiff alleges that U.S. users have bought, sold, and traded cryptocurrencies on the Binance.US platform, which is owned and operated by Defendant BAM Trading Services Inc.  *Id.* ¶ 41.  Plaintiff then questions "whether there is any meaningful distinction" between Binance Holdings Ltd. and BAM Trading Services.  *Id.* ¶ 67.  There is no basis to equate BAM with Binance Holdings Ltd., and then to equate Binance Holdings Ltd. with BCM.  Allegations must be supported by facts, not innuendo.  *See Barba* v. *Seung Heun Lee*, No. CV 09–1115–PHX–SRB, 2009 WL 8747368, at *4 (D. Ariz. Nov. 4, 2009).

plaintiff satisfies those prongs, does the burden shift to the defendant to show that the exercise of jurisdiction would not be reasonable.  *See Picot* v. *Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).

*First*, "purposeful direction" requires that the defendant have committed an intentional act "expressly aimed" at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state.  *Morrill*, 873 F.3d at 1142. By contrast, "purposeful availment" is typically an action by the defendant that invokes the benefits and protections of the laws in the forum state.  *See Pebble Beach Co.* v. *Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Neither purposeful direction nor purposeful availment is present here.  Plaintiff does not allege any conduct on the part of BCM, let alone that any of BCM's conduct was specifically directed at Arizona.  There are no allegations that BCM directed any conduct at Arizona with respect to the alleged suppression of HEX or the administration of CoinMarketCap's rankings system.  And there are no allegations that BCM's actions evinced "some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Picot*, 780 F.3d at 1212 (quoting *Sher* v. *Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)).

As discussed above, Plaintiff improperly conflates BCM with Binance Holdings Ltd. to argue that BCM "has regularly and intentionally engaged in numerous online cryptocurrency transactions inside the United States" and "has promoted, inside the United States, the sale of digital assets on its exchange."  Compl. ¶ 35.  There is no factual or legal basis to merge these two separate entities.  Moreover, mere accessibility of an interactive website or advertisement in the United States would not give rise to specific jurisdiction over a foreign corporation. *See Cybersell, Inc.* v. *Cybersell, Inc.*, 130 F.3d 414, 415 (9th Cir. 1997) (holding that "it would not comport with traditional notions of fair play and substantial justice . . . for Arizona to exercise personal jurisdiction over an allegedly infringing Florida web site advertiser who has no contacts with Arizona other than maintaining a home page that is accessible to Arizonans, and everyone else, over the Internet" (citations and internal quotation marks omitted)); *Handsome Music*,

2020 WL 8455111 at *7–11 (holding that defendant's "online trading platform" that included cryptocurrency, was not "directed at" forum state because plaintiffs failed to demonstrate the necessary "something more" than operating a website); *Matus* v. *Premium Nutraceuticals, LLC*, No. EDCV 15-01851 DDP (DTBx), 2016 WL 3078745, *3 (C.D. Cal. May 31, 2016) ("Absent 'something more' than the maintenance of a minimally interactive website, Plaintiff has not met its burden to satisfy even the purposeful availment prong of the specific jurisdiction test."). Here, there is no allegation that BCM (or Binance Holdings Ltd. for that matter) purposefully directed any specific advertisement or part of any website at Arizona. Because Plaintiff has demonstrated neither purposeful direction nor purposeful availment by BCM, he cannot satisfy the first requirement for establishing specific jurisdiction in Arizona.

*Second*, even if access to a website could constitute purposeful direction (which it does not), none of Plaintiff's claims arise out of, or relate to, that website activity. *See Ford Motor Co.* v. *Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). Specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co.* v. *Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017).

No such connection exists here. Plaintiff has not even attempted to allege that his claims arise out of, or relate to, any specific conduct BCM directed at Arizona. There are no allegations that BCM directed any action at Arizona with respect to the purported suppression of HEX or the administration of CoinMarketCap's rankings system. Indeed, the value of HEX was not allegedly suppressed because of anything that "independently occurred" in Arizona. *Walden* v. *Fiore*, 571 U.S. 277, 290 (2014). The only alleged connection to Arizona is that Plaintiff happened to be residing there at the time of the alleged injury. Compl. ¶¶ 9–12. But "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. Plaintiff "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over

him." *Id.* at 285; *see also Shaw* v. *Vircurex*, No. 18-cv-00067-PAB-SKC, 2019 WL 2636271, at *4 (D. Colo. Feb. 21, 2019) (finding lack of specific jurisdiction in cryptocurrency case where "the only alleged connection between defendants and Colorado "is harm suffered by a Colorado resident"). Plaintiff has thus failed to allege any connection, much less a sufficient one, between the suppression of HEX's value and Arizona.

Indeed, under Plaintiff's theory, BCM would be subject to specific jurisdiction in any state where a user of CoinMarketCap is purportedly harmed by out-of-state conduct—even though the claims lack any substantial connection to the forum and to BCM itself. Such an expansive view of jurisdiction is patently unreasonable and violates the "traditional notions of fair play and substantial justice" required by due process. *Int'l Shoe Co.* v. *State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citing *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)).

## II.   ALTERNATIVELY, THE CLAIMS AGAINST BCM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if personal jurisdiction were to exist over BCM—which it does not—the Complaint should be dismissed because Plaintiff fails to state a claim to relief that is plausible on its face. *See Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). BCM submits that Counts I, III, and V should be dismissed for the reasons stated in CoinMarketCap's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[6] It writes separately to address the pleading deficiencies in the remaining Counts.

In Count II, Plaintiff alleges that "Binance and Binance.US are jointly and severally liable for the torts of CoinMarketCap.com under the common law and statutory version of *respondeat superior* applicable to commodities" or alternatively "the corporate veil should be pierced between Binance, Binance.US, and CoinMarketCap.com." Compl. ¶¶ 215–16. Count II should be dismissed for two reasons. First, for the reasons stated in

---

[6]   *See* Def. CoinMarketCap OpCo, LLC's Mem. of P&A ISO Mot. to Dismiss, at 8–16.

CoinMarketCap's motion, there is no actionable claim against any Defendant for a violation of the CEA.  Thus, there can be no *respondeat superior* liability.  Second, even if there was an actionable claim under the CEA, BCM cannot be held liable for CoinMarketCap's alleged violation because 7 U.S.C. § 2(a)(1)(B) is not a mechanism through which parent companies can be held liable for the actions of their subsidiaries.  *See In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 515 (S.D.N.Y. 2004) ("Plaintiffs have not identified, nor has the Court located, any case in which corporate parents were held liable for the actions of their corporate subsidiaries under § 2(a)(1)(B).").  And Plaintiff has provided no factual basis to pierce the corporate veil other than BCM's "mere ownership" of CoinMarketCap, which is insufficient as a matter of law.  *See id.*

In Count IV, Plaintiff alleges that "federal and Arizona securities laws" make all Defendants other than CoinMarketCap "controlling persons jointly and severally liable" for CoinMarketCap's alleged violation of the Arizona Consumer Fraud Act.  Compl. ¶ 237.  Plaintiff, however, fails to cite any authority extending the concept of control person liability under the securities laws to the Arizona Consumer Fraud Act, or even allege that any Defendant actually had the power to control the activities of CoinMarketCap.  *See Eastern Vanguard Forex, Ltd.* v. *Ariz. Corp. Comm'n*, 79 P.3d 86, 99 (Ariz. Ct. App. 2003) (holding that control persons must have "the *power* to directly or indirectly control the activities of those persons or entities liable as primary violators").  Accordingly, Count IV, which has no legal or factual basis, should be dismissed.

## III.   THE CLAIMS AGAINST THE BINANCE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.

The claims against the Binance Individual Defendants should also be dismissed for lack of personal jurisdiction, failure to state a claim, and insufficient service.  Each of these individuals resides in a foreign country and the allegations against them amount to nothing more than vague descriptions of their alleged positions at Binance Holdings Ltd. (a separate entity that is not a defendant in this action), and the conclusory assertion that

they are "control persons of the Corporate Defendants," with "significant knowledge" and "financial interests" in certain cryptocurrencies.  Compl. ¶¶ 50, 51, 104.  The Complaint does not identify any affirmative conduct by these individuals, much less conduct in connection with the alleged suppression of HEX.  Finally, Plaintiff's attempt to serve the Binance Individual Defendants by Twitter alone fails to comport with due process.

**A.  There is No Personal Jurisdiction Over the Binance Individual Defendants.**

Plaintiff has failed to establish a *prima facie* case of personal jurisdiction over the Binance Individual Defendants.  None of the individuals reside in Arizona for purposes of general jurisdiction.  According to the Complaint, Changpeng Zhao is the founder and Chief Executive Officer of Binance and resides in Taiwan.  Compl. ¶¶ 27, 32, 198.  The Complaint alleges that Yi He, the Chief Marketing Officer, resides in Malta.  *Id.* ¶¶ 33, 187. While the Complaint does not allege where Ted Lin, the Chief Growth Officer, resides, it acknowledges that he is not a resident of Arizona.  *Id.* ¶¶ 34, 186.  Moreover, Plaintiff does not allege any affirmative conduct by any of the Binance Individual Defendants in Arizona.  Accordingly, there is neither general nor specific jurisdiction over the Binance Individual Defendants.

To the extent that Plaintiff attempts to assert personal jurisdiction over the Binance Individual Defendants based on an attenuated association with BCM, this attempt is defeated by the fiduciary shield doctrine, which provides that a state cannot exercise personal jurisdiction over nonresident corporate directors and officers based on the contacts of their employer.  *See M2 Software Inc.* v. *M2 Comms., L.L.C.*, 149 F. App'x 612, 615 (9th Cir. 2005); *Davis* v. *Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).  To overcome the fiduciary shield doctrine, Plaintiffs must establish that (i) CoinMarketCap or BCM are alter egos of the Binance Individual Defendants, or (ii) the Binance Individuals Defendants were the "guiding spirit" behind the wrongful conduct, *Davis*, 885 F.2d at 521, 523 n.10, in that they "personally directed the activities toward the forum state giving rise to the complaint."  *Ind. Plumbing Supply, Inc.* v. *Standard of*

1   *Lynn, Inc.*, 880 F. Supp. 743, 750 (C.D. Cal. 1995).  The corporate officer must be the

2   "primary participant in the alleged wrongdoing" or at least "had control of, and direct

3   participation in the alleged activities."  *AMA Multimedia LLC* v. *Sagan Limited*, No. CV

4   16-01269-PHX-DGC, 2020 WL 5988224, at *2 (D. Ariz. Oct. 9, 2020) (citation omitted).

5         No such allegations have been made here.  First, Plaintiff does not assert that

6   BCM, CoinMarketCap, or even Binance Holdings Ltd. are alter egos of the Binance

7   Individual Defendants.  *See Success Is Yours, Inc.* v. *LifeSuccess Pub., LLC*, No. CV10–

8   0758–PHX DGC, 2010 WL 4225880, at *3 (D. Ariz. Oct. 21, 2010) (conclusory

9   allegations about defendants being "the guiding spirit and driving force behind" the

10  alleged wrongdoing are "not sufficient").  Second, Plaintiff fails to allege that any of the

11  Binance Individual Defendants personally directed the alleged suppression of the value of

12  HEX.  At most, the Complaint alleges that the Binance Individual Defendants were

13  "aware at the time Binance purchased CoinMarketCap.com that there were issues with its

14  rankings" and that, "[u]pon information and belief," the Binance Individual Defendants

15  have "large holdings" in certain cryptocurrencies that compete with HEX.  Compl. ¶¶ 50,

16  130.  Mere awareness or an incentive to suppress the value of HEX is far removed from

17  any suggestion that the Binance Individual Defendants actively and personally directed,

18  ratified, or even participated in the alleged wrongdoing.  *See Tangiers Investors, L.P.* v.

19  *Americhip Int'l, Inc.*, No. 11CV339 JLS BGS, 2011 WL 3299099, at *2 (S.D. Cal. Aug.

20  1, 2011) (conclusory allegation that fraud occurred with CEO's "knowledge and support"

21  was not sufficient to conclude that he "was the driving force or primary participant in the

22  alleged wrongdoing").

23         **B.  Plaintiff Fails to State a Claim Against the Binance Individuals.**

24         The claims against the Binance Individual Defendants should also be dismissed

25  because Plaintiff fails to state a claim to relief.  The only causes of action against the

26  Binance Individual Defendants are Counts I and IV.  Count I should be dismissed for the

27  reasons stated in CoinMarketCap's motion to dismiss pursuant to Fed. R. Civ. P.

28

12(b)(6).[7]   Because Plaintiff does not allege any specific conduct on the part of the Binance Individual Defendants, the Complaint fails both the notice pleading standard and the heightened pleading standard applicable to claims of market manipulation and fraud. *See In re Tether & Bitfinex Crypto Asset Litig.*, No. 19 CIV. 9236 (KPF), 2021 WL 4452181, at *33 (S.D.N.Y. Sept. 28, 2021) (holding that manipulation claims under the CEA sound in fraud and therefore the more stringent pleading requirements of Fed. R. Civ. P. 9(b) apply).   Count IV should be dismissed for the reasons stated above.   Plaintiff fails to cite any authority suggesting that control person liability under the securities laws is cognizable under the Arizona Consumer Fraud Act, or even allege that any of the Binance Individual Defendants actually had the power to control the activities of CoinMarketCap.   *See Cornelis* v. *B&J Smith Associates LLC*, No. CV–13–00645–PHX–BSB, 2013 WL 6795969, at *4 (D. Ariz. Dec. 20, 2013) (conclusory assertions about corporate control are insufficient to disregard the corporate form).

### C. Service on the Binance Individual Defendants Was Insufficient.

Although this Court permitted alternative service (*see* ECF No. 54), the Binance Individual Defendants respectfully preserve their opposition to service through Twitter *alone* as unprecedented, unfair, and at odds with due process.

Where the location of a foreign defendant is unknown, Fed. R. Civ. P. 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders."   Under Rule 4(f)(3), courts can order service through a variety of methods, "including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email," provided that there is no international agreement directly to the contrary.   *Rio Props., Inc.* v. *Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).   Although courts have permitted service by social media when paired with a second, well-established method of service such as mail or email, *see, e.g.*, *Nowak* v. *XAPO, Inc.*, No. 20-cv-3643-BLF, 2020 WL 5877576, at *4 (N.D. Cal. Oct. 2, 2020), several courts have rejected requests to serve defendants

---

[7]   *See* Def. CoinMarketCap OpCo, LLC's Mem. of P&A ISO Mot. to Dismiss, at 9–13.

by social media alone, *see, e.g.*, *iHealth Labs, Inc.* v. *Fingix, i-Enterprise*, No. 20-cv-05699-VKD, 2020 WL 7260600, at \*3 (N.D. Cal. Dec. 10, 2020); *Doe* v. *Hyassat*, 337 F.R.D. 12, 15 (S.D.N.Y. 2020); *Entrepreneur Media, Inc.* v. *Doe*, No. 8:19-cv-01706-JLS-JDE, 2019 WL 8638802, at \*2 (C.D. Cal. Dec. 5, 2019).

The cases cited by this Court in its Order (ECF No. 54) authorizing alternative service involved at least two methods of service.  *See WhosHere, Inc.* v. *Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at \*1 (E.D. Va. Feb. 20, 2014) (authorizing service by email and through Facebook and LinkedIn); *FTC* v. *PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at \*5 (S.D.N.Y. Mar. 7, 2013) (authorizing service on individuals by email and through Facebook, but noting that, "if the FTC were proposing to serve defendants *only* by means of Facebook, as opposed to using Facebook as a supplemental means of service, a substantial question would arise whether that service comports with due process").  The only case authorizing service by social media alone is inapposite.  *See St. Francis Assisi* v. *Kuwait Finance HouseEyeglasses*, No. 3:16-CV-3240-LB, 2016 WL 5725002 (N.D. Cal. Sept. 30, 2016).  In that case, the plaintiff was suing a foreign national for damages arising from the financing of terrorist organizations, and the defendant had used Twitter "to fundraise large sums of money for terrorist organizations by providing bank-account numbers to make donations." *Id.* at \*1. Because the defendant had used Twitter to further the alleged crime, which was the subject of the lawsuit, the court could be reasonably certain that Twitter would apprise the defendant of the pending suit.  *See id.* at \*2. There is no suggestion here that Twitter played any role in the alleged suppression scheme.

Plaintiff attempted no other method of service other than Twitter.  While Plaintiff's private investigator could not identify the current residences of the Binance Individual Defendants, he did identify possible mailing addresses, email addresses, and other social media accounts.  *See* ECF No. 24-1.  Conspicuously absent from Plaintiff's motion for alternative service is any attempt to serve through these other addresses. Instead, Plaintiff merely tweeted a copy of the summons and a link to the Complaint to

the alleged Twitter accounts of the Binance Individual Defendants.  *See* ECF No. 62-1, at 2–3.   And contrary to Plaintiff's representations to this Court, *only* the account of Changpeng Zhao is "verified" as indicated by the blue check mark next to his Twitter handle (*see* ECF No. 24–2, at 4), signifying that "an account of public interest is authentic."[8]  By contrast, the accounts for Yi He and Ted Lin are not accompanied by the blue check mark (*see* ECF No. 24–2, at 5, 6), meaning that the individuals running those accounts have not verified their identity.  *Cf. Fortunato* v. *Chase Bank USA, N.A.*, No. 11 Civ. 6608(JFK), 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012) (noting that "anyone can make a Facebook profile using real, fake, or incomplete information, and thus, there is no way for the Court to confirm" whether a profile belongs to the defendant to be served).

Plaintiff's attempt to serve two unverified accounts is why service by social media alone violates due process.  *See Solis* v. *Arizona Movers & Storage Inc.*, No. CV-18-02353-PHX-JAT, 2018 WL 5255185, at *3 (D. Ariz. Oct. 22, 2018) (holding that plaintiff failed to show that alternative service by social media "comports with due process"); *Osio* v. *Maduro Moros*, No. 1:21-cv-20706, 2021 WL 1564359, at *4 (S.D. Fla. Apr. 21, 2021) ("Plaintiffs seek to serve three of the Individual Defendants *only* through social media, whether Facebook or Twitter, which raises due process concerns" (emphasis in original)).  But even the attempt to serve only the verified Twitter account of Changpeng Zhao is problematic.  Zhao has 3.9 million followers on Twitter (*see* ECF No. 24-2 at 4), receives a "vast number of tweets" each day, and he "may well have been reluctant to click on a link sent to him by a stranger" due to cybersecurity concerns. *Strange* v. *Islamic Republic of Iran*, No. 14-cv-00435-CKK (D.D.C. June 4, 2019), ECF No. 122, at 3, 4 (rejecting alternative service by Twitter on Hamid Karzai, the former President of Afghanistan).  Given these concerns about the reliability of service on social media, and the case law holding that social media cannot be the sole method of service,

---

[8]   *See* Twitter, About Verified Accounts, https://help.twitter.com/en/managing-your-account/about-twitter-verified-accounts (last visited May 12, 2022).

Plaintiff's novel attempt to serve the Binance Individual Defendants by Twitter alone was legally insufficient.

### CONCLUSION

For these reasons, BCM and the Binance Individual Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice for lack of personal jurisdiction or, in the alternative, for failure to state a claim. The claims against the Binance Individual Defendants should also be dismissed for insufficient service.

DATED:  May 23, 2022

By:  /s/ Andrea S. Tazioli
Andrea S. Tazioli, SBN 026621
KW LAW, LLP
6122 N. 7th St., Suite D
Phoenix, AZ 85014
Telephone: (602) 609-7367
andrea@kwlaw.co

Roberto J. Gonzalez (*pro hac vice*)
Jake E. Struebing (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
rgonzalez@paulweiss.com
jstruebing@paulweiss.com

*Attorneys for Defendant Binance Capital Management Co., Ltd., Changpeng Zhao, Yi He, and Ted Lin*

17

1

**CERTIFICATE OF SERVICE**

2
      I certify that on the 23rd day of May 2022, I electronically transmitted the

3
foregoing document to the Office of the Clerk of the Court, using the CM/EFC System,

4
for filing and for transmittal of a Notice of Electronic Filing to the CM/EFC registrants

5
on record.

6

7
/s/ Sarah Flaaen
*Employee of KW Law, LLP*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18