KW LAW, LLP
Andrea S. Tazioli, SBN 026621
6122 N. 7th St., Suite D
Phoenix, AZ 85014
Telephone: (602) 609-7367
andrea@kwlaw.co

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
Karen R. King (*pro hac vice*)
Mary G. Vitale (*pro hac vice*)
565 Fifth Avenue
New York, NY 10017
Telephone: (212) 856-9600
kking@maglaw.com
mvitale@maglaw.com

*Attorneys for*
*Defendant CoinMarketCap OpCo, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ryan Cox, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CoinMarketCap OpCo, LLC; Binance Capital Management Co., Ltd. d/b/a Binance and Binance.com; BAM Trading Services Inc. d/b/a Binance.US; Changpeng Zhao; Catherine Coley; Yi He; Ted Lin; and Does I-X;<br><br>Defendants. | Case No. 21-cv-08197-PCT-SMB<br><br>**DEFENDANT COINMARKETCAP OPCO, LLC's MOTION TO DISMISS THE COMPLAINT**<br><br>**(Oral Argument Requested)** |

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant CoinMarketCap OpCo, LLC ("CoinMarketCap"), by and through its undersigned attorneys, hereby moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction and for failure to state a claim. This Motion is supported by the attached Memorandum of Points and Authorities, the entire record herein, and the Certification of Counsel pursuant to L.R. 12.1(c).

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff is an Arizona resident who purchased unspecified quantities of a relatively new cryptocurrency, HEX, between the launch of the coin in December 2019 and September 27, 2020, and then sold an unspecified quantity of HEX after September 27, 2020. Despite obvious uncertainties surrounding the new coin, and significant public speculation regarding safety and fraud, Plaintiff alleges that the price of HEX at the time of his sale was suppressed because CoinMarketCap—a website that provides pricing information on cryptocurrencies—did not rank HEX high enough in its rankings. Plaintiff has commenced this putative class action accusing CoinMarketCap of market manipulation and related claims, all based on his disagreement with HEX's placement in the ranking. The lawsuit is completely speculative, illogical, and utterly without merit.

As a threshold matter, CoinMarketCap should be dismissed from this lawsuit because it is not subject to personal jurisdiction in Arizona. CoinMarketCap is a Delaware corporation who is not alleged to have any place of business, operations, or employees in Arizona. The dispute is not the result of any alleged affirmative act by CoinMarketCap seeking to engage with the forum. Nor do Plaintiff's alleged injuries arise from, or relate to, any alleged in-forum activities.

Alternatively, even if personal jurisdiction were to exist over CoinMarketCap, the Complaint's allegations fail to state any cognizable claim against CoinMarketCap. None of the elements of a Commodity Exchange Act violation (much less all of them) are pleaded adequately: market influence, artificial pricing, causation, intent, or damages. The claim under the Arizona Consumer Fraud Act is a nonstarter because there was no sale or advertisement of merchandise and, in any event, Plaintiff fails to allege a fraudulent

misrepresentation, fraudulent intent, reliance, or damage. Finally, Plaintiff's cursory attempt to assert an "antitrust" claim is facially deficient and does not meet basic notice pleading requirements.

## RELEVANT BACKGROUND

HEX is a cryptocurrency that was launched in December 2019 by "Richard Heart" (whose real name is Richard James Schueler) and ostensibly offers an interest rate premium to investors who lock their tokens for a set period of time.[1] Numerous crypto investors and pundits have labeled HEX a "scam" or "Ponzi scheme," with Mr. Heart himself admitting that the HEX project uses "tactics a scam might use."[2] HEX's own website includes a section titled "SCAM" to address concerns about its legitimacy.[3] Numerous prominent websites that track cryptocurrencies, such as Coinbase, CoinGecko, and Crypto.com, all rank HEX below 200 on their lists of cryptocurrencies or do not rank HEX at all.[4]

CoinMarketCap is a Delaware company that operates out of Dover, Delaware. Compl. ¶ 13.[5] Since its launch in 2013, CoinMarketCap has operated a website that provides pricing information on various digital currencies and assets and also ranks those currencies according to specified criteria. *Id*. ¶¶ 13, 14, 16. The website identifies both

---

[1] *How It* Works, HEX, https://www.hex.com/howitworks (last visited May 19, 2022; HEX, Coinbase, https://www.coinbase.com/price/hex (last visited May 2, 2022).

[2] Wright, Turner, "HEX Still Can't Shake Scam Label as Token Approaches $1B Market Cap," *Cointelegraph* (May 15, 2020). *Available at* https://cointelegraph.com/news/hex-still-cant-shake-scam-label-as-token-approaches-1b-market-cap. On a motion to dismiss, courts may take judicial notice of news articles that indicate what was in the public realm. *See, e.g*, *United States v. Town of Colorado City, Arizona*, 3:12-cv-8123 (HRH), 2013 WL 11826544, at *3 n.17 (D. Ariz. June 6, 2013); *Miller v. Sawant*, 18 F.4th 328, 335 n.5 (9th Cir. 2021); *Lowthorp v. Mesa Air Group Inc.*, CV-20-0648 (PHX)(MTL), 2021 WL 3089118, at *5 (D. Ariz. July 22, 2021).

[3] *Scam*, HEX, https://hex.com/scam/ (last visited May 2, 2022).

[4] *See, e.g.*, https://crypto.com/price/hex (Crypto.com, unranked) (last visited May 2, 2022); https://www.coingecko.com/en/coins/hex (CoinGecko, ranked #201) (last visited May 2, 2022). Coinbase is discussed further below; *HEX*, Coinbase, https://www.coinbase.com/price/hex (last visited May 2, 2022). On a motion to dismiss, courts may take judicial notice of public financial information like stock price history. *See, e.g.*, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008).

[5] *See Department of State: Division of Corporations*, State of Delaware, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited May 19, 2022, using search for "CoinMarketCap OpCo LLC").

quantitative and qualitative factors such as trading volume, market impact, and longevity, that factor into the rankings.[6] The website also publishes its "supply calculation methods" and "liquidity scores," which are also used for the rankings.[7] In April 2020, CoinMarketCap was purchased by Binance Capital Management, Ltd., a British Virgin Islands company. Compl. ¶ 16.

Plaintiff Ryan Cox is an Arizona resident who allegedly acquired an unspecified amount of HEX prior to September 27, 2020 and then sold an unspecified amount of HEX after September 27, 2020. *Id.* ¶¶ 9–12. He commenced this lawsuit on September 13, 2021 as a putative class action on behalf of investors who sold HEX after September 27, 2020 (the so called "Suppression Period") on the theory that the sale prices during this time were "artificially suppressed" because HEX was ranked #201 on CoinMarketCap's website. Specifically, the Complaint alleges that, as of September 13, 2021, HEX should have been ranked sixth based on its market capitalization (notwithstanding the numerous other factors CoinMarketCap discloses and uses when evaluating rankings). Compl. ¶¶ 3, 77, 86, 87, 93, 114–18, 177, 254.

Based on these speculative, conclusory allegations, Plaintiff now brings a Commodity Exchange Act ("CEA") claim against all defendants (Count I); a strict liability

---

[6] *See Listings Criteria*, COINMARKETCAP, https://support.CoinMarketCap.com/hc/en-us/articles/360043659351-Listings-Criteria (last visited May 20, 2022); *Ranking (Market Pair, Cryptoasset)*, CoinMarketCap, https://support.CoinMarketCap.com/hc/en-us/articles/360043836851-Ranking-Market-Pair-Cryptoasset- (last visited May 20, 2022). On a motion to dismiss, the court may consider extrinsic evidence and documents outside of the complaint "whose contents are alleged in the complaint and whose authenticity no party questions[.]" *Love v. Lafayette Park Hotel Assocs. Ltd. P'ship*, No. 4:21-CV-01361-KAW, 2021 WL 4145088, at *4 (N.D. Cal. May 3, 2021); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (court may consider extrinsic evidence that the "plaintiff's complaint necessarily relies on" or where the court takes "judicial notice of matters of public record" (internal quotation marks omitted)). Here, CoinMarketCap's "website[] [is] specifically cited in the complaint, and there is no dispute as to [its] authenticity and relevance," and thus, the court may "take judicial notice" of CoinMarketCap's website and consider portions of the website where CoinMarketCap explains its ranking system. *Love, supra*, 2021 WL 4145088, at *3-*4; *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("websites and their contents may be judicially noticed").

[7] *About CoinMarketCap*, CoinMarketCap, https://CoinMarketCap.com/about/ (last visited May 20, 2022) (cited in Compl. ¶ 76 n.31).

claim under the CEA against defendants Binance Capital[8] and Binance.US (Count II); an Arizona Consumer Fraud Act claim against defendants CoinMarketCap, Binance Capital, and Binance.US (Count III); a control person liability claim under the Arizona Consumer Fraud Act against all defendants, except for CoinMarketCap (Count IV); and an antitrust claim against CoinMarketCap, Binance Capital, and Binance.US (Count V). Compl. ¶¶ 157-262.

## LEGAL ARGUMENT

### I.  THERE IS NO PERSONAL JURISDICTION OVER COINMARKETCAP.

As a threshold issue, the Complaint should be dismissed against CoinMarketCap for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing a *prima facie* showing of personal jurisdiction. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).[9] There is no factual basis to find CoinMarketCap "essentially at home" in Arizona for purposes of general jurisdiction, and none of the allegations support "purposeful direction" or "availment" by CoinMarketCap in Arizona that gave rise to the events at issue.

**A. CoinMarketCap Is Not Subject to General Jurisdiction in Arizona.**

A plaintiff invoking general jurisdiction must meet an "exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F. 3d 797, 801 (9th Cir. 2004).

General jurisdiction exists over a company that is incorporated in or has its principal place of business in the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

---

[8]  Throughout the Complaint, Plaintiff conflates non-party Binance Holdings, Ltd., the foreign cryptocurrency exchange, with defendant Binance Capital Management Co., Ltd., by using the label "Binance." In this brief, the two entities are called "Binance Holdings" and "Binance Capital" for clarity.

[9]  "Because Arizona's long-arm statute extends jurisdiction 'to the maximum extent permitted by the . . . Constitution of the United States,' the Court's personal jurisdiction inquiry largely collapses into an analysis of Due Process." *Patterson* v. *Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1175 (D. Ariz. 2010) (quoting Ariz. R. Civ. P. 4.2(a)).

Here, it is undisputed that CoinMarketCap is incorporated in Delaware and has no principal place of business in Arizona. CoinMarketCap is not alleged to have an agent for service of process in Arizona, to hold any license to do business in Arizona, to have offices or mailing addresses in Arizona, or to have any physical operations in Arizona. Accordingly, there is no basis for general jurisdiction over CoinMarketCap.

Nor is this an "exceptional case" where contacts in the forum are "so 'continuous and systematic' as to render [defendant] essentially at home in the forum State." *Daimler*, *supra*, 571 U.S. at 138–39; *see also Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Martinez*, 764 F.3d at 1070); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223–24 (9th Cir. 2011).[10] The conclusory assertion that CoinMarketCap "is widely used by Arizona investors" (Compl. ¶ 13) does not qualify as continuous and systematic contact sufficient to render the company "at home" in the forum. *See Kruska v. Perverted Justice Foundation Inc.*, CV-08-0054 (PXH)(SMM), 2009 WL 249432 at *3 (D. Ariz. Feb. 2, 2009) (allegations that two websites owned by an out-of-state defendant were "viewable by and in fact viewed by readers of" Arizona and sold music to individuals in forum state were insufficient to establish general jurisdiction); *see also Schwarzenegger*, *supra*, 374 F.3d at 801; *ReMentors, Inc. v. Main*, 10-cv-00063 (JWS), 2010 WL 11629091 at *2–*3 (D. Ariz. July 28, 2010) (finding proposition that an interactive website with the potential to be used by forum consumers to be insufficient to establish general jurisdiction."); *Handsome Music, LLC v. Etoro USA LLC*, LACV-20-08059 (VAP), 2020 WL 8455111 at *5 (C.D. Cal. Dec. 17, 2020) (general jurisdiction could not be established over an out-of-state cryptocurrency trading website).

### B. Plaintiff Cannot Meet His Burden of Establishing Specific Personal Jurisdiction Over CoinMarketCap.

---

[10] The rare (possibly only) example of such exceptional circumstances would be *Perkins v. Benguet Consolidated Mining Co.*, where the defendant was a Philippines mining company that relocated its physical operations to Ohio during World War II. 571 U.S. 437, 447–48 (1952).

CoinMarketCap also is not subject to specific personal jurisdiction in Arizona, which requires that: (1) the defendant personally directed activities towards the forum state; (2) the claims arise out of those activities; and (3) jurisdiction is reasonable. *ThermoLife Int'l, LLC v. NetNutri.com LLC,* 813 F. App'x 316, 317 (9th Cir. 2020); *see also Mavrix Photo, supra*, 647 F.3d at 1227–28. The plaintiff bears the burden of satisfying the first two prongs of the test. *Morrill*, *supra*, 873 F.3d at 1142; *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). Only if the plaintiff meets those two prongs, does the burden then shift to the defendant to show that the exercise of jurisdiction would not be reasonable. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Here, plaintiff does not come close to satisfying his burden.

*First*, "purposeful direction" requires that the defendant have committed an intentional act "expressly aimed" at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. *Morrill*, *supra*, 873 F.3d at 1142. By contrast, "purposeful availment" is typically an action by the defendant that invokes the benefits and protections of the laws in the forum state. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Neither purposeful direction nor purposeful availment is present here.

Plaintiff does not allege that any of CoinMarketCap's conduct was specifically directed at Arizona. At most, the Complaint alleges that CoinMarketCap's website is available in Arizona and that there are links to third party websites. Compl. ¶¶ 13, 53–54, 227. The mere accessibility of a website or advertisement in the forum state is not sufficient to make an out-of-state corporation subject to specific personal jurisdiction. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 415 (9th Cir. 1997) (holding that "it would not comport with traditional notions of fair play and substantial justice . . . for Arizona to exercise personal jurisdiction over an allegedly infringing Florida web site advertiser who has no contacts with Arizona other than maintaining a home page that is accessible to Arizonans, and everyone else, over the Internet" (internal quotation marks omitted)); *Handsome Music*, *supra*, 2020 WL 8455111 at *7–11 (holding that defendant company's "online trading platform" was not "directed at" forum state because plaintiffs failed to

demonstrate the necessary "something more" than operating a website); *Matus v. Premium Nutraceuticals, LLC*, No. EDCV 15-01851 DDP (DTBx), 2016 WL 3078745, *3 (C.D. Cal. May 31, 2016) (same); *JST Performance, Inc. v. Shenzhen Aurora Tech. Ltd.*, No. CV-14-1569-PHX-SMM, 2015 WL 12683958, at *4 (D. Ariz. Sept. 2, 2015) (the operation of "a passive website, even if it displays advertisements that include infringing material, is insufficient to establish personal jurisdiction"). Notably, there is not a single allegation in the Complaint that CoinMarketCap itself is a part of any purchase or sale of cryptocurrency, or that any part of its website was purposefully directed at Arizona.

*Second*, specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017). Here, Plaintiff's claims do not arise out of, or relate to, any specific in-forum activities. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). The Complaint does not allege that the administration of CoinMarketCap's rankings system was conducted in or directed at Arizona. Plaintiff himself does not even claim to have had contact with CoinMarketCap. *Walden v. Fiore*, 571 U.S. 277, 289 (2014) (finding no specific jurisdiction over the defendant where the "challenged conduct" has nothing to do with the forum state).

Nor is the alleged injury suffered by Plaintiff "tethered to [Arizona] in any meaningful way." *Picot*, *supra*, 780 F.3d at 1215. The only alleged connection to Arizona is that Plaintiff happened to be residing there at the time of the alleged injury. Compl. ¶¶ 9–12. It is well established that "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, *supra*, 571 U.S. at 290. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285; *see also Morrill*, *supra*, 873 F.3d at 1142 (where the "sole connection to the forum state" is that the plaintiff resides there, that connection is insufficient to establish specific jurisdiction over a non-resident corporation); *Shaw v. Vircurex*, No. 18-cv-00067-PAB-SKC, 2019 WL 2636271, at *4 (D. Colo. Feb. 21, 2019) (finding lack of

specific jurisdiction in cryptocurrency case where "the only alleged connection between defendants and Colorado "is harm suffered by a Colorado resident").

*Finally*, although the Court need not reach the issue, exercising jurisdiction over CoinMarketCap would violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co., supra,* 326 U.S. at 310. Under Plaintiff's theory, CoinMarketCap would be subject to specific personal jurisdiction in any state where a user is able to access its website and is purportedly harmed by out-of-state conduct—even though the claims lack any substantial connection to the forum. Such an expansive view of jurisdiction violates basic notions of fairness and due process. *Id.* at 316. CoinMarketCap should not be subjected to personal jurisdiction in Arizona where it does not "reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and where Arizona has no legitimate interest in adjudicating a dispute with no connection to the state other than the residence of the Plaintiff.

## II. PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM AGAINST COINMARKETCAP.

Even if personal jurisdiction were to exist over CoinMarketCap—which it does not—the Complaint should nonetheless be dismissed because Plaintiff fails to "state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617 (9th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A plausible claim requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation, and a formulaic recitation of the elements of a cause of action will not do." *Wills v. First Republic Bank*, No. 19-17001, 2022 WL 501126, at *1 (9th Cir. Feb. 18, 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

Here, Plaintiff brings three causes of action against CoinMarketCap: (i) violation of the CEA, (7 U.S.C. § 1 *et seq.*,) (Compl. ¶¶ 157–93, Count One); (ii) violation of the Arizona Consumer Fraud Act, (A.R.S.. § 44-1521 *et seq.*, hereinafter the "ACFA")) (Compl. ¶¶ 217–35, Count Three); and (iii) a cause of action for "antitrust" (Compl. ¶¶ 257–62, Count Five). All suffer from fatal pleading defects.

### A. Plaintiff Fails to Allege a Violation of the Commodity Exchange Act.

In his first cause of action, Plaintiff alleges that CoinMarketCap violated the CEA by manipulating commodity prices by consistently undervaluing HEX in its rankings[11] Compl. ¶¶ 157–93. Because this claim sounds in fraud, it is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *In re Tether & Bitfinex Crypto Asset Litig.*, No. 19 CIV. 9236 (KPF), 2021 WL 4452181, at *33 (S.D.N.Y. Sept. 28, 2021); *see also Neubronner v. Milken*, 6 F.3d 666, 673 (9th Cir. 1993) (applying Rule 9(b) heightened pleading standard to claim of market manipulation).

In order to hold a defendant liable for market manipulation under the CEA, a private plaintiff must plead with particularity that: (1) the defendant possessed an ability to influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial prices; (4) the defendant specifically intended to cause the artificial price; and (5) actual damages. *See BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *13 (N.D. Cal. Mar. 12, 2021) (citing *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170 (2d Cir. 2013)); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 459, 463 (S.D.N.Y. 2014). Plaintiff has not sufficiently pleaded any element of CEA liability, much less all of them.

*First*, notwithstanding Plaintiff's conclusory assertions, the Complaint does not allege how CoinMarketCap's rankings actually had the ability to influence the market prices for HEX. CoinMarketCap is but one of hundreds of resources available to investors in cryptocurrencies.[12] The Complaint makes no effort to link any decision made by HEX investors to CoinMarketCap's website. Nor does it analyze price fluctuations for HEX

---

[11] The CEA prohibits the manipulation or attempted manipulation of "any swap, or of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity." 7 U.S.C. § 9(3). The CEA also prohibits a person from "knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other means of communication false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce." 7 U.S.C. § 13(a)(2).

[12] For example, a search for "HEX cryptocurrency" on Google leads to over a dozen pages of results specifically discussing the HEX cryptocurrency.

9

(which are very volatile) with its rank on CoinMarketCap (which is alleged to have been consistently around 201 in the time period). *See, e.g.*, *HEX*, Coinbase, https://www.coinbase.com/price/hex (last visited May 2, 2022) (showing that HEX's price on Sept. 13, 2020 was $.0027, but a year later – on the date the complaint was filed – the price increased over 100-fold to $.36, and just three days before, was $.46). Where, as here, allegations of market manipulation are "rank speculation" or "wholly conclusory," they must be dismissed. *See BMA LLC*, 2021 WL 949371, at *6–*9 (dismissing cryptocurrency market manipulation claims where allegations were speculative and conclusory and, among other things, "plaintiffs provide[d] little to no information regarding the value of defendants' purported trades that caused them harm and the effect those alleged trades had on the market price for the various cryptocurrencies").

*Second*, the Complaint is also devoid of any particularized allegations supporting the existence of an "artificial price" for HEX. "When determining if artificial prices exist, a court may consider the underlying commodity's normal market forces, historical prices, supply and demand factors, price spreads, and also the cash market for the commodity at issue." *In re Commodity Exch., Inc., Silver Futures and Options Trading Litig.,* No. 11 Md. 2213(RPP), 2012 WL 6700236, at *12 (S.D.N.Y. Dec. 21, 2012). Here, the Complaint is silent on all of these factors. It does not even provide the most basic information regarding HEX's price before the alleged "Suppression Period" and what it was afterwards. Indeed, public information shows that the price of HEX went *up* significantly during the alleged "Suppression Period." *See supra* at 10.

*Third*, the Complaint does not address causation other than to assert that CoinMarketCap "is the dominant data source" relied upon by retail investors. Compl. ¶¶ 168–69. This terse and "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *See BMA LLC*, 2021 WL 949371, at *13, quoting *Iqbal*, 556 U.S. at 678 (dismissing CEA claims with respect to alleged cryptocurrency market manipulation where the plaintiffs insufficiently alleged that the defendants caused an artificial price). Plaintiff does not grapple with the plethora of data sources on the market, including multiple well-

1  established, unaffiliated websites, all ranking HEX low among cryptocurrencies or
2  deeming it unworthy of inclusion.[13]  In any event, "market power by itself is not enough to
3  establish a CEA violation." *In re Commodity Exch., Inc.*, 560 F. App'x at 86.

4  *Fourth*, the Complaint fails to plead with particularity any intent by CoinMarketCap
5  to manipulate prices—*i.e.*, "facts [i] showing that defendants had both motive and
6  opportunity to commit the fraud or [ii] constituting strong circumstantial evidence of
7  conscious misbehavior or recklessness." *In re Tether and Bitfinex*, 2021 WL 4452181 at
8  *34. "There is [] no manipulation without intent to cause artificial prices." *In re Amaranth*,
9  730 F.3d at 183. Plaintiff offers nothing more than bald speculation that "Defendants either
10 willfully participated in the manipulation or failed to review or check information that they
11 had a duty to monitor, or ignored obvious signs of market manipulation." Compl. ¶ 191.
12 Such conclusory allegations do not satisfy the heightened pleading requirements of Rule
13 9(b), or even the general pleading standard under Rule 8.  *See BMA LLC*, 2021 WL 949371,
14 at *13 (dismissing CEA claims with respect to alleged cryptocurrency market manipulation
15 where the plaintiffs insufficiently alleged that the defendants specifically intended to cause
16 an artificial price, even under Rule 8 standard); *Eclectic Properties E., LLC v. Marcus &
17 Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014) (dismissing claim where the plaintiff
18 insufficiently alleged the defendants' intent to defraud where innocent explanation was
19 plausible, even under Rule 8 standard). Plaintiff's suggestion that CoinMarketCap favored
20 BNB—a cryptocurrency issued by non-party Binance Holdings, Ltd.—is not supported by
21 any factual allegation that BNB did not meet the criteria for its ranking, or that
22 CoinMarketCap stood to receive any financial gain from such favoritism. Indeed, the
23 Complaint does not include particularized allegations of actual preferential treatment or
24 lack of independence, much less a specific reason to target HEX. In any event, courts have
25 rejected general business interests as evidence of intent for market manipulation because
26 that "incentive could just as easily be imputed to any company with a large market presence
27 in any commodity market" and is unsustainable. *In re Commodity Exch., Inc. Silver*
28

---

[13] *See supra* fn. 4.

11

1    *Futures & Options Trading Litig.*, 560 F. App'x 84, 86 (2d Cir. 2014) (summary order);
2    *see also id.* at 87 (contrasting allegations there to allegations of incentives which were
3    sustained, such as allegations of specific instant message conversations that showed that a
4    trader intended to affect prices); *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
5    366 F. Supp. 3d 516, 553–54 (S.D.N.Y. 2018).

6        *Fifth*, Plaintiff fails to plead damages with any specificity. There are no allegations
7    specifying the amount of HEX Plaintiff purchased, when, and at what price, and no
8    allegations of the amount of HEX Plaintiff sold, when, and at what price, during the alleged
9    "Suppression Period." Without those details, Plaintiff has not made "the
10   connection between [D]efendant's manipulation and [P]laintiff's actual injury plausible."
11   *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 113–14 (2d Cir. 2018).

12       Finally, although Plaintiff's heading makes reference to a claim for provision of
13   false reports and he cites to the CEA provision regarding false reports, there is no actual
14   allegation of a false report. *See* Compl. ¶ 157–93. Nor could there be. A ranking on a
15   website does not meet the definition of a "report" under § 13(a)(2). In *United States v.*
16   *Brooks*, the Fifth Circuit noted that, while the term is not officially defined, the plain
17   meaning of "report" is "a detailed statement of fact" or "lengthy documents outlining
18   detailed information," as opposed to "expressions of opinion[ ] or casual communications."
19   681 F.3d 678, 691 (5th Cir. 2012). Rankings are not "lengthy documents outlining detailed
20   information" about cryptocurrencies. *See also In re Foreign Exch. Benchmark Rates*
21   *Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2016 WL 5108131, at *23 (S.D.N.Y. Sept. 20,
22   2016) (citing *Brooks* and holding that communications among traders to coordinate prices
23   shown to customers could not be deemed a "report"). Indeed, much like ratings provided
24   by credit-rating agencies, CoinMarketCap's rankings are expressions of opinion;
25   accordingly, they are protected under the First Amendment. *See, e.g.*, *Compuware Corp.*
26   *v. Moody's Investors Services, Inc.,* 499 F.3d 520, 525–26 (6th Cir. 2007) (extending First
27   Amendment protection to credit ratings offered to the investing public at large as an
28   informational service); *In re Enron Corp. Securities, Derivative & "ERISA" Litig.,* 511

F.Supp.2d 742, 826–27 (S.D.Tex. 2005) (noting a policy of heightened protection for credit reports under the First Amendment, which are matters of public concern and opinion).

In any event, CoinMarketCap's website identified the criteria and parameters for its cryptocurrency rankings. And there is nothing in the Complaint to suggest that CoinMarketCap's ranking actually affected the price of HEX.

### B. Plaintiff Fails to Plead a Violation of the Arizona Consumer Fraud Act.

The Third Cause of Action in the Complaint alleges a violation of ACFA[14] through the alleged "suppression" of HEX in CoinMarketCap's rankings. Compl. ¶¶ 217–35. As a threshold matter, Plaintiff has not provided a basis for the application of Arizona law. But even if Arizona law applied, a plaintiff bringing a private claim under the Arizona Consumer Fraud Act must plead [1] a false promise or misrepresentation, [2] made in connection with the sale or advertisement of merchandise, and [3] the plaintiff's consequent and proximate injury from reliance on such a misrepresentation." *Ferren v. Westmed Inc.*, No. CV-19-00598-TUC-DCB, 2021 WL 2012654, at *4 (D. Ariz. May 20, 2021). The Complaint falls short on all three elements.

*First*, although Plaintiff asserts that CoinMarketCap misrepresented or omitted "material facts concerning the true ranking of various cryptocurrencies" by ranking HEX near the bottom of its list, despite its market capitalization (Compl. ¶¶ 225, 228), he blatantly ignores the actual criteria for the rankings as identified on CoinMarketCap's website, which extend far beyond market capitalization. Plaintiff does not allege that HEX warranted a high ranking based on the actual criteria identified.[15] Notably, Coinbase, a

---

[14] The ACFA prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522(A).

[15] Among other things, in order for a cryptocurrency to be ranked in the Top 200, it must meet five criteria *in addition* to having appropriately verified market capitalization: (i) CoinMarketCap's ability to verify the project's supply information with no incongruities, (ii) significant liquidity/trading activity with normal bid-ask spreads across sufficient sources of market data, (iii) absence of significant price discrepancies across CoinMarketCap-supported exchanges, (iv) trading of the asset on at least three exchanges that possess certain attributes, and (v) strengths in other listed criteria. *Ranking (Market*

company that similarly ranks cryptocurrencies, ranked HEX around 200 during the alleged "Suppression Period" and listed it on the seventh page of results.[16]

*Second*, even if Plaintiff could identify an actional misstatement, the rankings on CoinMarketCap's website do not constitute a "sale" or "advertisement" of "merchandise" under the ACFA. "Advertisement" is defined under the ACFA as "the attempt by publication, dissemination, solicitation or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." A.R.S. § 44-1521(1). "Sale" is defined as "any sale, offer for sale or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale." A.R.S. §44-1521(7). "Merchandise" is defined as "any objects, wares, goods, commodities, intangibles, real estate or services." A.R.S. §44-1521(5).

Cryptocurrencies are currencies, not "merchandise." A ranking is an opinion, not an "advertisement" under the Act's definition, because its purpose is not to "attempt … to induce" a purchase. Certainly, the mere listing of a ranking does not qualify as a "sale" of HEX or any other cryptocurrency.

*Third*, Plaintiff fails to allege reasonable reliance on any alleged representation or omission by CoinMarketCap, as required by the ACFA. Plaintiff alleges that he sold HEX during the "Suppression Period" and simply asserts that he would have obtained a higher price but for CoinMarketCap's low ranking of HEX. The Complaint is silent on Plaintiff's use of or reliance on the rankings in connection with his transaction. Courts have been clear that a claim is not cognizable under ACFA where the Plaintiff was not himself exposed to the alleged misrepresentation or omission. *See Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 624 (D. Ariz. 2017) ("[reliance under the ACFA] must be based on the plaintiff's actual exposure to the omission")*; see also Sutter Home Winery, Inc. v.*

---

*Pair, Cryptoasset)*, CoinMarketCap, https://support.CoinMarketCap.com/hc/en-us/articles/360043836851-Ranking-Market-Pair-Cryptoasset- (last visited May 20, 2022).

[16] As of the date of the filing of this memorandum, HEX is still listed on the seventh page of results on Coinbase's website. *See* https://www.coinbase.com (seventh page of ranking results) (last visited May 20, 2022).

*Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (wine distributor who was not the buyer or target of advertising could not maintain suit against supplier for violation of Arizona's Consumer Fraud Act); *Theodosakis v. Clegg*, No. CV1402445TUCJASBPV, 2017 WL 1294529, at *20 (D. Ariz. Jan. 30, 2017), *report and recommendation adopted*, No. 4:14-CV-2445-TUC-JAS, 2017 WL 1210345 (D. Ariz. Mar. 31, 2017) (finding no claim under the ACFA because "Plaintiffs' allegations do not suggest that they are consumers subject to Defendants' alleged deception"); *Peterson v. Am. Express*, No. CV-14-02056-PHX-GMS, 2016 WL 1158881, at *10 (D. Ariz. Mar. 23, 2016) (no claim under the ACFA where alleged deception was "suffered by third-party users" and not the plaintiff).

### C. Plaintiff Fails to Allege an Antitrust Violation.

The Fifth Cause of Action purports to be a claim for antitrust violation against the corporate defendants, including CoinMarketCap. For this cause of action, the Complaint merely states that "[f]ederal law and Arizona law both provide private causes of action for antitrust violations." Compl. ¶ 258. The Complaint does not specify what statute the claim is brought under, let alone address the elements of any antitrust claim.

Such pleading is clearly deficient. Under Fed. R. Civ. P. 8, the "pleader's obligation to provide the grounds for relief requires 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Kane v. Bosco*, No. 10-CV-01787-PHX-JAT, 2010 WL 4879177, at *6 (D. Ariz. Nov. 23, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). It is well-settled that it is "never sufficient" to provide "a general allegation that the defendant violated one of the antitrust laws and that the plaintiff was injured thereby." 5 Wright & Miller, Fed. Prac. & Proc. Civ. § 1228 (4th ed.).

Plaintiff's fifth cause of action does not provide "fair notice" of the claim being asserted and the "grounds upon which it rests," *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997), and should thus be dismissed. Moreover,

antitrust invokes the concept of monopolistic conduct and there is no plausible inference that CoinMarketCap has monopoly power in any conceivable industry.

## CONCLUSION

For the foregoing reasons, CoinMarketCap respectfully requests that this Court dismiss CoinMarketCap for lack of personal jurisdiction or, in the alternative, dismiss the First, Third, and Fifth causes of action for failure to plead adequately cognizable claims.

DATED:  May 23, 2022

By: */s/ Andrea S. Tazioli*
Andrea S. Tazioli (#026621)
KW Law, LLP
6122 N. 7th St., Suite D
Phoenix, AZ 85014
andrea@kwlaw.co

Karen R. King (*pro hac vice*)
Mary G. Vitale (*pro hac vice)*
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 880-9403
Tel: (212) 880-9576
kking@maglaw.com
mvitale@maglaw.com

*Attorneys for Defendant CoinMarketCap OpCo LLC*

**CERTIFICATE OF SERVICE**

I certify that on the 23rd day of May 2022, I electronically transmitted the foregoing document to the Office of the Clerk of the Court, using the CM/EFC System, for filing and for transmittal of a Notice of Electronic Filing to the CM/EFC registrants on record.

/s/ Sarah Flaaen
*Employee of KW Law, LLP*