George Wentz, Jr. (admitted via *pro hac vice*)
**Davillier Law Group, LLC**
414 Church St., Suite 308
Sandpoint, ID 83864

Alexander Kolodin (SBN 030826)
Arno T. Naeckel (SBN 026158)
**Davillier Law Group, LLC**
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
Telephone: (602) 730-2985
gwentz@davillierlawgroup.com
akolodin@davillierlawgroup.com
anaeckel@davillierlawgroup.com

Matthew W. Schmidt (*Pro hac vice application forthcoming*)
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
matthew.schmidt@balestrierefariello.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **RYAN COX**, individually, and for all others similarly situated,<br><br>Plaintiffs,<br><br>–against–<br><br>**COINMARKETCAP OPCO, LLC; BINANCE CAPITAL MANAGEMENT CO., LTD. D/B/A/ BINANCE AND BINANCE.COM; BAM TRADING SERVICES INC. D/B/A BINANCE.US; CHANGPENG ZHAO; CATHERINE COLEY; YI HE; TED LIN;** and **DOES I-X,**<br><br>Defendants. | **Case No. 3:21-cv-08197-SMB**<br><br>**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS BY DEFENDANTS BINANCE CAPITAL MANAGEMENT CO., LTD. D/B/A/ BINANCE AND BINANCE.COM, ZHAO, HE, AND LIN** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF FACTS ...................................................................................... 3

III. LEGAL STANDARD ............................................................................................. 3

IV. ARGUMENT ........................................................................................................... 8

    A. THIS COURT HAS PERSONAL JURISIDCTION OVER BINANCE AND THE INDIVIDUAL DEFENDANTS ................................................................. 8

        1. The CEA Provides Personal Jurisdiction over Binance .............................. 8

        2. Personal Jurisdiction Over Binance is Also Proper Because Binance Acted as the Alter Ego of Defendant Binance.US and the Individual Defendants ................................................................................................................... 8

        3. In the Alternative, Plaintiff Should Be Allowed Jurisdictional Discovery ................................................................................................................. 10

    B. PLAINTIFF HAS PROPERLY ALLEGED HIS CLAIMS AGAINST BINANCE ................................................................................................................................. 11

    C. SERVICE ON THE INDIVIDUAL DEFENDANTS WAS PROPER ............... 11

V. CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Barnett v Centoni*,
  31 F. 3d 813 (9th Cir. 1994) ........................................................................................ 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 8

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ....................................................................................... 9

*Geanacopulos v. Narconon Fresh Start*,
  39 F. Supp. 3d 1127 (D. Nev. 2014) ........................................................................... 9

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ................................................................................... 10

*Laub v. U.S. Dep't of the Interior*,
  342 F.3d 1080 (9th Cir. 2003) ................................................................................... 10

*Peterson v. Highland Music, Inc.*,
  140 F.3d 1313 (9th Cir. 1998) ..................................................................................... 7

*Smith v. Jackson*
  84 F.3d 1213 (9th Cir. 1996) ....................................................................................... 8

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ..................................................................................... 8

**Statutes**

7 U.S.C. § 25(c) ............................................................................................................ 1, 8

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................ 8

Fed. R. Civ. P. 26(d) ..................................................................................................... 10

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), 12(b)(5), and 12(b)(6), Plaintiff Ryan Cox ("Cox"), individually, and for all others similarly situated (the "Class"), hereby files his Response to the Motion to the Dismiss (Dkt. No. 71, "Motion") by Defendants Binance Capital Management Co. Ltd. ("Binance"), Changpeng Zhao ("Zhao"), Yi He ("He"), and Ted Lin ("Lin") (Zhao, He, and Lin collectively referred to as the "Individual Defendants").

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

Binance and the Individual Defendants, along with Defendants Bam Trading services Inc. d/b/a Binance.US ("Binance.US") and CoinMarketCap Op Co, LLC ("CoinMarketCap.Com"), peddled a false ranking of cryptocurrencies to artificially suppress the value of HEX, a cryptocurrency that threatened its own business and investments. Such a false representation of ranking in the cryptocurrency industry, which supposedly represents the relative position of a cryptocurrency by market capitalization, is in violation of the federal Commodity Exchange Act ("CEA") and the Arizona Consumer Fraud Act ("ACFA"). This action seeks to redress the rights afforded to Plaintiff and the Class, which represents all HEX owners who sold HEX during the artificial deflation of HEX (the "Suppression Period").

First, this Court has personal jurisdiction over Binance because the CEA provides the action may be brought wherein the act or transaction constituting the violation occurs. 7 U.S.C. § 25(c). Further, the Court has personal jurisdiction over Binance because it acted as the alter ego of Defendant Binance.US. Plaintiff has alleged that there is such unity of interest and ownership between Binance and Binance.US because Binance.US utilizes Binance's ecosystem, and would-be Binance users in the United States are redirected to Binance.US. But the unity of interest and ownership does not stop there: the CEO of Binance.US, Catherine Coley ("Coley"), provided that she reported to Binance.US's Board of Directors, and at least two of the Board members had a controlling interest in Binance.

1

(Compl. ¶ 201.) This Court has personal jurisdiction over Binance because it acted as the alter ego of Binance.US.

Second, Plaintiff pleads claims under the CEA warranting dismissal of Binance's Motion. As discussed in Plaintiff's responses to motions to dismiss by Binance.US and CoinMarketCap.Com, Binance had the ability to influence market prices because it knowingly directed users to false information available on CoinMarketCap.Com, its subsidiary and strategic partner, which then lied to its users about HEX's ranking. For example, during the Suppression Period, when other websites had ranked HEX between fourth and tenth in size, CoinMarketCap.Com ranked HEX at 201—yet Binance and Binance.US directed its users to CoinMarketCap.Com for "objective" information. As a result, the lies by Binance, Binance.US, and CoinMarketCap.Com deflated the cryptocurrency's value during the Suppression Period. Binance planned, permitted, and authorized this scheme because HEX, a cryptocurrency designed to discourage active trading with its high-yield interest rates, was a threat to Binance—which relies on active trading to make money. The Court should allow Plaintiff to proceed with his CEA claims against Binance.

Plaintiff also pleads claims under the ACFA warranting dismissal of Binance's Motion. The ACFA seeks to protect consumers within Arizona from any deception or unfair act or practice. Plaintiff has alleged all the necessary elements for a claim under the ACFA: (1) Binance misrepresented the true ranking of HEX through CoinMarketCap.Com, which it deemed as "objective" (while other websites ranked HEX as between fourth and tenth in size, CoinMarketCap.Com ranked HEX at 201) (2) Binance's misrepresentations occurred in connection with advertising itself as a place to buy and sell cryptocurrency, and (3) Plaintiff occurred injury when Binance failed to disclose the true ranking of HEX, which he relied on to sell HEX during the Suppression Period. The Court should allow Plaintiff to proceed with his claims under the ACFA.

1  Third, service on the Individual Defendants was proper. Pursuant to Rule 4, this Court has discretion to determine when alternative service is required. In fact, this Court recognized its authority under Rule 4(f)(3) and authorized alternative service because the Individual Defendants were "international ghosts" who dodged Plaintiff's diligent attempts to serve the Summons and Complaint in this action. With vast wealth at their command, the Individual Defendants have been able to dodge regulators and investigations funded by governments, let alone private citizens seeking to hold them accountable for their actions. Thus, the Court authorized service by tweeting a copy of the summons and a link to the Complaint to the verified Twitter accounts the Individual Defendants. (Dkt. No. 54.) Therefore, it was appropriate that this Court permitted Plaintiff to serve the Individual Defendants by alternative means.

The Court should find that it has personal jurisdiction over Binance and the Individual Defendants, that service was proper, and that Plaintiff has pleaded claims under the CEA and ACFA.

## II. STATEMENT OF FACTS[1]

*Ranking Websites Are Integral to the Cryptocurrency Industry*

In September 2018, Nic Carter ("Carter"), who is a partner at venture capital firm Castle Island Ventures, and co-founder of CoinMetrics.io, detailed the relationship between exchanges (a platform on which individuals can buy and sell cryptocurrency), coin ranking websites (rankings are usually based on a cryptocurrency's relative position by its market capitalization), and retail investors (who are mainly non-professional investors). (Compl. ¶ 6.) Carter warned in his article that ranking websites:

> [O]ccupy a fêted position in the industry. Ostensibly, they perform a useful service to investors and receive little in return aside from ad

---

[1] Plaintiff asserts substantially similar Statement of Facts in his simultaneous responses to Defendants' motions to dismiss (Dkt. Nos. 70–72.)

3

| | |
|---|---|
| 1 | revenue. But the under-reported reality is more sinister. Rankings sites |
| 2 | are squarely at the center of the extractive game that siphons money |
| 3 | from retail investors and deposits it into the pockets of altcoin creators |
| 4 | and exchange operators. |

(*Id.* ¶ 6.) Carter further explained that:

> Many if not most exchanges have affiliate schemes, and referral links ("reflinks") can be a lucrative source of revenue if you are the intermediary between active traders and exchanges" and that "investors go to [coin rankings] sites to find links to exchanges where they can trade their coins of choice, especially if they are smaller projects and do not have many points of liquidity. Since the rankings sites are the ports of call for investors, they have an almost captive audience and can easily monetize with an affiliate link."

(*Id.* ¶ 7.)

*CoinMarketCap.Com Emerges as the Largest Player in the Ranking Business*

CoinMarketCap.Com is one of those websites that rank cryptocurrencies by their market capitalization. (*Id.* ¶ 80.) CoinMarketCap.Com claims that its mission is to make cryptocurrencies discoverable and efficient globally by empowering retail users with unbiased, high quality, and accurate information by drawing their own informed conclusions. (*Id.* ¶ 14.) In April 2020, CoinDesk, a popular news website specializing in cryptocurrency, referred to CoinMarketCap.Com as the "dominant data source and go-to platform for asset pricing" in the cryptocurrency space as well as the "first landing page for retail investors[.]" (*Id.* ¶ 21.) Yet despite its status as "the first port of call for small retail buyers" CoinDesk also noted that "institutional investors [have] spurned the website, particularly after [a report of misconduct on the part of CoinMarketCap.Com was made to the SEC]." (*Id.*) Nonetheless, Coindesk notes that "exchanges have always used CoinMarketCap[.]"

(*Id.*) Today, CoinMarketCap.Com refers to itself as the world's most-referenced price-tracking website for crypto-assets. (*Id.*)

To highlight CoinMarketCap.Com's powerful influence, Adel de Meyer ("de Meyer"), the CEO of DAPS Coin, another cryptocurrency, said to Forbes Magazine that "[a] ranking authority with the size and reputation of CoinMarketCap[.Com] has the capacity to essentially 'hide' a [cryptocurrency] at will." (*Id.* ¶ 22.) To "hide" a cryptocurrency essentially means that CoinMarketCap.Com can manipulate the ranking of a cryptocurrency and thus suppress the market for such cryptocurrency (as well as its price). (*Id.* ¶ 171.)

The CEO also provided that CoinMarketCap.Com's dominance creates an environment ripe "for collusion, corruption, and coercion" and that CoinMarketCap.Com has reduced market caps arbitrarily, leaving "investors and traders confused" and "damaging the reputation" of some cryptocurrencies. (*Id.* ¶ 23.) De Meyer concluded that CoinMarketCap.Com's flawed rankings were "dangerous" and posed a risk to retail investors. (*Id.*)

*Binance Acquires CoinMarketCap.Com*

Binance is an exchange that allows individuals to buy and sell cryptocurrencies. (*Id.* ¶ 5.) In 2019, American regulators banned Binance from operating in the United States. (*Id.* ¶ 36.) But in response to its ban, Binance launched Binanace.US, an exchange that would "bring the security, speed, and liquidity of Binance[] to North America," and ensure that Binance was in "full regulatory compliance" through Binance.US. (*Id.* ¶ 37.) While Binance.US offers a similar interface and feature set to its Binance counterpart, it is also banned in at least seven states in the United States. (*Id.* ¶¶ 43, 44.) In 2020, Binance acquired CoinMarketCap.Com, which is now a subsidiary of Binance. (*Id.* ¶ 17.) During the acquisition period, experts in the crypto industry opined that the acquisition was "not very good for the industry given the conflict of interest between the parties missions." (*Id.* ¶ 19.) Namely, CoinMarketCap.Com was apparently in the business

5

of providing "unbiased, high quality, and accurate information," and Binance and Binance.US were exchanges that sought active trading. (*Id.* ¶ 14.) Today, despite its ban, Binance has a market capitalization of $1.3 billion and the highest trading volume of any such exchange, making it the largest cryptocurrency exchange in the world. (*Id.* ¶ 26.)

*CoinMarketCap.Com's Lies and Claims It Provides Objective Rankings*

CoinMarketCap.Com provides that "it strictly follows and enforces its independent listing criteria guidelines, circulating supply calculation methods and liquidity score for how it ranks cryptoassets. Cryptoassets that wish to be listed on CoinMarketCap should follow the guidelines in our listing policy and will be fairly and independently evaluated on their merits. CoinMarketCap's official ranking criteria is designed to eliminate any possibility of preferential treatment. CoinMarketCap will continue to present the most accurate data on cryptocurrencies to the wider public independently. Our mission at CoinMarketCap has always been to provide all our users with the most accurate and relevant information to select exchanges and tokens to invest and trade in." (*Id.* ¶ 76.)

*During the Suppression Period, CoinMarketCap.Com, Along with Binance and Binance.US, Artificially Deflated the Price of HEX*

CoinMarketCap.Com ranked HEX along with other cryptocurrencies based on their market capitalization. (*Id.* ¶ 80.) In 2020, HEX was the best performing cryptocurrency of 2020. (*Id.* ¶ 90.) CoinMarketCap.Com, however, ranked HEX at 201 that year and refused to adjust its rank based on HEX's performance as related to other cryptocurrencies. (*Id.*) CoinMarketCap.Com also ranked Binance Coin and Binance USD, which were issued by its parent company, Binance (meaning Binance and its principals have a financial interest in ensuring the strongest possible demand for Binance Coin and Binance USD. (*Id.* ¶¶ 99, 102, 104.) On July 21, 2021, CoinMarketCap.Com ranked Binance Coin as the fourth largest cryptocurrency and Binance USD as the tenth largest cryptocurrency. (*Id.* ¶¶ 101, 105.)

On July 21, 2021, during the Suppression Period, Nomics (another website that ranks cryptocurrencies based on their market capitalization) provided that HEX's market cap was $85.3 billion—meaning that HEX should have been ranked third in size. (*Id.* ¶¶ 106, 107.) CoinMarketCap.Com, however, listed HEX's market cap as just over $25.6 billion. (*Id.* ¶ 108.) Even at a market cap of just over $25.6 billion, HEX should have been ranked sixth in size. (*Id.* ¶ 109.) But, on July 21, 2021, CoinMarketCap.Com still ranked HEX at 201 in size. (*Id.* ¶ 110.) In fact, HEX only appeared on the third page of CoinMarketCap.Com's ranking. (*Id.* ¶ 111.)

At around the same time, smaller ranking websites including Nomics, Coinranking, Yahoo Crypto, TradingView, Coinpaprika, Etherscan, and CryptoCurrencyCap all had HEX ranked between fourth and tenth in size. (*Id.* ¶ 113.) CoinMarketCap.Com's failure to accurately rank HEX artificially suppressed HEX's value because at least some individuals who purchased higher ranked cryptocurrencies would have purchased HEX instead. (*Id.* ¶ 115.)

*Defendants Damage Plaintiff and the Class by Suppressing HEX's Value*

CoinMarketCap.Com's failure to accurately rank HEX—and instead outright make false statements to the trading public—has artificially suppressed HEX's value to the detriment of Plaintiff and those similarly situated. (*Id.* ¶ 114.) Plaintiff seeks to redress Defendants' misconduct on behalf of all persons who purchased HEX prior to the Suppression Period but sold HEX during the Suppression Period. (*Id.* ¶ 146.) But for CoinMarketCap.Com's failure to accurately rank HEX, Plaintiff and the Class would have sold their shares that were not subject to CoinMarketCap.Com's intentional suppression. (*Id.*)

## III. LEGAL STANDARD

First, the Court has personal jurisdiction over Binance and the Individual Defendants. A plaintiff responding to a motion to dismiss for lack of personal jurisdiction need only make out a prima facie case for jurisdiction at the pleading stage; the plaintiff does not need prove jurisdiction by a "preponderance of the

evidence." *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1319 (9th Cir. 1998). Moreover, in a federal question case involving defendants who reside outside of the forum state, the issue of personal jurisdiction is governed by the forum state's personal jurisdiction rules in the absence of a federal statute governing personal jurisdiction. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (providing the standard). Under this standard, the Court has personal jurisdiction over Binance.US.

Second, the Court should allow Plaintiff and the Class to proceed into discovery with all of their claims. When reviewing a motion to dismiss for failure to state a claim, the Court must consider all factual allegations in a plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. Fed. R. Civ. P. 12(b)(6); *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court may not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Barnett v Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994). The Court should allow Plaintiff and the Class to proceed with all their claims into discovery.

## IV. ARGUMENT

### A. THIS COURT HAS PERSONAL JURISIDCTION OVER BINANCE AND THE INDIVIDUAL DEFENDANTS

#### 1. The CEA Provides Personal Jurisdiction over Binance

This Court has personal jurisdiction over Binance because the CEA provides an action may be brought wherein the act or transaction constituting the violation occurs. 7 U.S.C. § 25(c). Minimum contacts with a particular district or state for purposes of personal jurisdiction is not a limitation imposed on the federal courts in a federal-question case by due process concerns. *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1127–28 (D. Ariz. 2006) (finding a securities statute authorizing nationwide service of process established personal jurisdiction over defendants); *Bulgo v.*

*Munoz*, 853 F.2d 710, 713 (9th Cir. 1988) (also holding that the district court had jurisdiction under Section 27 of the Securities Exchange Act). Thus, where a federal statute, such as 7 U.S.C. § 25(c), confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state. *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989) (finding personal jurisdiction may be established in any district if sufficient national contacts are found under a national service statute). There can be no disputes that Binance has sufficient contacts with the United States, as Binance's express intent to launch Binance.US in the United States was to bring the liquidity of Binance to the United States. (Compl. ¶ 37.) This Court has personal jurisdiction over Binance.

### 2. Personal Jurisdiction Over Binance is Also Proper Because Binance Acted as the Alter Ego of Defendant Binance.US and the Individual Defendants

This Court has personal jurisdiction over Binance.US because the CEA provides the action may be brought wherein the act or transaction constituting the violation occurs. 7 U.S.C. § 25(c).

Further, Court has personal jurisdiction over Binance and Individual Defendants because they acted as the alter ego of Defendant Binance.US (which the Court has personal jurisdiction over, as discussed simultaneously in Plaintiff's Response to the Motion to Dismiss by Binance.US). To prove personal jurisdiction on an alter ego theory, a plaintiff must show (1) that there is such unity of interest and ownership that separate personalities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). Binance acted as the alter ego of Defendant Binance.US and the Individual Defendants.

First, there is such unity of interest between Binance and Binance.US that separate personalities of the two entities no longer exists. Binance.US operates

Binance for reasons including (1) Binance takes American users to Binance.US's website (assuming that there is a distinction at all) and Binance.US provides Binance Services, as that phrase is defined in the Binance Terms, in that it utilizes internet or blockchain technologies developed by Binance and one or more Binance ecosystem components such as "digital asset trading platform." (Compl. ¶ 200.) In an April 2020 Forbes Magazine interview, the CEO of Binance.US, Catherine Coley, stated that she reported to BAM's board of directors and that the other two people on the board were Defendant Zhao and Wei Zho, then Binance's CFO (*id.* ¶ 200). *Airbus DS Optronics GmbH v. Nivisys LLC*, 183 F. Supp. 3d 986, 992 (D. Ariz. 2016) (alter ego factor may be proved by common officers or directors). Further, Binance and Zhao even own a significant portion of Binance.US. (Compl. ¶ 42.)

Second, failure to disregard the separate identities of Binance and Binance.US would result in fraud or injustice. As a Binance Operator, Binance.US is bound by the Binance Terms as well as by the terms of its supposed "brand partnership" with Binance and any technology licenses with Binance. (*Id.* ¶ 203.) Binance.US is also responsible for ensuring that Binance's US operations, including those of its Operator and strategic partner CoinMarketCap.Com, comply with American law. (*Id.* ¶ 204.) These allegations support the exercise of personal jurisdiction over Binance and the Individual Defendants based on the agency test.

### 3. In the Alternative, Plaintiff Should Be Allowed Jurisdictional Discovery

Plaintiff requests that if this Court is inclined to grant Binance's Motion to Dismiss for lack of personal jurisdiction, that this Court wait to do so until such time as sufficient jurisdictional discovery can be taken, allowing the full factual record to be presented to the Court. *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary"); *Harris Rutsky & Co. Ins. Servs. v. Bell*

*& Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (holding that the district court abused its discretion by failing to allow plaintiff discovery sufficient to demonstrate jurisdiction over corporate defendant under "alter ego or agency tests"); Fed. R. Civ. P. 26(d) advisory committee's note (1993) (noting that discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving . . . motions challenging personal jurisdiction"). As such, to the extent the Court believes additional information is needed to determine whether personal jurisdiction exists over Binance, Plaintiff respectfully requests that the Court permit jurisdictional discovery.

### B. PLAINTIFF HAS PROPERLY ALLEGED HIS CLAIMS AGAINST BINANCE

Plaintiff respectfully refers the Court to Plaintiff's Response to Binance.US's Motion to Dismiss for its response to Binance's argument on any pleading deficiencies.

### C. SERVICE ON THE INDIVIDUAL DEFENDANTS WAS PROPER

As this Court has already concluded (Dkt. No. 54), alternative service on the Individual Defendants was proper. As argued in prior briefing (Dkt. No. 50), Individual Defendants have ordered their affairs to maintain inaccessibility to the general public. With vast wealth at their command, the Individual Defendants have been able to dodge regulators and investigations funded by governments, let alone private citizens seeking to hold them accountable for their actions. Therefore, it was appropriate that this Court permitted Plaintiff to service by alternative means.

### V. CONCLUSION

Biance, along with the other Defendants, intentionally lied to investors and provided inaccurate ranking of HEX, which artificially suppressed its value and damaged Plaintiff and the Class. The Court should find that is has personal jurisdiction over Binance because the CEA confers nationwide service of process in

federal court for federal-question cases without falling short of the requirements of due process. Further, the Court has personal jurisdiction over Binance because it is also the alter-ego of Binance.US. Plaintiff and the Class have pleaded claims under the CEA and ACFA warranting dismissal of Binance's Motion.

Dated: July 22, 2022

By: /s/ *Arno Naeckel*

George Wentz, Jr. (admitted via *pro hac vice*)

**Davillier Law Group, LLC**

414 Church St., Suite 308

Sandpoint, ID 83864

Telephone: 208-920-6140

gwentz@davillierlawgroup.com

Alexander Kolodin (SBN 030826)

Arno T. Naeckel (SBN 026158)

**Davillier Law Group, LLC**

4105 North 20th St. Suite 110

Phoenix, AZ 85016

Telephone: 602-730-2985

akolodin@davillierlawgroup.com

anaeckel@davillierlawgroup.com

John G. Balestriere (*PHV application forthcoming*)

Matthew W. Schmidt (*PHV application forthcoming*)

**BALESTRIERE FARIELLO**

225 Broadway, 29th Floor

New York, New York 10007

Telephone:  (212) 374-5401

Facsimile:  (212) 208-2613

john.balestriere@balestrierefariello.com

matthew.schmidt@balestrierefariello.com

| | **CERTIFICATE OF SERVICE** |
|---|---|
| 1 | |
| 2 | |
| 3 | I certify that on the 22nd day of July 2022, I electronically transmitted the foregoing document to the Office of the Clerk of the Court, suing CM/EFC System, for filing and for transmittal of a Notice of Electronic Filing to the CM/EFC registrants on record. |

*/s/* Arno Naeckel

**Davillier Law Group, LLC**