George Wentz, Jr. (admitted via *pro hac vice*)
**Davillier Law Group, LLC**
414 Church St., Suite 308
Sandpoint, ID 83864

Alexander Kolodin (SBN 030826)
Arno T. Naeckel (SBN 026158)
**Davillier Law Group, LLC**
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
Telephone:  (602) 730-2985
gwentz@davillierlawgroup.com
akolodin@davillierlawgroup.com
anaeckel@davillierlawgroup.com

Matthew W. Schmidt (*Pro hac vice application forthcoming*)
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:  (212) 374-5401
matthew.schmidt@balestrierefariello.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **RYAN COX,** individually, and for all others similarly situated,<br><br>    Plaintiffs,<br><br>  –against–<br><br><br>**COINMARKETCAP OPCO, LLC; BINANCE CAPITAL MANAGEMENT CO., LTD. D/B/A/ BINANCE AND BINANCE.COM; BAM TRADING SERVICES INC. D/B/A BINANCE.US; CHANGPENG ZHAO; CATHERINE COLEY; YI HE; TED LIN;** and **DOES I-X;.**<br><br>    Defendants. | Case No. 3:21-cv-08197-SMB<br><br>**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS BY DEFENDANT BAM TRADING SERVICES INC. D/B/A BINANCE.US** |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................ 1

II. STATEMENT OF FACTS ............................................................................... 3

III. LEGAL STANDARD ..................................................................................... 7

IV. ARGUMENT .................................................................................................. 8

A. THIS COURT HAS PERSONAL JURISIDCTION OVER BINANCE.US
BASED ON ITS CONDUCT ............................................................... **8**

   1.  The CEA Provides Personal Jurisdiction Over Binance.US ....................... **8**

   2.  Plaintiff Has Also Established Binance.US Purposefully Directs Its
Activities in Arizona ................................................................................... **8**

   3.  Plaintiff's Claims Arise Out of and Relate to Defendant's Forum Related
Activities .................................................................................................. **11**

   4.  Defendants Have Not Come Forward with Compelling Evidence that the
Exercise of Jurisdiction Would be Unreasonable ..................................... **11**

B. PLAINTIFF HAS PROPERLY ALLEGED HIS CLAIMS AGAINST
BINANCE.US ..................................................................................... **12**

   1.  Binance.US Violated the CEA Because It Intentionally Influenced and
Caused Artificial Prices ........................................................................... **12**

   2.  The CEA's Broad Codification of Respondeat Superior and Binance.US's
Alter Ego Relationship with Binance and CoinMarketCap.Com Makes
Binance.US Liable for All Violations ....................................................... **14**

   3.  Binance.US's Manipulation of a Commodity Also Violates the Arizona
Consumer Fraud Act ................................................................................ **16**

   4.  Binance.US Is Further Liable for Violating the ACFA Because it Controls
CoinMarketCap.Com ............................................................................... **17**

   5.  Plaintiff Reserves His Rights to Include Additional Claims Under Federal
and State Antitrust Law ........................................................................... **17**

i

V. CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*AMA Multimedia LLC v. Sagan Ltd.,*

    No. CV-16-01269-PHX-DGC, 2016 WL 5946051 (D. Ariz. Oct. 13, 2016) ....... 9, 11

*Bancroft & Masters, Inc. Augusta Nat'l Inc.,*

    223 F.3d 1082 (9th Cir. 2000) ................................................................. 9, 10

*Barnett v Centoni,*

    31 F. 3d 813 (9th Cir. 1994) .......................................................................... 8

*Bell Atlantic Corp. v. Twombly,*

    550 U.S. 544 (2007) ...................................................................................... 8

*Bergdale v. Countrywide Bank FSB,*

    No. cv–12–8057–PCT–GMS, 2013 WL 105295 (D. Ariz. Jan. 9, 2013) ............... 16

*Biliack v. Paul Revere Life Ins. Co.,*

    2017 WL 4325594 (D. Ariz. Aug. 24, 2017) ........................................... 10

*Burger King Corp. v. Rudzewicz,*

    471 U.S. 464 (1985) .................................................................................... 11

*Calder v. Jones,*

    465 U.S. 783 (1984) ...................................................................................... 9

*Cange v. Stotler & Co.,*

    826 F.2d 581 (7th Cir. 1987) ..................................................................... 14

*Dohmen-Ramirez v. Commodity Futures Trading Com.,*

    837 F.2d 847 (9th Cir. 1988) ..................................................................... 14

*Gatecliff v. Great Republic Life Ins. Co.,*

    821 P.2d 725 (1991) ............................................................................. 14, 15

*In re Amaranth Nat'l Gas Commodities Litig.,*

    587 F. Supp. 2d 513 (S.D.N.Y. 2008) ........................................................ 14

*In re American Southwest Mortg. Litig.,*

    No. CIV 89-462 TUC-RMB, 1991 WL 164473, (D. Ariz. Aug. 14, 1991) ............. 17

*In re Commodity Exch., Inc.,*

    213 F. Supp. 3d 631 (S.D.N.Y. 2016) ............................................... 12, 13, 14

*Kingsley Capital Mgmt., LLC v. Sly,*

    No. CV-10-02243-PHX-NVW, 2013 WL 3967615, (D. Ariz. Aug. 2, 2013 .......... 17

*Lake v. Lake,*

    817 F.2d 1416 (9th Cir. 1987) ................................................................. 8

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*

    647 F.3d 1218 (9th Cir. 2011) ................................................................. 9

*Panavision Int'l, L.P. v. Toeppen,*

    141 F.3d 1316 (9th Cir. 1998) ........................................................... 10, 11

*Peterson v. Highland Music, Inc.,*

    140 F.3d 1313 (9th Cir. 1998) ................................................................. 7

*Schwarzenegger v. Fred Martin Motor Co.,*

    374 F.3d 797 (9th Cir. 2004) ................................................................ 8, 9

*Smith v. Jackson,*

    84 F.3d 1213 (9th Cir. 1996) ................................................................. 7

*U–Haul Int'l v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*

    No. CV-10-1047-PHX-SMM, 2011 WL 9111 (D. Ariz. May 3, 2016) ................... 15

*Washington Shoe Co. v. A-Z Sporting Goods Inc.,*

    704 F.3d 668 (9th Cir. 2012) ................................................................ 10

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*

    433 F.3d 1199 (9th Cir. 2006) ................................................................................. 7, 10

**Statutes**

7 U.S.C. § 1 ......................................................................................................................... 13

7 U.S.C. § 25 ................................................................................................................. 1, 8, 12

7 U.S.C. § 13(a)(2) ............................................................................................................. 12

7 U.S.C.  § 9(3) .................................................................................................................. 12

Ariz. Rev. Stat. § 44–1521 *et seq.* ................................................................................... 16

Ariz. Rev. Stat. § 44-1999 *et seq.* ................................................................................... 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 7

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and (6), Plaintiff Ryan Cox ("Cox"), individually, and for all others similarly situated (the "Class"), hereby files his Response to the Motion to the Dismiss (Dkt. No. 70, the "Motion") by Defendant Bam Trading Services Inc. d/b/a. Binance.US. ("Binance.US").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Binance.US, along with Defendants CoinMarketCap OpCo, LLC ("CoinMarketCap.Com") and Binance Capital Mgmt. Co., Ltd. ("Binance"), peddled a false ranking of cryptocurrencies to artificially suppress the value of HEX, a cryptocurrency that threatened the businesses and investments of Binance and Binance.US. Such a false representation of ranking in the cryptocurrency industry, which supposedly represents the relative position of a cryptocurrency by market capitalization, is in violation of the federal Commodity Exchange Act ("CEA") and the Arizona Consumer Fraud Act ("ACFA"). This action seeks to redress the rights afforded to Plaintiff and the Class, which represents all HEX owners who sold HEX during the artificial deflation of HEX (the "Suppression Period").

First, this Court has personal jurisdiction over Binance.US because the CEA provides an action may be brought wherein the act or transaction constituting the violation occurs. 7 U.S.C. § 25(c). Further, Binance.US also purposefully availed itself of the benefits of doing business in Arizona. Under the Ninth Circuit's three-part test, Plaintiff has established that this Court has personal jurisdiction because: (1) Binance.US purposefully directs its activities in the forum state by operating in Arizona, which, unlike several other states, has not banned Binance.US from providing or marketing its services to Arizonians; (2) Binance.US sought and obtained licensure as a money transmitter from the Arizona Department of Financial Institutions, which allows Binance.US to sell or issue payments

instruments and receive money for transmission in Arizona, and (3) Binance.US, which already interacts with the Arizona's legal and regulatory scheme, has not proved that an unreasonable burden would exist if it had to defend itself in this forum. This Court has personal jurisdiction over Binance.US.

Second, Plaintiff pleads claims under the CEA warranting dismissal of Binance.US's Motion. Binance.US had the ability to influence market prices because it knowingly directed users to false information available on CoinMarketCap.Com, its subsidiary and strategic partner, which then lied to its users about HEX's ranking. For example, during the Suppression Period, when other websites had ranked HEX between fourth and tenth in size, CoinMarketCap.Com ranked HEX at 201—yet Binance.US directed its users to CoinMarketCap.Com for "objective" information. As a result, the lies by Binance.US and CoinMarketCap.Com deflated the cryptocurrency's value during the Suppression Period. Binance.US planned, permitted, and authorized this scheme because HEX, a cryptocurrency designed to discourage active trading with its high-yield interest rates, was a threat to Binance.US's business model. In fact, the CEA's broad codification of respondeat superior, and Binance.US's alter ego relationship with Binance and CoinMarketCap.Com, in itself creates further liability for Binance.US under the CEA. The Court should allow Plaintiff to proceed with his CEA claims against Binance.US.

Third, Plaintiff pleads claims under the ACFA warranting dismissal of Binance.US's Motion. The ACFA seeks to protect consumers within Arizona from any deception or unfair act or practice. Plaintiff has alleged all the necessary elements for a claim under the ACFA: (1) Binance.US misrepresented the true ranking of HEX through CoinMarketCap.Com (while other websites ranked HEX as between fourth and tenth in size, CoinMarketCap.Com ranked HEX at 201) (2) Binance.US's misrepresentations occurred in connection with advertising itself as a place to buy and sell cryptocurrency, and (3) Plaintiff occurred injury when

Binance.US failed to disclose the true ranking of HEX, which he relied on to sell HEX during the Suppression Period. The Court should allow Plaintiff to proceed with his claims under the ACFA.

The Court should find that is has personal jurisdiction over Binance.US and allow Plaintiff and the Class to proceed with their claims under the CEA and ACFA. Plaintiff and the Class also reserve the right to amend their pleadings to address any deficiencies.

## II.   STATEMENT OF FACTS[1]

*Ranking Websites Are Integral to the Cryptocurrency Industry*

In September 2018, Nic Carter ("Carter"), who is a partner at venture capital firm Castle Island Ventures, and co-founder of CoinMetrics.io, detailed the relationship between exchanges (a platform on which individuals can buy and sell cryptocurrency), coin ranking websites (rankings are usually based on a cryptocurrency's relative position by its market capitalization), and retail investors (who are mainly non-professional investors). (Compl. ¶ 6.) Carter warned in his article that ranking websites:

> [O]ccupy a fêted position in the industry. Ostensibly, they perform a useful service to investors and receive little in return aside from ad revenue. But the under-reported reality is more sinister. Rankings sites are squarely at the center of the extractive game that siphons money from retail investors and deposits it into the pockets of altcoin creators and exchange operators.

(*Id.* ¶ 6.) Carter further explained that:

> Many if not most exchanges have affiliate schemes, and referral links ("reflinks") can be a lucrative source of revenue if you are the intermediary between active traders and exchanges" and that

---

[1] Plaintiff asserts substantially similar Statement of Facts in his simultaneous responses to Defendants' motions to dismiss (Dkt. Nos. 70–72.)

"investors go to [coin rankings] sites to find links to exchanges where they can trade their coins of choice, especially if they are smaller projects and do not have many points of liquidity. Since the rankings sites are the ports of call for investors, they have an almost captive audience and can easily monetize with an affiliate link."

(*Id.* ¶ 7.)

*CoinMarketCap.Com Emerges as the Largest Player in the Ranking Business*

CoinMarketCap.Com is one of those websites that rank cryptocurrencies by their market capitalization. (*Id.* ¶ 80.) CoinMarketCap.Com claims that its mission is to make cryptocurrencies discoverable and efficient globally by empowering retail users with unbiased, high quality, and accurate information by drawing their own informed conclusions. (*Id.* ¶ 14.) In April 2020, CoinDesk, a popular news website specializing in cryptocurrency, referred to CoinMarketCap.Com as the "dominant data source and go-to platform for asset pricing" in the cryptocurrency space as well as the "first landing page for retail investors[.]" (*Id.* ¶ 21.) Yet despite its status as "the first port of call for small retail buyers" CoinDesk also noted that "institutional investors [have] spurned the website, particularly after [a report of misconduct on the part of CoinMarketCap.Com was made to the SEC]." (*Id.*) Nonetheless, Coindesk notes that "exchanges have always used CoinMarketCap[.]" (*Id.*) Today, CoinMarketCap.Com refers to itself as the world's most-referenced price-tracking website for crypto-assets. (*Id.*)

To highlight CoinMarketCap.Com's powerful influence, Adel de Meyer ("de Meyer"), the CEO of DAPS Coin, another cryptocurrency, said to Forbes Magazine that "[a] ranking authority with the size and reputation of CoinMarketCap[.Com] has the capacity to essentially 'hide' a [cryptocurrency] at will." (*Id.* ¶ 22.) To "hide" a cryptocurrency essentially means that CoinMarketCap.Com can manipulate the ranking of a cryptocurrency and thus suppress the market for such cryptocurrency (as well as its price). (*Id.* ¶ 171.)

4

The CEO also provided that CoinMarketCap.Com's dominance creates an environment ripe "for collusion, corruption, and coercion" and that CoinMarketCap.Com has reduced market caps arbitrarily, leaving "investors and traders confused" and "damaging the reputation" of some cryptocurrencies. (*Id.* ¶ 23.) De Meyer concluded that CoinMarketCap.Com's flawed rankings were "dangerous" and posed a risk to retail investors. (*Id.*)

*Binance Acquires CoinMarketCap.Com*

Binance is an exchange that allows individuals to buy and sell cryptocurrencies. (*Id.* ¶ 5.) In 2019, American regulators banned Binance from operating in the United States. (*Id.* ¶ 36.) But in response to its ban, Binance launched Binanace.US, an exchange that would "bring the security, speed, and liquidity of Binance[] to North America," and ensure that Binance was in "full regulatory compliance" through Binance.US. (*Id.* ¶ 37.) While Binance.US offers a similar interface and feature set to its Binance counterpart, it is also banned in at least seven states in the United States. (*Id.* ¶¶ 43, 44.) In 2020, Binance acquired CoinMarketCap.Com, which is now a subsidiary of Binance. (*Id.* ¶ 17.) During the acquisition period, experts in the crypto industry opined that the acquisition was "not very good for the industry given the conflict of interest between the parties missions." (*Id.* ¶ 19.) Namely, CoinMarketCap.Com was apparently in the business of providing "unbiased, high quality, and accurate information," and Binance and Binance.US were exchanges that sought active trading. (*Id.* ¶ 14.) Today, despite its ban, Binance has a market capitalization of $1.3 billion and the highest trading volume of any such exchange, making it the largest cryptocurrency exchange in the world. (*Id.* ¶ 26.)

*CoinMarketCap.Com's Lies and Claims It Provides Objective Rankings*

CoinMarketCap.Com provides that "it strictly follows and enforces its independent listing criteria guidelines, circulating supply calculation methods and liquidity score for how it ranks cryptoassets. Cryptoassets that wish to be listed on

5

CoinMarketCap should follow the guidelines in our listing policy and will be fairly and independently evaluated on their merits. CoinMarketCap's official ranking criteria is designed to eliminate any possibility of preferential treatment. CoinMarketCap will continue to present the most accurate data on cryptocurrencies to the wider public independently. Our mission at CoinMarketCap has always been to provide all our users with the most accurate and relevant information to select exchanges and tokens to invest and trade in." (*Id.* ¶ 76.)

*During the Suppression Period, CoinMarketCap.Com, Along with Binance and Binance.US, Artificially Deflated the Price of HEX*

CoinMarketCap.Com ranked HEX along with other cryptocurrencies based on their market capitalization. (*Id.* ¶ 80.) In 2020, HEX was the best performing cryptocurrency of 2020. (*Id.* ¶ 90.) CoinMarketCap.Com, however, ranked HEX at 201 that year and refused to adjust its rank based on HEX's performance as related to other cryptocurrencies. (*Id.*) CoinMarketCap.Com also ranked Binance Coin and Binance USD, which were issued by its parent company, Binance (meaning Binance and its principals have a financial interest in ensuring the strongest possible demand for Binance Coin and Binance USD. (*Id.* ¶¶ 99, 102, 104.) On July 21, 2021, CoinMarketCap.Com ranked Binance Coin as the fourth largest cryptocurrency and Binance USD as the tenth largest cryptocurrency. (*Id.* ¶¶ 101, 105.)

On July 21, 2021, during the Suppression Period, Nomics (another website that ranks cryptocurrencies based on their market capitalization) provided that HEX's market cap was $85.3 billion—meaning that HEX should have been ranked third in size. (*Id.* ¶¶ 106, 107.) CoinMarketCap.Com, however, listed HEX's market cap as just over $25.6 billion. (*Id.* ¶ 108.) Even at a market cap of just over $25.6 billion, HEX should have been ranked sixth in size. (*Id.* ¶ 109.) But, on July 21, 2021, CoinMarketCap.Com still ranked HEX at 201 in size. (*Id.* ¶ 110.) In fact, HEX only appeared on the third page of CoinMarketCap.Com's ranking. (*Id.* ¶ 111.)

At around the same time, smaller ranking websites including Nomics, Coinranking, Yahoo Crypto, TradingView, Coinpaprika, Etherscan, and CryptoCurrencyCap all had HEX ranked between fourth and tenth in size. (*Id.* ¶ 113.) CoinMarketCap.Com's failure to accurately rank HEX artificially suppressed HEX's value because at least some individuals who purchased higher ranked cryptocurrencies would have purchased HEX instead. (*Id.* ¶ 115.)

*Defendants Damage Plaintiff and the Class by Suppressing HEX's Value*

CoinMarketCap.Com's failure to accurately rank HEX—and instead outright make false statements to the trading public—has artificially suppressed HEX's value to the detriment of Plaintiff and those similarly situated. (*Id.* ¶ 114.) Plaintiff seeks to redress Defendants' misconduct on behalf of all persons who purchased HEX prior to the Suppression Period but sold HEX during the Suppression Period. (*Id.* ¶ 146.) But for CoinMarketCap.Com's failure to accurately rank HEX, Plaintiff and the Class would have sold their shares that were not subject to CoinMarketCap.Com's intentional suppression. (*Id.*)

## III. LEGAL STANDARD

First, the Court has personal jurisdiction over Binance.US. A plaintiff responding to a motion to dismiss for lack of personal jurisdiction need only make out a prima facie case for jurisdiction at the pleading stage; the plaintiff does not need prove jurisdiction by a "preponderance of the evidence." *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1319 (9th Cir. 1998). Moreover, in a federal question case involving defendants who reside outside of the forum state, the issue of personal jurisdiction is governed by the forum state's personal jurisdiction rules in the absence of a federal statute governing personal jurisdiction. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (providing the standard). Under this standard, the Court has personal jurisdiction over Binance.US.

Second, the Court should allow Plaintiff and the Class to proceed into discovery with all of their claims. When reviewing a motion to dismiss for failure to state a claim, the Court must consider all factual allegations in a plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. Fed. R. Civ. P. 12(b)(6); *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court may not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Barnett v Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994). The Court should allow Plaintiff and the Class to proceed with all their claims into discovery.

## IV.    ARGUMENT

### A. THIS COURT HAS PERSONAL JURISIDCTION OVER BINANCE.US BASED ON ITS CONDUCT

#### 1.  The CEA Provides Personal Jurisdiction Over Binance.US

This Court has personal jurisdiction over Binance.US because the CEA provides the action may be brought wherein the act or transaction constituting the violation occurs. 7 U.S.C. § 25(c). Minimum contacts with a particular district or state for purposes of personal jurisdiction is not a limitation imposed on the federal courts in a federal-question case by due process concerns. *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1127–28 (D. Ariz. 2006) (finding a securities statute authorizing nationwide service of process established personal jurisdiction over defendants); *Bulgo v. Munoz*, 853 F.2d 710, 713 (9th Cir. 1988) (also holding that the district court had jurisdiction under Section 27 of the Securities Exchange Act). Thus, where a federal statute, such as 7 U.S.C. § 25(c), confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state. *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989) (finding personal jurisdiction may be established in any district if sufficient national contacts are found under a national service statute). There can

be no disputes that Binance.US has sufficient contacts with the United States, as Binance's express intent to launch Binance.US in the United States was to bring the liquidity of Binance to the United States. (Compl. ¶ 37.) This Court has personal jurisdiction over Binance.US.

### 2. Plaintiff Has Also Established Binance.US Purposefully Directs Its Activities in Arizona

Further, this Court has specific personal jurisdiction over Binance.US based on its conduct. In assessing whether a defendant has sufficient contract with the forum state, the Ninth Circuit employs a three-part test:

> (1) The non-resident defendant *must purposefully direct its activities or consummate some transaction with the forum or resident thereof*; or *perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum*, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which *arises out of or relates to the defendant's forum-related activities*; and
>
> (3) the exercise of jurisdiction must comport with *fair play and substantial justice*, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (providing the standard). The plaintiff bears the burden of satisfying the first two requirements of the test. *Schwarzenegger*, 374 F.3d at 801–02. As set forth below, Binance.US's specific analysis fails under the Ninth Circuit's applicable test and the Court has specific jurisdiction over Binance.US.

First, Binance.US purposely directed its activities in Arizona. The test is satisfied when a defendant (1) commits an intentional act, (2) expressly aimed at the forum, (3) which causes foreseeable harm in the forum. *Calder v. Jones*, 465 U.S. 783, 789-790 (1984) (finding it proper for a court in California to exercise jurisdiction

over Florida defendants because defendants calculated to cause injuries in California); *AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC, 2016 WL 5946051, at *3 (D. Ariz. Oct. 13, 2016) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011)). The "intentional act" prong simply requires "an intent to perform an actual, physical act . . . rather than an intent to accomplish a result or consequence of that act." *Id.* at *3 (citing *Schwarzenegger*, 374 F.3d at 806). Binance.US committed an intentional act because it provides false statements on its website by directing users to CoinMarketCap.Com's website. (Compl. ¶ 164.) In furtherance of its intentional act, Binance.US authorized CoinMarketCap.Com to continue to proceed on its behalf as a subsidiary and marketing channel. (*Id.* ¶ 183.) Binance.US is also responsible for ensuring that Binance's US operations, including those of its Operator and strategic partner CoinMarketCap.Com, comply with American law. (*Id.* ¶ 204.) Binance.US committed an intentional act nor does Binance.US seriously dispute this prong.

Second, Binance.US's intentional acts are expressly aimed at Arizona. The Supreme Court in *Calder* held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment and direction prong of the specific jurisdiction analysis. *Calder*, 465 U.S. at 789–80. Since then, in addressing the "effects test," the Ninth Circuit has recognized that not all foreign acts with foreseeable effects in the forum state give rise to specific jurisdiction. The Ninth Circuit has recognized that there must be "something more." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). According to the Ninth Circuit, "'something more' is what the Supreme Court described as 'express aiming' at the forum state." *Bancroft*, 223 F.3d at 1087 (citing Calder, 465 U.S. at 789). Here, Binance.US did not simply operate a website accessible to Arizonians (Motion at 14) but in fact Binance.US sought and obtained licensure as a money transmitted from the Arizona Department of Financial Institutions. (*Id.* ¶ 47.) Binance.US, moreover, has been banned in several states in the United

10

States—but Arizona is not one of the states which Binance.US has been banned. (*Id.* ¶ 44–45.) Binance.US's acts are, undeniably, intentionally expressed at the State of Arizona.

Third, Binance.US has caused harm which it knows is likely to be suffered in Arizona. The foreseeable harm element is satisfied "when defendant's intentional act has foreseeable effects in the forum." *Bancroft, supra*, 223 F.3d at 1087 (9th Cir. 2000). This element does not require that the "brunt" of the harm be suffered in the forum. *Yahoo!, supra*, 433 F.3d at 1207. In fact, this element may be established even if the bulk of the harm occurs outside the forum. *Id.* Here, Plaintiff is a resident of Arizona and was physically located in Arizona during the acquisition and sale of HEX. (*Id.* ¶¶ 9–12.) By obtaining licensure in Arizona (*Id.* ¶ 47), Binance.US knew, as Arizona was one of the states it could legally operate, that its misconduct would affect individuals like Plaintiff.

Binance.US has purposefully directed its activities in Arizona.

### 3. Plaintiff's Claims Arise Out of and Relate to Defendant's Forum Related Activities

Plaintiff's claims arise out of an relate to Binance.US's forum related activities. The second required element of specific jurisdiction, whether the claim arises out of or relates to the defendant's forum-related activities, is established "if the plaintiff 'would not have been injured but for' the defendant's conduct directed at the forum." *AMA Multimedia*, 2016 WL 5946051, at *6 (citing *Panavision Int'l. L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). Here, Plaintiff's alleged injuries directly arise from and are the result of Defendants' publications of disparaging statements directed at Arizona and its direct contact with Arizona customers. But for that conduct, Plaintiff would not have been injured. Plaintiff has made a prima facie showing to satisfy the second required element of specific jurisdiction.

### 4. Defendants Have Not Come Forward with Compelling Evidence that the Exercise of Jurisdiction Would be Unreasonable

11

When the plaintiff establishes the first two elements for specific jurisdiction, which Plaintiff has done here, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would be unreasonable. *AMA Multimedia*, 2016 WL 5956051, at *6. Here, Binance.US fails to demonstrate that the exercise of personal jurisdiction would not comport with fair play and substantial justice. In any case, as Plaintiff has alleged, Binance.US came to this forum and sought and obtained licensure as a money transmitted from the Arizona Department of Financial Institutions. (Compl. ¶ 47.) Accordingly, it would not be an unreasonable burden on Binance.US to defend itself in this forum.

**B. PLAINTIFF HAS PROPERLY ALLEGED HIS CLAIMS AGAINST BINANCE.US**

**1. Binance.US Violated the CEA Because It Intentionally Influenced and Caused Artificial Prices**

Plaintiff has sufficiently alleged that Binance.US violated the CEA. To state a price manipulation claim, a plaintiff must allege that (1) the defendant possessed an ability to influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial prices; and (4) the defendant specifically intended to cause the artificial price. *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 668 (S.D.N.Y. 2016). The CEA provides a private right of action against any person "who willfully aids, abets, counsels, induces, or procures the commission of a violation" of the CEA. 7 U.S.C. § 25. Furthermore, under the CEA, it is unlawful for:

> Any person to *manipulate or attempt to manipulate* the *price of any commodit*y in interstate commerce . . . or knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or *other means of communication false or misleading or knowingly inaccurate reports concerning crop*

*or market information or conditions that affect or tend to affect*

*the price of any commodity* in interstate commerce[.]

7 U.S.C. 13(a)(2). Under the CEA, it is also "unlawful for any person, directly or indirectly, to manipulate or attempt to manipulate the price of any swap, or of any commodity in interstate commerce[.]" 7 U.S.C. 9(3). Plaintiff has sufficiently alleged that Binance.US violated the CEA.

First, Plaintiff has adequately pleaded that Binance.US has the ability to influence market prices. In particular, Plaintiff alleges that Binance.US directs users to CoinMarketCap.Com's website for "objective" information about the various cryptocurrencies that Binance.US offers for sale. (Compl. ¶ 164.) In turn, CoinMarketCap.Com provides untrue statements concerning HEX's ranking. (*Id.* ¶ 163.) By encouraging those contemplating buying or selling cryptocurrencies to rely on CoinMarketCap.Com's rankings, Binance.US possesses the ability to influence market prices in the artificial manipulation of commodities. (*Id.* ¶ 181.)

Second, Plaintiff has pleaded that an artificial price existed. *See, e.g.*, *Commodity Exch.*, 213 F. Supp. 3d at 673 (manipulation shown if trading impacts a market which "relies on transaction to signal true, rather than manipulative, demand" (quotation marks omitted)). CoinMarketCap.Com's failure to accurately rank HEX artificially suppressed HEX's value. (Compl. ¶ 114.) But for CoinMarketCap.Com's failure to accurately rank HEX, at least some individuals who purchased higher ranked cryptocurrencies would have purchased HEX instead, suppressing the price of HEX and inflating the price of one or more other cryptocurrencies. (*Id.* ¶ 115.)

Third, Plaintiff has pleaded that Binance.US assisted with causing the artificial prices. The CEA provides a private of action against any personally "who willfully aids, abets, counsels, induces, or procures the commission of a violation[.]". 7 U.S.C. § 1. Binance.US directs users to CoinMarketCap.Com's website for information about the various cryptocurrency it offers for sale, and thus

13

participated in providing false statements. (Compl. ¶ 164.) Further, Binance.US, though highly experienced in the field of cryptocurrency, authorized CoinMarketCap.Com to continue to proceed on its behalf as a subsidiary and marketing channel. (*Id.* ¶ 183.) Binance.US has assisted with causing artificial prices.

Fourth, Binance.US specifically intended to cause the artificial price. A defendant participates in a manipulative scheme with scienter by acting knowingly or recklessly in helping to affect the trading at issue. Specific intent to manipulate prices can be pled by alleging facts (1) showing that the defendant had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. *Commodity Exch.*, 213 F. Supp. 3d at 670 (internal quotation marks omitted). As pleaded, Binance.US was aware of issues with CoinMarketCap.Com's rankings. (Compl. ¶ 188.) Binance.US had motive because it would substantially profit through manipulating prices. HEX's success was even a threat to Binance.US's business because exchanges like Binance.US make money only when an investor trades—whereas HEX was designed to discourage active trading. (*Id.* ¶ 136.) Binance.US specifically intended to cause the artificial price.

Plaintiff has alleged that Binance.US violated the CEA.

**2. The CEA's Broad Codification of Respondeat Superior and Binance.US's Alter Ego Relationship with Binance and CoinMarketCap.Com Makes Binance.US Liable for All Violations**

Binance.US has strict and vicarious liability for violations of the CEA. An expansive variant of respondeat superior liability applies to violations of the CEA. *In re Amaranth Nat'l Gas Commodities Litig.*, 587 F. Supp. 2d 513, 531-32 (S.D.N.Y. 2008). Agency under the CEA is premised on respondeat superior liability, and it is not necessary that the principal direct the act or have knowledge of the agents' actions. *Dohmen-Ramirez v. Commodity Futures Trading Com.*, 837 F.2d 847, 858 (9th

14

Cir. 1988) (citing, among other sources, *Cange v. Stotler & Co.*, 826 F.2d 581, 589 (7th Cir. 1987)). Binance.US has strict and vicarious liability for violations of the CEA.

The allegations also constitute a prima facie showing of an alter ego relationship, which further establishes liability, between Binance.US, Binance, and CoinMarketCap.Com. To prevail and hold a parent corporation liable pursuant to the alter ego theory, a plaintiff must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice. *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 821 P.2d 725, 728 (1991). To establish unity of control, Plaintiff must show that the parent corporation exerts substantially total control over the management and activities of its subsidiary. *U–Haul Int'l v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CV-10-1047-PHX-SMM, 2011 WL 9111, at *3 (D. Ariz. May 3, 2016). Substantial total control may be proved by a number of factors, including (1) common officers or directors; (2) failure of subsidiary to maintain formalities of separate corporate existence; (3) similarity of logo; and (4) plaintiff's lack of knowledge of subsidiary's separate corporate existence." *Gatecliff*, 821 P.2d at 728. Plaintiff has established an alter ego relationship, which further establishes liability, between Binance.US, Binance, and CoinMarketCap.Com.

As alleged, Binance.US operates Binance for reasons including Binance.com takes American users to Binance.US's website (assuming that there is a distinction at all) and Binance.US provides Binance Services, as that phrase is defined in the Binance Terms, in that it utilizes internet or blockchain technologies developed by Binance and one or more Binance ecosystem components such as "digital asset trading platforms." (Compl. ¶ 200.) In an April 2020 Forbes Magazine interview, the CEO of Binance.US, Catherine Coley, stated that she reported to BAM's board of directors and that the other two people on the board were Defendant Zhao and Wei Zho, then Binance's CFO. (*Id.* ¶ 201.) Moreover, as a Binance Operator, Binance.US is bound by the Binance Terms as well as by the terms of its supposed

"brand partnership" with Binance and any technology licenses with Binance. (*Id.* ¶ 203.) Binance.US is also responsible for ensuring that Binance's US operations, including those of its Operator and strategic partner CoinMarketCap.Com, comply with American law. (*Id.* ¶ 204.) Binance.US has liability for violations of the CEA.

### 3. Binance.US's Manipulation of a Commodity Also Violates the Arizona Consumer Fraud Act

The intentional manipulation of HEX by Binance.US also violates the ACFA. To succeed on a claim of consumer fraud under ACFA, a plaintiff must show (1) a false promise or misrepresentation, (2) which is made in connection with the sale or advertisement of merchandise, and (3) consequent and proximate injury resulting from the misrepresentation. Ariz. Rev. Stat. § 44–1521 *et seq.*; B*ergdale v. Countrywide Bank FSB*, No. cv–12–8057–PCT–GMS, 2013 WL 105295, at *3 (D. Ariz. Jan. 9, 2013) (providing the standard). Binance.US's manipulation of HEX violates the ACFA.

First, Plaintiff has alleged misrepresentations by Binance.US. For example, Binance.US directed users to CoinMarketCap.Com for "objective" information regarding the true ranking of virtual currencies offered for sale which, as discussed, provided false rankings to artificially manipulate the price of HEX. (Compl. ¶ 164.) Second, Binance.US's misrepresentation occurred in connection the advertisement because CoinMarketCap.Com advertised Binance.US's services as a place to buy and sell cryptocurrency and liked users who were interested in purchasing such cryptocurrency to that website. (*Id.* ¶ 227.) Third, Plaintiff incurred proximate and proximate injures in at least three ways: (1) Plaintiff received artificially suppressed prices in exchange for their units of HEX (*id.* ¶ 232); (2) Plaintiff suffered damages by Binance.US's failure to disclose the true ranking of HEX and the crypto currencies ranked above it (*id.* ¶ 233); and (3) Plaintiff suffered damages that he would not have sold HEX at the prices he did if he had been aware that the market

price had been artificially and falsely suppressed (*id.* ¶ 234). Binance.US has violated the ACFA by manipulating the price of HEX.

### 4. Binance.US Is Further Liable for Violating the ACFA Because it Controls CoinMarketCap.Com

Binance.US is further liable for violating the ACFA because it controls CoinMarketCap.Com**.** Both federal and Arizona securities law makes Defendant CoinMarketCap.Com's controlling persons jointly and severally liable for the violations of the Arizona Consumer Fraud Act complained herein. *See e.g.* Section 20(a) of the 1934 Act; ARS §§ 44-1999, 44-2003(A). This standard serves to inform violations of the Arizona Consumer Fraud Act. Moreover, Defendant's own authority provides that Arizona courts have considered "control person" liability under the ACFA. *See, e.g. Kingsley Capital Management, LLC v. Sly*, No. CV-10-02243-PHX-NVW, 2013 WL 3967615, at *10 (D. Ariz. Aug. 2, 2013); *In re American Southwest Mortg. Litigation*, No. CIV 89-462 TUC-RMB, CIV89-471-TUC-RMB, 1991 WL 164473, at *3–4 (D. Ariz. Aug. 14, 1991). Binance.US is liable for violating the ACFA because it controls CoinMarketCap.Com.

### 5. Plaintiff Reserves His Rights to Include Additional Claims Under Federal and State Antitrust Law

Upon completion of discovery, Plaintiff reserves his rights to amend the Complaint to include additional claims under federal and state antitrust law.

## V.   CONCLUSION

Binance.US, along with the other Defendants, intentionally lied to investors and provided inaccurate ranking of HEX, which artificially suppressed its value and damaged Plaintiff and the Class.

This Court has personal jurisdiction over Binance.US because the CEA confers nationwide service of process in federal court for federal-question cases without falling short of the requirements of due process. Further, while not necessary to show, Binance.US has purposefully availed itself of doing business in

Arizona. A company that has already sought and obeyed Arizona's legal and regulatory scheme does not face an unreasonable burden to defend itself in this forum.

Plaintiff and the Class, moreover, have pleaded claims under the CEA warranting dismissal of Binance.US's Motion. Binance.US had the ability to influence market prices by lying to retailer investors about CoinMarketCap.Com's objectivity, and in fact suppressed HEX's market value. In fact, the CEA's broad codification of respondeat superior, and Binance.US's alter ego relationship with Binance and CoinMarketCap.Com, in itself creates further liability for Binance.US under the CEA. The Court should allow Plaintiff to proceed with his CEA claims against Binance.US.

Plaintiff and the Class, further, have pleaded claims under the ACFA warranting dismissal of Binance.US's Motion. Binance.US misrepresented the true ranking of HEX in connection with advertising itself as an exchange which led to Plaintiff's injury. The Court should allow Plaintiff to proceed with his claims under the ACFA.

The Court should deny Binance.US's Motion.

Dated: July 22, 2022

By: */s/ Arno Naeckel*

George Wentz, Jr. (admitted via *pro hac vice*)

**Davillier Law Group, LLC**

414 Church St., Suite 308

Sandpoint, ID 83864

Telephone: 208-920-6140

gwentz@davillierlawgroup.com

Alexander Kolodin (SBN 030826)

Arno T. Naeckel (SBN 026158)

**Davillier Law Group, LLC**

4105 North 20th St. Suite 110

Phoenix, AZ 85016

Telephone: 602-730-2985

akolodin@davillierlawgroup.com

anaeckel@davillierlawgroup.com

John G. Balestriere (*PHV application forthcoming*)

Matthew W. Schmidt (*PHV application forthcoming*)

**BALESTRIERE FARIELLO**

225 Broadway, 29th Floor

New York, New York 10007

Telephone:    (212) 374-5401

Facsimile:    (212) 208-2613

john.balestriere@balestrierefariello.com

matthew.schmidt@balestrierefariello.com

19

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of July 2022, I electronically transmitted the foregoing document to the Office of the Clerk of the Court, suing CM/EFC System, for filing and for transmittal of a Notice of Electronic Filing to the CM/EFC registrants on record.

*/s/ Arno Naeckel*

**Davillier Law Group, LLC**

1

21