George Wentz, Jr. (admitted via *pro hac vice*)
**Davillier Law Group, LLC**
414 Church St., Suite 308
Sandpoint, ID 83864

Alexander Kolodin (SBN 030826)
Arno T. Naeckel (SBN 026158)
**Davillier Law Group, LLC**
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
Telephone:  (602) 730-2985
gwentz@davillierlawgroup.com
akolodin@davillierlawgroup.com
anaeckel@davillierlawgroup.com

Matthew W. Schmidt (*Pro hac vice application forthcoming*)
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:  (212) 374-5401
matthew.schmidt@balestrierefariello.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **RYAN COX,** individually, and for all others similarly situated,<br><br>Plaintiffs,<br><br>–against–<br><br>**COINMARKETCAP OPCO, LLC; BINANCE CAPITAL MANAGEMENT CO., LTD. D/B/A/ BINANCE AND BINANCE.COM; BAM TRADING SERVICES INC. D/B/A BINANCE.US; CHANGPENG ZHAO; CATHERINE COLEY; YI HE; TED LIN;** and **DOES I-X;.**<br><br>Defendants. | Case No. 3:21-cv-08197-SMB<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT COINMARKETCAP OPCO, LLC'S MOTION TO DISMISS** |

1

**TABLE OF CONTENTS**

2    I.  INTRODUCTION ................................................................................................... 1

3    II. STATEMENT OF FACTS .................................................................................... 3

4    III. LEGAL STANDARD ........................................................................................... 3

5    IV. ARGUMENT ....................................................................................................... 8

6        A. THIS COURT HAS SPECIFIC PERSONAL JURISIDCTION OVER

7            COINMARKETCAP.COM BASED ON ITS CONDUCT ................................... **8**

8            1.  The CEA Provides Personal Jurisdiction Over CoinMarketCap.Com ...... **8**

9            2.  Plaintiff Has Also Established CoinMarketCap.Com Purposefully Directs

10               Its Activities in Arizona ............................................................................ **8**

11           3.  Plaintiff Has Established CoinMarketCap.Com Purposefully Directs Its

12               Activities in Arizona ................................................................................ **10**

13           4.  Plaintiff's Claims Arise Out of and Relate to Defendant's Forum Related

14               Activities ................................................................................................. **12**

15           5.  Defendants Have Not Come Forward with Compelling Evidence that the

16               Exercise of Jurisdiction Would be Unreasonable .................................... **12**

17       B. PLAINTIFF HAS PROPERLY ALLEGED HIS CLAIMS AGAINST

18           COINMARKETCAP.COM ............................................................................. **13**

19           1.  CoinMarketCap.Com Violated the CEA Because It Intentionally

20               Influenced and Caused Artificial Prices .................................................. **13**

21           2.  CoinMarketCap.Com's Manipulation of a Commodity Also Violates the

22               Arizona Consumer Fraud Act .................................................................. **16**

23           3.  Plaintiff Reserves His Rights to Include Additional Claims Under Federal

24               and State Antitrust Law ........................................................................... **17**

25   V.  CONCLUSION ................................................................................................... 17

26

27

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3  *AMA Multimedia LLC v. Sagan Ltd.,*

4  No. CV-16-01269-PHX-DGC, 2016 WL 5946051 (D. Ariz. Oct. 13, 2016) ....... 9, 11

5  *Bancroft & Masters, Inc. Augusta Nat'l. Inc.,*

6  223 F.3d 1082 (9th Cir. 2000) ................................................................... 10

7  *Barnett v Centoni,*

8  31 F. 3d 813 (9th Cir. 1994) ....................................................................... 8

9  *Bell Atlantic Corp. v. Twombly,*

10  550 U.S. 544 (2007) ................................................................................ 8

11  *Bergdale v. Countrywide Bank FSB,*

12  No. cv–12–8057–PCT–GMS, 2013 WL 105295 (D. Ariz. Jan. 9, 2013) ................ 15

13  *Biliack v. Paul Revere Life Ins. Co.,*

14  2017 WL 4325594 (D. Ariz. Aug. 24, 2017) ................................................. 10

15  *Brayton Purcell LLP v. Recordon & Recordon,*

16  606 F.3d 1124 (9th Cir. 2010) .................................................................... 9

17  *Burger King Corp. v. Rudzewicz,*

18  471 U.S. 464 (1985) ............................................................................... 11

19  *Calder v. Jones,*

20  465 U.S. 783 (1984) ............................................................................ 9, 10

21  *CE Distr., LLC v. New Sensor Corp.,*

22  380 F.3d 1107 (9th Cir. 2004) .................................................................... 9

23  *In re Commodity Exch., Inc.,*

24  213 F. Supp. 3d 631 (S.D.N.Y. 2016) ................................................. 12, 13, 14

25  *Lake v. Lake,*

26  817 F.2d 1416 (9th Cir. 1987) .................................................................... 8

27  *Mavrix Photo, Inc. v. Brand Techs., Inc.,*

28  647 F.3d 1218 (9th Cir. 2011) .................................................................... 9

*Panavision Int'l, L.P. v. Toeppen*,

    141 F.3d 1316 (9th Cir. 1998) ................................................................. 10

*Peterson v. Highland Music, Inc.*,

    140 F.3d 1313 (9th Cir. 1998) ................................................................... 7

*Schwarzenegger v. Fred Martin Motor Co.*,

    374 F.3d 797 (9th Cir. 2004) ................................................................ 8, 9

*Sinatra v. Nat'l Enquirer, Inc.*,

    854 F.2d 1191 (9th Cir. 1988) ................................................................... 9

*Smith v. Jackson*,

    84 F.3d 1213 (9th Cir. 1996) ..................................................................... 7

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,

    704 F.3d 668 (9th Cir. 2012) ................................................................... 10

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,

    433 F.3d 1199 (9th Cir. 2006) ............................................................ 7, 10

**Statutes**

7 U.S.C. § 25 ............................................................................................ 1, 8, 12

7 U.S.C. § 13(a)(2) ........................................................................................... 12

7 U.S.C. § 9 ...................................................................................................... 13

Ariz. Rev. Stat. § 44–1521 *et seq.* ................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 7

iii

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and (6), Plaintiff Ryan Cox ("Cox"), individually, and for all others similarly situated (the "Class"), hereby files his Response to the Motion to the Dismiss (Dkt. No. 72, "Motion") by Defendant CoinMarketCap OpCo, LLC ("CoinMarketCap.Com").

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.      INTRODUCTION

Defendant CointMarketCap.Com, along with Defendants BAM Trading Services Inc. ("Binance.US") and Binance Capital Mgmt. Co., Ltd. ("Binance"), intentionally lied and provided inaccurate rankings to suppress the value of HEX, a cryptocurrency that threatened the business model of CoinMarketCap.Com's parent company, Binance, and affiliate, Binance.US. Such a false representation of ranking in the cryptocurrency industry, which supposedly represents the relative position of a cryptocurrency by market capitalization, is in violation of the federal Commodity Exchange Act ("CEA") and the Arizona Consumer Fraud Act ("ACFA"). This action seeks to redress the rights afforded to Plaintiff and the Class, which represents all HEX owners who sold HEX during the artificial deflation of HEX (the "Suppression Period").

First, this Court has personal jurisdiction over CoinMarketCap.Com because the CEA provides an action may be brought wherein the act or transaction constituting the violation occurs. 7 U.S.C. § 25(c). Further, this Court has personal jurisdiction over CointMarketCap.Com because it purposefully availed itself of the benefits of doing business in Arizona. Under the Ninth Circuit's three-part test, Plaintiff has established that this Court has personal jurisdiction because: (1) CointMarketCap.Com purposefully directs its activities in the forum state through its website, (2) CointMarketCap.Com has a strategic partnership with Binance.US to advertise its website, which sought and obtained licensure as a money transmitter from the Arizona Department of Financial Institutions, and

1

(3) CoinMarketCap.Com has not shown that any burden would exist if it had to defend itself in this forum. This Court has personal jurisdiction over Binance.US.

Second, Plaintiff pleads a claim under the CEA warranting dismissal of CoinMarketCap.Com's Motion. CointMarketCap.Com violated the CEA because it intentionally influenced HEX's prices by providing investors inaccurate rankings. In fact, CoinMarketCap.Com specifically provided untrue statements by promising "unbiased, high quality, and accurate information." Yet CoinMarketCap.Com, during the Suppression Period, ranked HEX at 201 while other ranking websites ranked HEX between fourth and tenth in size. By encouraging those contemplating buying or selling HEX to rely on CoinMarketCap.Com's rankings, CoinMarketCap.Com dissuaded investors from investing in HEX and artificially suppressed HEX's value. CoinMarketCap.Com had motive to suppress HEX's value because HEX (which discourages active trading) was a threat to CoinMarketCap.Com's its parent and partners, Binance and Binance.US, which rely on active investor trading. The Court should allow Plaintiff to proceed with his claims under the CEA.

Third, Plaintiff pleads a claim under the ACFA warranting dismissal of CoinMarketCap.Com's Motion. The ACFA seeks to protect consumers within Arizona from any deception or unfair act or practice. Plaintiff has alleged all the necessary elements to support a claim under the ACFA: (1) CoinMarketCap.Com lied to the public that it provides unbiased rankings and then provided an inaccurate ranking of HEX, (2) CoinMarketCap.Com's lies and deception occurred while it sought to promote its ranking services and exchange services by Binance and Binance.US, and (3) Plaintiff and the Class incurred injury when CoinMarketCap.Com failed to disclosure the true ranking of HEX when they sold their HEX shares. The Court should allow Plaintiff to proceed with his claims under the ACFA.

The Court should find that is has personal jurisdiction over CoinMarketCap.Com and allow Plaintiff and the Class to proceed with their claims under the CEA and ACFA. Plaintiff and the Class also reserve the right to amend their pleadings to address any deficiencies.

## II.     STATEMENT OF FACTS[1]

*Ranking Websites Are Integral to the Cryptocurrency Industry*

In September 2018, Nic Carter ("Carter"), who is a partner at venture capital firm Castle Island Ventures, and co-founder of CoinMetrics.io, detailed the relationship between exchanges (a platform on which individuals can buy and sell cryptocurrency), coin ranking websites (rankings are usually based on a cryptocurrency's relative position by its market capitalization), and retail investors (who are mainly non-professional investors). (Compl. ¶ 6.) Carter warned in his article that ranking websites:

> [O]ccupy a fêted position in the industry. Ostensibly, they perform a useful service to investors and receive little in return aside from ad revenue. But the under-reported reality is more sinister. Rankings sites are squarely at the center of the extractive game that siphons money from retail investors and deposits it into the pockets of altcoin creators and exchange operators.

(*Id.* ¶ 6.) Carter further explained that:

> Many if not most exchanges have affiliate schemes, and referral links ("reflinks") can be a lucrative source of revenue if you are the intermediary between active traders and exchanges" and that "investors go to [coin rankings] sites to find links to exchanges where they can trade their coins of choice, especially if they are smaller projects and do not have many points of liquidity. Since the rankings

---

[1] Plaintiff asserts substantially similar Statement of Facts in his simultaneous responses to Defendants' motions to dismiss (Dkt. Nos. 70–72.)

1    sites are the ports of call for investors, they have an almost captive

2    audience and can easily monetize with an affiliate link."

3    (*Id.* ¶ 7.)

4    *CoinMarketCap.Com Emerges as the Largest Player in the Ranking Business*

5    CoinMarketCap.Com is one of those websites that rank cryptocurrencies by

6    their market capitalization. (*Id.* ¶ 80.) CoinMarketCap.Com claims that its mission

7    is to make cryptocurrencies discoverable and efficient globally by empowering

8    retail users with unbiased, high quality, and accurate information by drawing their

9    own informed conclusions. (*Id.* ¶ 14.) In April 2020, CoinDesk, a popular news

10   website specializing in cryptocurrency, referred to CoinMarketCap.Com as the

11   "dominant data source and go-to platform for asset pricing" in the cryptocurrency

12   space as well as the "first landing page for retail investors[.]" (*Id.* ¶ 21.) Yet despite

13   its status as "the first port of call for small retail buyers" CoinDesk also noted that

14   "institutional investors [have] spurned the website, particularly after [a report of

15   misconduct on the part of CoinMarketCap.Com was made to the SEC]." (*Id.*)

16   Nonetheless, Coindesk notes that "exchanges have always used CoinMarketCap[.]"

17   (*Id.*) Today, CoinMarketCap.Com refers to itself as the world's most-referenced

18   price-tracking website for crypto-assets. (*Id.*)

19   To highlight CoinMarketCap.Com's powerful influence, Adel de Meyer ("de

20   Meyer"), the CEO of DAPS Coin, another cryptocurrency, said to Forbes Magazine

21   that "[a] ranking authority with the size and reputation of CoinMarketCap[.Com]

22   has the capacity to essentially 'hide' a [cryptocurrency] at will." (*Id.* ¶ 22.) To "hide"

23   a cryptocurrency essentially means that CoinMarketCap.Com can manipulate the

24   ranking of a cryptocurrency and thus suppress the market for such cryptocurrency

25   (as well as its price). (*Id.* ¶ 171.)

26   The CEO also provided that CoinMarketCap.Com's dominance creates an

27   environment ripe "for collusion, corruption, and coercion" and that

28   CoinMarketCap.Com has reduced market caps arbitrarily, leaving "investors and

4

traders confused" and "damaging the reputation" of some cryptocurrencies. (*Id.* ¶ 23.) De Meyer concluded that CoinMarketCap.Com's flawed rankings were "dangerous" and posed a risk to retail investors. (*Id.*)

*Binance Acquires CoinMarketCap.Com*

Binance is an exchange that allows individuals to buy and sell cryptocurrencies. (*Id.* ¶ 5.) In 2019, American regulators banned Binance from operating in the United States. (*Id.* ¶ 36.) But in response to its ban, Binance launched Binanace.US, an exchange that would "bring the security, speed, and liquidity of Binance[] to North America," and ensure that Binance was in "full regulatory compliance" through Binance.US. (*Id.* ¶ 37.) While Binance.US offers a similar interface and feature set to its Binance counterpart, it is also banned in at least seven states in the United States. (*Id.* ¶¶ 43, 44.) In 2020, Binance acquired CoinMarketCap.Com, which is now a subsidiary of Binance. (*Id.* ¶ 17.) During the acquisition period, experts in the crypto industry opined that the acquisition was "not very good for the industry given the conflict of interest between the parties missions." (*Id.* ¶ 19.) Namely, CoinMarketCap.Com was apparently in the business of providing "unbiased, high quality, and accurate information," and Binance and Binance.US were exchanges that sought active trading. (*Id.* ¶ 14.) Today, despite its ban, Binance has a market capitalization of $1.3 billion and the highest trading volume of any such exchange, making it the largest cryptocurrency exchange in the world. (*Id.* ¶ 26.)

*CoinMarketCap.Com's Lies and Claims It Provides Objective Rankings*

CoinMarketCap.Com provides that:

[I]t strictly follows and enforces its independent listing criteria guidelines, circulating supply calculation methods and liquidity score for how it ranks cryptoassets. Cryptoassets that wish to be listed on CoinMarketCap should follow the guidelines in our listing policy and will be fairly and independently evaluated on their merits.

5

> CoinMarketCap's official ranking criteria is designed to eliminate any possibility of preferential treatment. CoinMarketCap will continue to present the most accurate data on cryptocurrencies to the wider public independently. Our mission at CoinMarketCap has always been to provide all our users with the most accurate and relevant information to select exchanges and tokens to invest and trade in.

(*Id.* ¶ 76.)

*During the Suppression Period, CoinMarketCap.Com, Along with Binance and Binance.US, Artificially Deflated the Price of HEX*

CoinMarketCap.Com ranked HEX along with other cryptocurrencies based on their market capitalization. (*Id.* ¶ 80.) In 2020, HEX was the best performing cryptocurrency of 2020. (*Id.* ¶ 90.) CoinMarketCap.Com, however, ranked HEX at 201 that year and refused to adjust its rank based on HEX's performance as related to other cryptocurrencies. (*Id.*) CoinMarketCap.Com also ranked Binance Coin and Binance USD, which were issued by its parent company, Binance—meaning Binance and its principals have a financial interest in ensuring the strongest possible demand for Binance Coin and Binance USD. (*Id.* ¶¶ 99, 102, 104.) On July 21, 2021, CoinMarketCap.Com ranked Binance Coin as the fourth largest cryptocurrency and Binance USD as the tenth largest cryptocurrency. (*Id.* ¶¶ 101, 105.)

On July 21, 2021, during the Suppression Period, Nomics (another website that ranks cryptocurrencies based on their market capitalization) provided that HEX's market cap was $85.3 billion—meaning that HEX should have been ranked third in size. (*Id.* ¶¶ 106, 107.) CoinMarketCap.Com, however, listed HEX's market cap as just over $25.6 billion. (*Id.* ¶ 108.) Even at a market cap of just over $25.6 billion, HEX should have been ranked sixth in size. (*Id.* ¶ 109.) But, on July 21, 2021, CoinMarketCap.Com still ranked HEX at 201 in size. (*Id.* ¶ 110.) In fact, HEX only appeared on the third page of CoinMarketCap.Com's ranking. (*Id.* ¶ 111.)

6

At around the same time, smaller ranking websites including Nomics, Coinranking, Yahoo Crypto, TradingView, Coinpaprika, Etherscan, and CryptoCurrencyCap all had HEX ranked between fourth and tenth in size. (*Id.* ¶ 113.) CoinMarketCap.Com's failure to accurately rank HEX artificially suppressed HEX's value because at least some individuals who purchased higher ranked cryptocurrencies would have purchased HEX instead. (*Id.* ¶ 115.)

*Defendants Damage Plaintiff and the Class by Suppressing HEX's Value*

CoinMarketCap.Com's failure to accurately rank HEX—and instead outright make false statements to the trading public—has artificially suppressed HEX's value to the detriment of Plaintiff and those similarly situated. (*Id.* ¶ 114.) Plaintiff seeks to redress Defendants' misconduct on behalf of all persons who purchased HEX prior to the Suppression Period but sold HEX during the Suppression Period. (*Id.* ¶ 146.) But for CoinMarketCap.Com's failure to accurately rank HEX, Plaintiff and the Class would have sold their shares that were not subject to CoinMarketCap.Com's intentional suppression. (*Id.*)

## III.   LEGAL STANDARD

First, the Court has personal jurisdiction over Binance.US. A plaintiff responding to a motion to dismiss for lack of personal jurisdiction need only make out a prima facie case for jurisdiction at the pleading stage; the plaintiff does not need prove jurisdiction by a "preponderance of the evidence." *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1319 (9th Cir. 1998). Moreover, in a federal question case involving defendants who reside outside of the forum state, the issue of personal jurisdiction is governed by the forum state's personal jurisdiction rules in the absence of a federal statute governing personal jurisdiction. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (providing the standard). Under this standard, the Court has personal jurisdiction over Binance.US.

Second, the Court should allow Plaintiff and the Class to proceed into discovery with all of their claims. When reviewing a motion to dismiss for failure to state a claim, the Court must consider all factual allegations in a plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. Fed. R. Civ. P. 12(b)(6); *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court may not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Barnett v Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994). The Court should allow Plaintiff and the Class to proceed with all their claims into discovery.

## IV.   ARGUMENT

### A. THIS COURT HAS SPECIFIC PERSONAL JURISIDCTION OVER COINMARKETCAP.COM BASED ON ITS CONDUCT

#### 1.   The CEA Provides Personal Jurisdiction Over CoinMarketCap.Com

This Court has personal jurisdiction over CoinMarketCap.Com because the CEA provides the action may be brought wherein the act or transaction constituting the violation occurs. 7 U.S.C. § 25(c). Minimum contacts with a particular district or state for purposes of personal jurisdiction is not a limitation imposed on the federal courts in a federal-question case by due process concerns. *Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1127–28 (D. Ariz. 2006) (finding a securities statute authorizing nationwide service of process established personal jurisdiction over defendants); *Bulgo v. Munoz*, 853 F.2d 710, 713 (9th Cir. 1988) (also holding that the district court had jurisdiction under Section 27 of the Securities Exchange Act). Thus, where a federal statute, such as 7 U.S.C. § 25(c), confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state. *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989) (finding personal jurisdiction may be established in any district if sufficient national contacts are found under a national service

statute). There can be no disputes that CoinMarketPlace.Com has sufficient contacts with the United States, as CoinMarketPlace.Com is fully accessible in the United States. (Compl. ¶ 8.) This Court has personal jurisdiction over CoinMarketCap.Com.

## 2. Plaintiff Has Also Established CoinMarketCap.Com Purposefully Directs Its Activities in Arizona

Further, this Court has specific personal jurisdiction over CoinMarketCap.Com based on its conduct. In assessing whether a defendant has sufficient contract with the forum state, the Ninth Circuit employs a three-part test:

> (1) The non-resident defendant *must purposefully direct its activities or consummate some transaction with the forum or resident thereof*; or *perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum*, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which *arises out of or relates to the defendant's forum-related activities*; and
>
> (3) the exercise of jurisdiction must comport with *fair play and substantial justice*, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of satisfying the first two requirements of the test. *Schwarzenegger*, 374 F.3d at 801–02. As set forth below, CoinMarketCap.Com's specific analysis fails under the Ninth Circuit's applicable test and the Court has specific jurisdiction over CoinMarketCap.Com.

### 3. Plaintiff Has Established CoinMarketCap.Com Purposefully Directs Its Activities in Arizona

First, CoinMarketCap.Com purposely directed its activities in Arizona. The test is satisfied when a defendant (1) commits an intentional act, (2) expressly aimed at the forum, (3) which causes foreseeable harm in the forum." *Calder v. Jones*, 465 U.S. 783, 789-790 (1984) (providing the standard); *AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC, 2016 WL 5946051, at *3 (D. Ariz. October 13, 2016) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011)). The "intentional act" prong simply requires "an intent to perform an actual, physical act . . . rather than an intent to accomplish a result or consequence of that act." *Id.* at *3 (citing *Schwarzenegger*, 374 F.3d at 806). Intentional actions committed in a foreign jurisdiction may fulfill the purposeful direction prong if they harm a plaintiff in the forum state. *See, e.g., Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (finding that infringing a copyright and plagiarizing a commercial website constituted an intentional act); *CE Distr., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111–12 (9th Cir. 2004) (concluding that interfering with an exclusive importer/distributor agreement to directly compete with plaintiff was an intentional act); *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988) (finding that misappropriating Frank Sinatra's name with advertisements directed to California enabled a California federal court to exercise personal jurisdiction over a Swiss company). CoinMarketCap.Com committed an intentional act because it provides false rankings on its website, which is accessible to Arizona residents. (Compl. ¶ 13.) CoinMarketCap.Com purposely directed its activities in Arizona.

Second, CoinMarketCap.Com's intentional acts are expressly aimed at Arizona. The Supreme Court in *Calder* held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment and direction prong of the specific jurisdiction analysis. *Calder*, 465 U.S. at 789–80; *Bancroft &*

*Masters, Inc. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Since then, in addressing the "effects test," the Ninth Circuit has recognized that not all foreign acts with foreseeable effects in the forum state give rise to specific jurisdiction. The Ninth Circuit has recognized that there must be "something more." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). According to the Ninth Circuit, "'something more' is what the Supreme Court described as 'express aiming' at the forum state." *Bancroft*, 223 F.3d at 1087 (citing *Calder*, 465 U.S. at 789). The Ninth has repeatedly stated that "express aiming" is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.*; *see also Dole Food*, 303 F.3d at 1111; *Biliack v. Paul Revere Life Ins. Co.*, 2017 WL 4325594, at *4 (D. Ariz. Aug. 24, 2017) (citing *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012)). Here, CoinMarketCap.Com did not simply operate a website accessible to Arizonians but advertised on Binance.US, which sought and obtained licensure as a money transmitted from the Arizona Department of Financial Institutions (Compl. ¶¶ 47, 227). In fact, Binance.US and CoinMarketCap.Com are strategic partners, where Binance.US certified Arizona consumers that CoinMarketCap.Com's information was reliable. (*Id.* ¶¶ 210, 212.) CoinMarketCap.Com's acts are, undeniably, intentionally expressed at the State of Arizona.

Third, CoinMarketCap.Com has caused harm which it knew Plaintiff suffered in Arizona. The foreseeable harm element is satisfied "when defendant's intentional act has foreseeable effects in the forum." *Bancroft,* 223 F.3d at 1087 (9th Cir. 2000). This element does not require that the "brunt" of the harm be suffered in the forum. *Yahoo!,* 433 F.3d at 1207. In fact, this element may be established even if the bulk of the harm occurs outside the forum. *Id.* Here, Plaintiff is a resident of Arizona and was physically located in Arizona during the acquisition and sale of HEX. (*Id.* ¶¶ 9–12.) With Arizona consumers relying on CoinMarketCap.Com's

ranking, CoinMarketCap.Com knew that its misconduct would affect individuals like Plaintiff.

CoinMarketCap.Com has purposefully directed its activities in Arizona.

### 4. Plaintiff's Claims Arise Out of and Relate to Defendant's Forum Related Activities

Plaintiff's claims arise out of and relate to CoinMarketCap.Com's forum-related activities. The second required element of specific jurisdiction, whether the claim arises out of or relates to the defendant's forum-related activities, is established "if the plaintiff 'would not have been injured but for' the defendant's conduct directed at the forum." *AMA Multimedia*, 2016 WL 5946051, at *6 (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). Here, Plaintiff's alleged injuries directly arise from and are the result of Defendants' publications of disparaging statements directed at Arizona and its direct contact with Arizona consumers. But for that conduct, Plaintiff would not have been injured. Plaintiff has made a prima facie showing to satisfy the second required element of specific jurisdiction.

### 5. Defendants Have Not Come Forward with Compelling Evidence that the Exercise of Jurisdiction Would be Unreasonable

When the plaintiff establishes the first two elements for specific jurisdiction, which Plaintiff has done here, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would be unreasonable. *AMA Multimedia*, 2016 WL 5956051, at *6. Here, CoinMarketCap.Com makes no compelling argument to demonstrate the exercise of personal jurisdiction would not comport with fair play and substantial justice. In any case, as Plaintiff has alleged, CoinMarketCap.Com intentionally availed itself to this forum and partnered with Binance.US—which sought and obtained licensure as a money transmitted from the Arizona Department of Financial Institutions. (*Id.* ¶ 47.)

12

Accordingly, it would not be an unreasonable burden on CoinMarketCap.Com to defend itself in this forum.

## B. PLAINTIFF HAS PROPERLY ALLEGED HIS CLAIMS AGAINST COINMARKETCAP.COM

### 1. CoinMarketCap.Com Violated the CEA Because It Intentionally Influenced and Caused Artificial Prices

Plaintiff has alleged that CoinMarketCap.Com violated the CEA. To state a price manipulation claim, a plaintiff must allege that (1) the defendant possessed an ability to influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial prices; and (4) the defendant specifically intended to cause the artificial price. *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 668 (S.D.N.Y. 2016). The CEA provides a private right of action against any person "who willfully aids, abets, counsels, induces, or procures the commission of a violation" of the CEA. 7 U.S.C. § 25. Furthermore, under the CEA, it is unlawful for:

> Any person to *manipulate or attempt to manipulate* the *price*
> *of any commodit*y in interstate commerce . . . or knowingly
> to deliver or cause to be delivered for transmission
> through the mails or interstate commerce by telegraph,
> telephone, wireless, or *other means of communication false*
> *or misleading or knowingly inaccurate reports concerning crop*
> *or market information or conditions that affect or tend to affect*
> *the price of any commodity* in interstate commerce[.]

7 U.S.C. 13(a)(2). Under the CEA, it is also "unlawful for any person, directly or indirectly, to manipulate or attempt to manipulate the price of any swap, or of any commodity in interstate commerce[.]" 7 U.S.C. 9(3). Plaintiff has alleged that CoinMarketCap.Com violated the CEA.

First, Plaintiff has pleaded that CoinMarketCap.Com has the ability to influence market prices. As pleaded, experts have noted that

13

CoinMarketCap.Com's rankings provide the "option for collusion, corruption, and coercion," and that CoinMarketCap.Com "has the capacity to essentially 'hide' a [cryptocurrency] at will." (*Id.* ¶¶ 22, 23.) In particular, Plaintiff alleges that CoinMarketCap.Com provided untrue statements concerning HEX's ranking. (*Id.* ¶ 163.) By encouraging those contemplating buying or selling cryptocurrencies to rely on CoinMarketCap.Com's rankings, Binance.US possesses the ability to influence market prices in the artificial manipulation of commodities. (*Id.* ¶ 181.)

Second, Plaintiff has pleaded that an artificial price existed. *See, e.g.,* *Commodity Exch.*, 213 F. Supp. 3d at 673 (manipulation shown if trading impacts a market which "relies on transaction to signal true, rather than manipulative, demand" (quotation marks omitted)). According to Nomics, HEX's true market cap was $85.3 billion as of July 21, 2021. (*Id.* ¶ 106.) At this market cap, HEX should have been ranked third in size as of July 21, 2021. (*Id.* ¶ 107.) As of July 21, 2021, CoinMarketCap.Com listed HEX's market cap as just over $25.6 billion. (*Id.* ¶ 108.) Even at that market cap, HEX should be ranked sixth in size as of July 21, 2021. (*Id.* ¶ 110.) As of July 21, 2021 CoinMarketCap.Com instead ranked HEX 201 in size. (*Id.*) Accordingly, as of July 21, 2021, HEX appeared only on the third page of CoinMarketCap.Com's results. (*Id.* ¶ 111.) At the same time, smaller ranking websites including Nomics.com, CoinRanking.com, YahooCrypto, TradingviewCrypto, Coinpaprika.com, Etherscan.io, and CryptoCurrencyCap.com all had HEX ranked between fourth and tenth in size as of June 18, 2021. (*Id.* ¶ 113.) CoinMarketCap.Com's locking of HEX's ranking has caused HEX to trade at lower prices than it would have had the ranking not been locked. (*Id.* ¶ 96.) But for CoinMarketCap.Com's failure to properly rank HEX, at least some individuals who purchased higher ranked cryptocurrencies would have purchased HEX instead, suppressing the price of HEX and inflating the price of one or more other cryptocurrencies. (*Id.* ¶ 115.) Plaintiff has pleaded that an artificial price existed.

Third, Plaintiff has pleaded that CoinMarketCap.Com caused the artificial prices. The CEA provides a private of action against any personally "who willfully aids, abets, counsels, induces, or procures the commission of a violation." 7 U.S.C. § 1. CoinMarketCap.Com's failure to properly rank HEX artificially suppressed HEX's value. (Compl. ¶ 114.) As discussed, CoinMarketCap.Com's locking of HEX's ranking has caused HEX to trade at lower prices than it would have had the ranking not been locked. (*Id.* ¶ 96.)

Fourth, CoinMarketCap.Com specifically intended to cause the artificial price. A defendant participates in a manipulative scheme with scienter by acting knowingly or recklessly in helping to affect the trading at issue. Specific intent to manipulate prices can be pled by alleging facts (1) showing that the defendant had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. *Commodity Exch.*, 213 F. Supp. 3d at 670. As pleaded, CoinMarketCap.Com has a strategic relationship with Binance and Binance.US. (*Id.* ¶¶ 186, 204, 210.) CoinMarketCap.Com sought to protect Binance and Binance.US because its partners would substantially profit through manipulating prices. HEX's success was a threat to Binance and Binance.US business because those exchanges made money only when an investor actively traded—whereas HEX was designed to discourage active trading. (*Id.* ¶ 136.) CoinMarketCap.Com specifically intended to cause the artificial price. While CoinMarketCap.Com seeks protection under the First Amendment for its false rankings, it argues its rankings are "expressions of opinion." (Motion at 13.) But, as alleged, that is not true: Binance directed users to CoinMarketCap.Com for *objective* information regarding the *true* ranking of virtual currencies—not mere opinions. (Compl. ¶ 164.)

Plaintiff has alleged that CoinMarketCap.Com violated the CEA.

1

2

**2. CoinMarketCap.Com's Manipulation of a Commodity Also Violates the Arizona Consumer Fraud Act**

3    The intentional manipulation of HEX by CoinMarketCap.Com also violates

4  the ACFA. To succeed on a claim of consumer fraud under ACFA, a plaintiff must

5  show (1) a false promise or misrepresentation, (2) which is made in connection with

6  the sale or advertisement of merchandise, and (3) consequent and proximate injury

7  resulting from the misrepresentation. Ariz. Rev. Stat. § 44–1521 *et seq.*; *see Bergdale*

8  *v. Countrywide Bank FSB*, No. cv–12–8057–PCT–GMS, 2013 WL 105295, at *3 (D.

9  Ariz. Jan. 9, 2013) (noting that plaintiffs may rely on misrepresentations that show

10  material change in position). Binance.US's manipulation of HEX violates the

11  ACFA.

12    First, Plaintiff has alleged misrepresentations by CoinMarketCap.Com. As

13  discussed, CoinMarketCap.Com provided false rankings to artificially manipulate

14  the price of HEX. (Compl. ¶ 164.) Second, CoinMarketCap.Com's

15  misrepresentation occurred in connection with advertisement because Binance.US

16  advertised CoinMarketCap.Com's services as a place to buy and sell

17  cryptocurrency and funneled users who were interested in purchasing such

18  cryptocurrency to CoinMarketCap.Com. (*Id.* ¶ 227.) Third, Plaintiff occurred

19  proximate and proximate injures in at least three ways: (1) Plaintiff received

20  artificially suppressed prices in exchange for their units of HEX (*id.* ¶ 232);

21  (2) Plaintiff suffered damages by CoinMarketCap.Com's failure to disclosure the

22  true ranking of HEX and the crypto currencies ranked above it (*id.* ¶ 233); and

23  (3) Plaintiff suffered damages that he would not have sold HEX at the prices he did

24  if he had been aware that the market price had been artificially and falsely

25  suppressed (*id.* ¶ 234). CoinMarketCap.Com has violated the ACFA by

26  manipulating the price of HEX.

27

28

16

### 3. Plaintiff Reserves His Rights to Include Additional Claims Under Federal and State Antitrust Law

Upon completion of discovery, Plaintiff reserves his rights to amend the Complaint to include additional claims under federal and state antitrust law.

## V. CONCLUSION

CoinMarketCap.Com, along with the other Defendants, intentionally lied to investors and provided inaccurate ranking of HEX, which artificially suppressed its value and damaged Plaintiff and the Class. The Court should find that is has personal jurisdiction over CoinMarketCap.Com because the CEA confers nationwide service of process in federal court for federal-question cases without falling short of the requirements of due process. Further, Plaintiff and the Class have pleaded claims under the CEA and ACFA warranting dismissal of Binance.US's Motion.

Dated: July 22, 2022

By: */s/ Arno T. Naeckel*

George Wentz, Jr. (admitted via *pro hac vice*)

**Davillier Law Group, LLC**

414 Church St., Suite 308

Sandpoint, ID 83864

Telephone: 208-920-6140

gwentz@davillierlawgroup.com

Alexander Kolodin (SBN 030826)

Arno T. Naeckel (SBN 026158)

**Davillier Law Group, LLC**

4105 North 20th St. Suite 110

Phoenix, AZ 85016

Telephone: 602-730-2985

akolodin@davillierlawgroup.com

anaeckel@davillierlawgroup.com

John G. Balestriere (*PHV application forthcoming*)

Matthew W. Schmidt (*PHV application forthcoming*)

**BALESTRIERE FARIELLO**

225 Broadway, 29th Floor

New York, New York 10007

Telephone:    (212) 374-5401

Facsimile:     (212) 208-2613

john.balestriere@balestrierefariello.com

matthew.schmidt@balestrierefariello.com

18

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of July 2022, I electronically transmitted the foregoing document to the Office of the Clerk of the Court, suing CM/EFC System, for filing and for transmittal of a Notice of Electronic Filing to the CM/EFC registrants on record.

*/s/ Arno T. Naeckel*

**Davillier Law Group, LLC**

19

1