KW LAW, LLP
Andrea S. Tazioli, SBN 026621
6122 N. 7th St., Suite D
Phoenix, AZ 85014
Telephone: (602) 609-7367
andrea@kwlaw.co

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC
Karen R. King (*pro hac vice*)
565 Fifth Avenue
New York, NY 10017
Telephone: (212) 856-9600
kking@maglaw.com

*Attorneys for
Defendant CoinMarketCap OpCo, LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Cox, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CoinMarketCap OpCo, LLC; Binance Capital Management Co., Ltd. d/b/a Binance and Binance.com; BAM Trading Services Inc. d/b/a Binance.US; Changpeng Zhao; Catherine Coley; Yi He; Ted Lin; and Does I-X;<br><br>Defendants. | Case No. 21-cv-08197-PCT-SMB<br><br>**DEFENDANT COINMARKETCAP OPCO, LLC's REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**<br><br>**(Oral Argument Requested)** |

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

LEGAL ARGUMENT ........................................................................................................... 2

I. PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION OVER COINMARKETCAP ........................................................ 2

    A. Plaintiff Concedes That CoinMarketCap is Not Subject to General Jurisdiction in Arizona ................................................................... 2

    B. Plaintiff Has Not Met His Burden of Establishing Specific Jurisdiction Over CoinMarketCap ............................................................... 2

        1. Plaintiff fails to show that CoinMarketCap purposefully directed any activity towards Arizona ........................ 2

        2. Plaintiff fails to demonstrate that his claims arise from any contact by CoinMarketCap with Arizona .................................. 4

        3. Requiring CoinMarketCap to defend this action in Arizona would offend traditional due process principles ...................................................................................... 5

    C. The CEA Does Not Confer Personal Jurisdiction Over CoinMarketCap ............................................................................................ 5

II. PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM AGAINST COINMARKETCAP .................................................................................. 6

    A. Plaintiff Fails to Allege a Violation of the Commodity Exchange Act ......................................................................................................... 7

    B. Plaintiff Fails to Plead a Violation of the Arizona Consumer Fraud Act .................................................................................................... 9

    C. Plaintiff Abandons His Antitrust Claim ..................................................... 10

CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Sw. Specialty Foods, Inc. v. Crazy Uncle Jester's Inferno World LLC*,
  2011 WL 13234183 (D. Ariz. June 22, 2011) .................................................................... 4

*BMA LLC v. HDR Glob. Trading Ltd.*,
  2021 WL 949371 (N.D. Cal. Mar. 12, 2021) ................................................................. 6, 8

*Bulgo* v. *Munoz*,
  853 F.2d 710 (9th Cir. 1988) ............................................................................................ 6

*CE Distribution, LLC v. New Sensor Corp.*,
  380 F.3d 1107 (9th Cir. 2004) .......................................................................................... 4

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ......................................................................................................... 2

*Dole Food Co., Inc. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) .......................................................................................... 2

*Ferren v. Westmed Inc.*,
  2021 WL 2012654 (D. Ariz. May 20, 2021) .................................................................... 8

*Fire & Police Pension Ass'n of Colo. v. Bank of Montreal*,
  368 F. Supp. 3d 681 (S.D.N.Y. 2019) ........................................................................ 1, 5

*Go-Video, Inc.* v. *Akai Elec. Co., Ltd.*,
  885 F.2d 1406 (9th Cir. 1989) .......................................................................................... 6

*Herbal Brands Inc. v. Photoplaza Inc.*,
  2021 WL 5299677 (D. Ariz. Nov. 15, 2021) .................................................................... 3

*In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*,
  560 F. App'x 84 (2d Cir. 2014) ........................................................................................ 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  27 F. Supp. 3d 447 (S.D.N.Y. 2014) ................................................................................ 6

*Marvix Photo, Inc. v. Brand Tech., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .......................................................................................... 3

*Modulus Fin. Eng'g Inc. v. Modulus Data USA Inc.*,
 2020 WL 2512785 (D. Ariz. May 15, 2020) ................................................................... 3

*Morrill v. Scott Fin. Corp.*,
 873 F.3d 1136 (9th Cir. 2017) ............................................................................... 3, 4

*Picot v. Weston*,
 780 F.3d 1206 (9th Cir. 2015) ..................................................................................... 2

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ....................................................................................... 2

*Shaw v. Vircurex*,
 2019 WL 2636271 (D. Colo. Feb. 21, 2019) .............................................................. 3

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
 366 F. Supp. 3d 516 (S.D.N.Y. 2018) ......................................................................... 8

*Walden v. Fiore*,
 571 U.S. 277 (2014) ............................................................................................... 3, 4

*Warfield* v. *Alaniz*,
 453 F. Supp. 2d 1118 (D. Ariz. 2006) ......................................................................... 6

*World-Wide Volkswagen Corp.* v. *Woodson*,
 444 U.S. 286 (1980) .................................................................................................... 4

**<u>Statutes</u>**

7 U.S.C. § 25(c) .................................................................................................................. 5

# INTRODUCTION

Plaintiff's Response ignores the simple, dispositive issue at the heart of CoinMarketCap OpCo, LLC's ("CoinMarketCap") motion—the Complaint alleges no conduct by CoinMarketCap directed at Arizona, or activity in Arizona that gives rise to Plaintiff's claims. He does not allege that CoinMarketCap has offices or employees in Arizona, that it has ever targeted Arizona residents, or that he himself engaged with CoinMarketCap in Arizona. The most Plaintiff offers is the conclusory assertion that CoinMarketCap's website "is widely used by Arizona investors." Complaint, ECF No. 1 ("Compl.") ¶ 13. Under well-established Ninth Circuit precedent, this bare allegation is insufficient to confer either general or specific jurisdiction over CoinMarketCap.

Nor does the Commodity Exchange Act's ("CEA") nationwide service of process provision provide an independent basis for personal jurisdiction over CoinMarketCap. Under the CEA, Plaintiff must allege that CoinMarketCap has minimum contacts with the local district *before* nationwide service of process is permitted. *See Fire & Police Pension Ass'n of Colo. v. Bank of Montreal*, 368 F. Supp. 3d 681, 695 n.11 (S.D.N.Y. 2019). Plaintiff has cited no support for the extraordinary interpretation that, in permitting nationwide service under the CEA, Congress intended to overwrite constitutional principles requiring a party to have certain minimum contacts with a forum before it may be hauled into the jurisdiction for litigation.

Even if Plaintiff could establish personal jurisdiction—which he cannot—his claims against CoinMarketCap should be dismissed because of glaring pleading deficiencies. In his Response, Plaintiff does little more than simply repeat the conclusory assertions in the Complaint, which, as discussed in CoinMarketCap's Motion to Dismiss the Complaint, fall far short of pleading the necessary elements under the CEA and Arizona Consumer Fraud Act ("ACFA"). Plaintiff also abandons his antitrust claims.

Because Plaintiff fails to establish personal jurisdiction over CoinMarketCap, and because his claims against CoinMarketCap lack a cognizable legal basis, they should be dismissed.

# LEGAL ARGUMENT

## I. PLAINTIFF FAILS TO ESTABLISH PERSONAL JURISDICTION OVER COINMARKETCAP

### A. Plaintiff Concedes That CoinMarketCap is Not Subject to General Jurisdiction in Arizona

Plaintiff sets forth no argument that CoinMarketCap is subject to general jurisdiction in Arizona. This is not surprising considering it is undisputed that CoinMarketCap is incorporated in Delaware and has no principal place of business in Arizona. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); Compl. ¶ 13. CoinMarketCap is not alleged to have an agent for service of process in Arizona, to hold any license to do business in Arizona, to have offices or mailing addresses in Arizona, or to have any physical operations in Arizona. Accordingly, both Plaintiff and CoinMarketCap agree that there is no basis for general jurisdiction over CoinMarketCap.

### B. Plaintiff Has Not Met His Burden of Establishing Specific Jurisdiction Over CoinMarketCap

Plaintiff also has not come close to satisfying his burden that CoinMarketCap is subject to specific personal jurisdiction in Arizona, i.e., that (1) CoinMarketCap has purposefully directed activities towards the forum state; (2) the claims arise out of those activities; and (3) jurisdiction is reasonable. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Only if the plaintiff meets the first two prongs, does the burden then shift to the defendant to show that the exercise of jurisdiction would not be reasonable. *Picot v. Weston*, 780 F.3d 1206, 1211–12 (9th Cir. 2015).

#### 1. Plaintiff fails to show that CoinMarketCap purposefully directed any activity towards Arizona

To establish purposeful direction, Plaintiff must show that CoinMarketCap, "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "All three parts of the test must be satisfied." *Id.* Plaintiff fails to demonstrate each of these

1  elements.

2        Plaintiff argues that CoinMarketCap committed an intentional act aimed at Arizona
3  by "provid[ing] false rankings on its website, which is accessible to Arizona residents."
4  *See* Plaintiff's Response to Defendant CoinMarketCap OpCo's, LLC's Motion to Dismiss,
5  ECF No. 75 ("Resp.") at 10; *see also* Compl. ¶ 13. But the allegation that its website
6  included allegedly false information does not suggest any intentional act by
7  CoinMarketCap directed at Arizona. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142
8  (9th Cir. 2017) (defining an intentional act as one that denotes "an external manifestation
9  of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate,
10 and intended"). This Court has explained—on multiple occasions—that the mere
11 accessibility of a website or advertisement in the forum state is not sufficient to show that
12 an out-of-state corporation "expressly aimed" conduct at the forum state. *See, e.g.*,
13 *Modulus Fin. Eng'g Inc. v. Modulus Data USA Inc.*, No. CV-19-04685-PHX-SMB, 2020
14 WL 2512785, at *6 (D. Ariz. May 15, 2020) (Brnovich, J.) ("Although anyone, including
15 Arizonans, can access Defendants' website, nothing on it indicates they used it to expressly
16 aim their tortious conduct at Arizona."); *Herbal Brands Inc. v. Photoplaza Inc.*, No. CV-
17 21-00577-PHX-SMB, 2021 WL 5299677, at *2 (D. Ariz. Nov. 15, 2021) (Brnovich, J.)
18 ("Maintenance of a passive website alone cannot satisfy the express aiming prong."); *see*
19 *also Marvix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011) (noting
20 that "[n]ot all material placed on the Internet is, solely by virtue of its universal
21 accessibility, expressly aimed at every state in which it is accessed"). Therefore, Plaintiff's
22 allegations that CoinMarketCap "operate[d] a website accessible to Arizonians" or that
23 it advertised on Binance.US's website (Resp. at 11), do not establish purposeful direction
24 by CoinMarketCap toward Arizona.

25       Plaintiff also does not establish that CoinMarketCap knew its website or
26 advertisement would cause harm in Arizona. Plaintiff argues that he "is a resident of
27 Arizona and was physically located in Arizona during the acquisition and sale of HEX,"
28 and makes the conclusory assertion that "CoinMarketCap.Com knew that its misconduct

would affect individuals like Plaintiff." Resp. at 11–12. However, "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014); *see also Morrill*, 873 F.3d at 1145 (explaining that "for specific personal jurisdiction, a tort must involve the forum state itself, and not just have some effect on a party who resides there"); *Shaw v. Vircurex*, No. 18-CV-00067-PAB-SKC, 2019 WL 2636271, at *4 (D. Colo. Feb. 21, 2019) (finding lack of specific jurisdiction in cryptocurrency case where "the only alleged connection between defendants and Colorado is harm suffered by a Colorado resident"). Plaintiff has not alleged any facts that permit the inference that CoinMarketCap knew that the effect of its alleged conduct would resonate in Arizona. *See Sw. Specialty Foods, Inc. v. Crazy Uncle Jester's Inferno World LLC*, No. CV 11-00048-PHX-SRB, 2011 WL 13234183, at *5 (D. Ariz. June 22, 2011) (concluding that the plaintiff failed to show that the defendant's actions caused harm that defendant knew was likely to be suffered in the forum state because there was "no evidence that the allegedly infringing product was ever sold in Arizona"); *cf. CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004) (concluding it was reasonable to infer that the defendant would know that the effect of its transactions would resonate in Arizona where the parties had a prior business relationship).

> 2. <u>Plaintiff fails to demonstrate that his claims arise from any contact by CoinMarketCap with Arizona</u>

Because Plaintiff fails to plead forum-related activities, he also cannot establish that any such activities give rise to the claims at issue. Notably, the specific activity at issue is the alleged depressed ratings of HEX, but Plaintiff does not allege that the administration of CoinMarketCap's rankings system was conducted in or directed at Arizona. *See Walden,* 571 U.S. at 289 (finding no specific jurisdiction over the defendant where the "challenged conduct" has nothing to do with the forum state); *see also* Defendant CoinMarketCap Opco, LLC's Motion to Dismiss the Complaint, ECF No. 72 ("Mot.") at 7. Plaintiff himself does not even claim to have had contact with CoinMarketCap in Arizona.

4

### 3. Requiring CoinMarketCap to defend this action in Arizona would offend traditional due process principles

The Court need not reach the third step of the specific jurisdiction analysis because Plaintiff has failed to satisfy the first two elements. *See Morrill*, 873 F.3d at 1142. Nonetheless, requiring CoinMarketCap to defend against this action in this forum would offend due process principles because CoinMarketCap has no reasonable expectation of being haled into an Arizona court. *See World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297 (1980). Plaintiff's suggestion that exercising jurisdiction is reasonable here because of CoinMarketCap's alleged "partner[ship]" with Binance.US is utterly baseless. Resp. 75 at 12. Although Plaintiff alleges that CoinMarketCap provides a link to Binance.US's website, this fact alone does not magically create a "partnership" between the two entities, or subject CoinMarketCap to jurisdiction wherever Binance.US transacts business. Critically, Binance.US itself is not an Arizona company and is not subject to personal jurisdiction in Arizona. *See* Motion to Dismiss the Complaint on Behalf of Defendant BAM Trading Service, Inc. d/b/a Binance.US; Memorandum in Support, ECF No. 70 at 3–10. Plaintiff's theory has no basis in fact, law, or fundamental notions of fair play and substantial justice.

### C. The CEA Does Not Confer Personal Jurisdiction Over CoinMarketCap

Plaintiff's alternative argument—that his CEA claim is sufficient for personal jurisdiction in light of the CEA's nationwide service of process provision—also fails. As a threshold matter, this alternative argument assumes that Plaintiff has asserted a viable claim under the CEA. For the reasons discussed in CoinMarketCap's Motion to Dismiss and this Reply, Plaintiff fails to plead a cognizable claim under the CEA. *See* Mot. at 9–13; *infra* Section II.A.

In addition, Plaintiff's interpretation of the CEA's service of process provision completely ignores the CEA's venue provision, which precedes the service provision in the statute. The venue provision states that a CEA action "may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs." 7 U.S.C. § 25(c).

The very next sentence states that "[p]rocess *in such action* may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found." *Id.* (emphasis added). By its very terms, nationwide service of process under the CEA is made contingent on first satisfying the venue provision. In context, the words "in such action" in the service of process provision plainly refer to those cases qualifying for venue in the immediately preceding sentence. Thus, the defendant must still have minimum contacts *with the local district* before nationwide service of process is permitted. *See Fire & Police Pension Ass'n of Colo.* 368 F. Supp. 3d at 695 n.11. As discussed in CoinMarketCap's Motion to Dismiss the Complaint and above, CoinMarketCap does not have minimum contacts with Arizona, much less business activities that give rise to Plaintiff's purported CEA claim.

None of the cases cited by Plaintiff actually support his novel interpretation. Indeed, none of them even involve the CEA. Rather, each of the cases addresses service of process provisions in completely different statutes. *See Warfield* v. *Alaniz*, 453 F. Supp. 2d 1118, 1127–29 (D. Ariz. 2006) (Securities and Exchange Act of 1934); *Bulgo* v. *Munoz*, 853 F.2d 710, 713 (9th Cir. 1988) (same); *Go-Video, Inc.* v. *Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989) (Clayton Act). Plaintiff has offered no legal precedent for interpreting the CEA's service provision in a manner inconsistent with its own venue provision, and such an interpretation is fundamentally at odds with the constitutional due process requirements underlying personal jurisdiction jurisprudence.

## II. PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM AGAINST COINMARKETCAP

In addition to the lack of personal jurisdiction over CoinMarketCap, Plaintiff's Complaint should be dismissed in its entirety for the alternative reason that he has not stated a cognizable claim against CoinMarketCap. As CoinMarketCap demonstrated in its initial Motion to Dismiss, Plaintiff has not sufficiently pleaded a CEA claim, an ACFA claim, or an antitrust violation. *See* Mot. at 8–16. In his Response, Plaintiff cites no case law refuting CoinMarketCap's arguments and merely reiterates conclusory assertions from

the Complaint. Plaintiff also abandons his deficient antitrust claim.

### A. Plaintiff Fails to Allege a Violation of the Commodity Exchange Act

With respect to his CEA claim, Plaintiff's Response does not address substantively the deficiencies identified in CoinMarketCap's Motion to Dismiss and instead merely repeats many of the wholly conclusory and speculative allegations contained in the Complaint. Plaintiff must, but fails to, plead with any particularity that (1) the defendant possessed an ability to influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial prices; (4) the defendant specifically intended to cause the artificial price; and (5) actual damages. *See BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *13 (N.D. Cal. Mar. 12, 2021); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 459, 463 (S.D.N.Y. 2014) (stating that a private plaintiff must also plead actual damages). Plaintiff's failure to plead any one of these elements, much less all five, is fatal to his CEA claim.

*First*, Plaintiff argues that CoinMarketCap possessed the ability to influence the market prices for HEX because (1) "experts" have noted that CoinMarketCap's rankings have "the capacity to essentially 'hide' a cryptocurrency at will," and (2) "[b]y encouraging those contemplating buying or selling cryptocurrencies to rely on CoinMarketCap.Com's rankings, Binance.US possesses the ability to influence market prices in the artificial manipulation of commodities." Resp. at 13–14. In addition to the fact that Plaintiff lists the wrong defendant (Binance.US instead of CoinMarketCap), Plaintiff does not explain *how* having the capacity to "hide" a cryptocurrency or encouraging people to rely on rankings, even if true, actually could have affected the market price for HEX. Nowhere does Plaintiff even attempt to link any decision made by HEX investors to CoinMarketCap's website or analyze the connection between price fluctuations for HEX with its rank on CoinMarketCap. *See* Mot. at 9–10.

*Second*, Plaintiff makes completely irrelevant arguments about HEX's alleged market capitalization in support of his assertion that he has pleaded an artificial price. *See* Resp. at 14. As discussed in CoinMarketCap's Motion to Dismiss (Mot. at 10), Plaintiff

1  provides no detail as to the most basic information required to meet this element: what
2  HEX's price was before the alleged "Suppression Period" and what it was afterwards. Nor
3  does he engage with the fact that the price of HEX significantly *increased* during the
4  alleged "Suppression Period."

5  *Third*, Plaintiff simply reiterates his conclusory allegation that
6  "CoinMarketCap.Com's locking of HEX's ranking has caused HEX to trade at lower prices
7  than it would have had the ranking not been locked." Resp. at 14. But, here again, Plaintiff
8  does not bother to explain how CoinMarketCap's ranking did, or even could have, affected
9  the price for HEX, especially given the number of well-established, unaffiliated websites,
10 all ranking HEX low among cryptocurrencies or deeming it unworthy of inclusion. *See*
11 Mot. at 10–11.

12 *Fourth*, with respect to specific intent, Plaintiff provides nothing more than half-
13 baked theories and speculation that CoinMarketCap sought to increase Binance Capital
14 Management's and Binance.US's profits by ranking HEX lower than other
15 cryptocurrencies. *See* Resp. at 15. These arguments do nothing to address the Complaint's
16 lack of particularized allegations of actual preferential treatment or lack of independence.
17 Moreover, Plaintiff does not engage with any of the cases that CoinMarketCap cited in its
18 Motion to Dismiss, which make clear that speculation regarding specific intent, including
19 imputing general business interests as evidence of intent for market manipulation, is clearly
20 unsustainable. *See* Mot. at 11–12; *see also BMA*, 2021 WL 949371, at *13; *In re*
21 *Commodity Exch., Inc. Silver Futures & Options Trading Litig.*, 560 F. App'x 84, 86 (2d
22 Cir. 2014) (summary order); *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366
23 F. Supp. 3d 516, 553–54 (S.D.N.Y. 2018).

24 *Fifth*, apparently recognizing the weakness of his claim, Plaintiff's Response fails
25 to even address the absence of allegations in the Complaint regarding actual damages,
26 which is required to establish standing to bring a claim under the CEA. *See LIBOR-Based*
27 *Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d at 459. Indeed, as demonstrated in the
28 Motion to Dismiss, Plaintiff has not pleaded the most fundamental information regarding

the price and amount of HEX he purchased and/or sold. *See* Mot. at 12. Accordingly, there is no way of determining whether Plaintiff has incurred actual damages.

Because Plaintiff's Complaint does not sufficiently allege any of the elements of a CEA violation, and his Response provides no further illumination or supporting case law, Count I should be dismissed for failure to state a claim.

### B. Plaintiff Fails to Plead a Violation of the Arizona Consumer Fraud Act

As with the CEA claim, Plaintiff's Response provides no further illumination or supporting case law to salvage his ACFA claim. Plaintiff must, but does not, identify "[1] a false promise or misrepresentation, [2] made in connection with the sale or advertisement of merchandise, and [3] the plaintiff's consequent and proximate injury from reliance on such a misrepresentation." *Ferren v. Westmed Inc.*, No. CV-19-00598-TUC-DCB, 2021 WL 2012654, at *4 (D. Ariz. May 20, 2021).

With respect to an alleged false promise or misrepresentation, Plaintiff simply repeats the conclusory assertion that CoinMarketCap "provided false rankings to artificially manipulate the price of HEX." Resp. at 16. Plaintiff ignores and does not address the criteria disclosed in detail on CoinMarketCap's website, or the existence of comparator websites that similarly rank HEX well below HEX's alleged market capitalization. *See* Mot. at 13–14. Plaintiff also does not even attempt to explain how the rankings on CoinMarketCap's website constitute a "sale" or "advertisement" of "merchandise" under the ACFA. Indeed, his arguments continue to completely ignore the statutory definitions for these terms. *See* Mot. at 14. Finally, Plaintiff does not explain how he relied on any alleged misrepresentation, as required under the ACFA, or engage whatsoever with the significant case law cited by CoinMarketCap illustrating that a claim is not cognizable under ACFA where the Plaintiff was not himself exposed to the alleged misrepresentation or omission. *See* Mot. at 14–15.

Because Plaintiff fails to plead multiple elements that are required for an ACFA claim, Count III should be dismissed.

### C. Plaintiff Abandons His Antitrust Claim

Apparently recognizing the clear deficiencies in his pleading with respect to Count V, Plaintiff abandons his antitrust claim by noting only that he "reserves his rights to amend the Complaint to include additional claims under federal and state antitrust law" "upon completion of discovery." Resp. at 17. No Federal Rule of Civil Procedure provides for a party to "reserve rights" to amend a complaint in an opposition to a motion to dismiss. For the reasons articulated in CoinMarketCap's Motion to Dismiss (Mot. at 15–16), as to which Plaintiff offers no substantive response, the pleading is patently deficient and the antitrust claim should be dismissed.

### CONCLUSION

For the foregoing reasons, and those discussed in its Motion to Dismiss the Complaint, CoinMarketCap respectfully submits that this Court should dismiss CoinMarketCap from this action and dismiss Counts I, III, and V with prejudice.

DATED: August 22, 2022

**KW LAW, LLP**
By: */s/ Andrea S. Tazioli*
Andrea S. Tazioli

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, P.C.**
Karen R. King (*pro hac vice*)
565 Fifth Avenue
New York, New York 10017
Tel: (212) 880-9403
Tel: (212) 880-9576
kking@maglaw.com
mvitale@maglaw.com

*Attorneys for Defendant CoinMarketCap OpCo LLC*

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of August 2022, I electronically transmitted the foregoing document to the Office of the Clerk of the Court, using the CM/EFC System, for filing and for transmittal of a Notice of Electronic Filing to the CM/EFC registrants on record.

/s/ Blake Scheffey