**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ryan Cox, | No. CV-21-08197-PCT-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| CoinMarketCap OpCo LLC, et al., | |
| Defendants. | |

Before the Court are three separate motions to dismiss Plaintiff's Complaint (Doc. 1.) First is Defendant BAM Trading Services Inc.'s ("Binance.US") Motion to Dismiss ("MTD"). (Doc. 70.) Plaintiff filed a Response (Doc. 74), and Binance.US filed a Reply (Doc. 76). Second is Defendants Binance Capital Management Co., Ltd., ("BCM") Changpeng Zhao, Yi He, and Ted Lin's ("Binance Individual Defendants") MTD. (Doc. 71.) Plaintiff filed a Response (Doc. 73), and a Reply was filed (Doc. 78). Last is CoinMarketCap Opco, LLC's ("CoinMarketCap") MTD. (Doc. 72.) Plaintiff filed a Response (Doc. 75), and CoinMarketCap filed a Reply (Doc. 77). Oral argument was held on February 10, 2023. After considering the parties' arguments and the applicable law, the Court will grant all three motions to dismiss for the reasons discussed below.

I.    **BACKGROUND**

This case involves the alleged artificially suppressed ranking of the HEX cryptocurrency on CoinMarketCap's website. Plaintiff filed this class action lawsuit, alleging that from September 27, 2020, to the present ("the Suppression Period"), the

Defendants "artificially suppress[ed]" the value of HEX by "artificially inflat[ing]" the value of other cryptocurrencies.  (Doc. 1 at 2 ¶ 3, 22 ¶¶ 90–94.)  Plaintiff filed the Complaint "on behalf of all persons who sold HEX during the Suppression Period which they had acquired prior to the Suppression Period."  (*Id.* at 27 ¶ 146) (emphasis omitted).  Specifically, Plaintiff alleges the following: (1) a private right of action against all Defendants under the Commodity Exchange Act "CEA" for manipulation of commodity prices and provision of false, misleading, or knowingly inaccurate reports tending to affect the price of commodities (*see* 7 U.S.C. §§ 9(1), 9(3), 13(a)(2)); (2) strict liability against Defendants BCM and Binance.US for violations of the CEA; (3) violation of the Arizona Consumer Fraud Act against all corporate Defendants; (4) control person liability for violations of the Arizona Consumer Fraud Act ("ACFA") against all Defendants except CoinMarketCap; and (5) an antitrust claim against all corporate defendants.  (*Id.* at 29–42, ¶¶ 157–262.)

Plaintiff alleges that Defendant CoinMarketCap is a coin ranking website owned by Defendant Binance Capital Mgmt. Co., Ltd.—a cryptocurrency exchange.[1]  (*Id.* at 2 ¶ 5.)  Plaintiff further alleges that Binance.US is the U.S. affiliate of BCM, and that both are affiliated with CoinMarketCap.  (*Id.*)  Plaintiff also names the following individuals as Defendants: (1) Changpeng Zhao, Binance's Chief Executive Officer; Yi He, Binance's Chief Marketing Officer; (3) Ted Lin, Binance's Chief Growth Officer; and (4) Catherine Coley, Binance.US's Chief Executive Officer from its inception to May 2021.  (*Id.* at 8–11.)

Plaintiff alleges CoinMarketCap's historical rankings show HEX was ranked as the 20th top cryptocurrency as recently as September 20, 2020, and "was in line with CoinMarketCap.com's estimation of HEX's market cap."  (*Id.* at 22 ¶ 92.)  However, Plaintiff contends by September 27, 2020, the Suppression Period began when HEX's ranking dropped to number 201 and has remained locked ever since.  (*Id.* ¶¶ 90–94.)

---

[1] As discussed later, BCM states it is not a cryptocurrency exchange and Plaintiff is confusing BCM with Binance Holding Ltd., which is a cryptocurrency exchange.  Plaintiff never disputes this confusion.

Because top ranked cryptocurrencies appear higher on CoinMarketCap's homepage for purchase, Plaintiff asserts that HEX's locked ranking has caused HEX to trade at lower prices due to consumers needing to scroll further down the list.  (*Id.* ¶¶ 96–98.)

Plaintiff asserts that HEX should have been ranked 3rd in size by CoinMarketCap in part because Nomics, a smaller cryptocurrency ranking site, estimated HEX's true market cap at $85.3 billion as of July 21, 2021—also noting its rankings between 4th and 10th in size from smaller ranking websites.  (*Id.* at 23 ¶ 106, 24 ¶ 113.)  Plaintiff asserts CoinMarketCap instead estimated HEX at just over $25.6 billion, and that even with that estimation, HEX should have been ranked 6th in size, not 201st.  (*Id.* at 23 ¶¶ 108–111.)  In contrast, Plaintiff alleges BCM overvalued the cryptocurrencies it issued and owned.  Plaintiff alleges BCM issued BinanceCoin and BinanceUSD, which CoinMarketCap ranked as the 4th and 10th largest cryptocurrencies, respectively, as of July 21, 2021.  (*Id.* at 23 ¶¶ 99–100, ¶¶ 102–03, 105.)  Still, Plaintiff concedes that "some other websites that allow users to buy cryptocurrencies also present [HEX] in the order they are found in CoinMarketCap.com's market cap rankings."  (*Id.* ¶ 112.)

Ultimately, Plaintiff alleges that: (1) Defendant CoinMarketCap's failure to properly rank HEX has artificially suppressed its value to Plaintiff's detriment; (2) if HEX had been ranked higher, consumers would have purchased HEX over other cryptocurrencies, including Binances' cryptocurrencies; (3) this artificial suppression has provided a financial benefit to all named Defendants; and (4) the erroneous ratings have improperly inflated the value of cryptocurrencies ranked above HEX, including Binances' cryptocurrencies.  (*Id.* at 24 ¶¶ 114–18.)

Plaintiff's claims also rely on the theory that the Defendants artificially suppressed the value of HEX to serve their own financial interests.  Plaintiff alleges that "all Individual Defendants have large holdings of Bitcoin, Binance Coin, Binance USD, and other cryptocurrencies," but hold no units of HEX.  (*Id.* at 25 ¶¶ 130, 133.)  Plaintiff argues that Defendants' ownership of Bitcoin is problematic because HEX was designed as an alternative to Bitcoin's model, so if HEX succeeds, Bitcoin's value decreases.  (*Id.* ¶ 131.)

1    Plaintiff further alleges that "[r]ecognizing the threat that HEX posed, just prior to the
2    beginning of the Suppression Period, Binance launched Binance Smart Chain. . . .  Thus,
3    Binance Coin became a direct competitor of HEX."  (*Id.* at 26 ¶ 137.)  Finally, Plaintiff
4    alleges that: (1) HEX's creator has been a vocal critic of Binance and CoinMarketCap; (2)
5    "Persons with a close connection to CoinMarketCap.com have also expressed a personal
6    dislike of HEX's creator"; (3) Binance and its named principals are financially incentivized
7    to create the highest demand for BinanceCoin and BinanceUSD; and (4) not only have
8    Defendants' actions made it challenging for HEX's model to succeed, they also financially
9    benefit from BinanceCoin and the Binance Smart Chain's adoption through investors.  (*Id.*
10   at 23 ¶ 104, 27 ¶¶ 141–44.)

11       Binance.US, BCM, the Binance Individual Defendants, and CoinMarketCap all
12   move to dismiss Plaintiff's Complaint for lack of personal jurisdiction, and failure to state
13   a claim.  (Docs. 70 at 8; 71 at 2; 72 at 2.)  BCM and the Binance Individual Defendants
14   also move to dismiss for insufficient service of process on Binance Individual Defendants.
15   (Doc. 71 at 2.)

16   **II.    LEGAL STANDARD**

17       Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a defendant may
18   move to dismiss a complaint prior to trial for lack of personal jurisdiction.   After a
19   defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff has the
20   burden of proving jurisdiction is satisfied.  *Schwarzenegger v. Fred Martin Motor Co.*, 374
21   F.3d 797, 800 (9th Cir. 2004).  Personal jurisdiction exists through either general or specific
22   jurisdiction.  *Cybersell, Inc., v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997).

23       General personal jurisdiction is established when a defendant has "continuous and
24   systematic" contacts with the forum state.  *Goodyear Dunlop Tires Ops., S.A. v. Brown*,
25   564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).
26   This is an "exacting" standard, and the defendant's forum contacts must be so pervasive
27   they "approximate physical presence" in the state.  *Schwarzenegger*, 374 F.3d at 801.
28   Therefore, "only in an exceptional case will general jurisdiction be available anywhere

other than the corporation's place of incorporation and principal place of business." *LNS Enters. LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065, 1072 (D. Ariz. 2020) (cleaned up), aff'd 22 F.4th 852 (9th Cir. 2022); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (general jurisdiction exists over a company that is incorporated in or has its principal place of business in the forum). Doing business in a state alone does not rise to establishing general personal jurisdiction in the forum, *see Hendricks v. New Video Channel Am., LLC*, No. 2:14-CV-02989-RSWL-SSx, 2015 WL 3616983, at *3 (C.D. Cal. June 8, 2015), nor does registering or being licensed to do business in a state. *Wal-Mart Stores, Inc., v. LeMaire*, 395 P.3d 1116, 1118–19, 1121–22 (Ariz. Ct. App. May 11, 2017) (to "confer general jurisdiction over every foreign corporation with a large commercial presence in Arizona" would be "neither fair, rational nor consistent with" precedent).

To satisfy specific personal jurisdiction in the Ninth Circuit, the following three conditions must be satisfied:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its law;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*LNS Enters. LLC*, 464 F. Supp. 3d at 1072 (quoting *Freestream Aircraft (Berm.) Ltd. V. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018)). Plaintiff bears the burden of meeting the first two prongs, and if proven, the burden shifts to the defendants to demonstrate the last prong. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

## III.   DISCUSSION

### A.   Personal Jurisdiction Over Binance.US

Binance.US raises numerous arguments as to why it does not belong in this suit. These arguments include: (1) Binance.US is not incorporated in Arizona, nor is its principal place of business in Arizona; (2) Plaintiff has not demonstrated that Binance.US has had

minimum contacts with Arizona; and (3) "operating a national website which directed unidentified users from unidentified states to CoinMarketCap does not establish personal jurisdiction in Arizona." (Doc. 70 at 9.)  Binance.US notes that Plaintiff has not even alleged its place of incorporation or principal place of business. (*Id.* at 11.)  Concurrently, Binance.US requests judicial notice that it is incorporated in Delaware with a California principal place of business. (*Id.*) (citing 70-2.)  After reviewing the evidence submitted, and with no objection from Plaintiff, the Court will take judicial notice as to these two facts.  To otherwise establish general personal jurisdiction, Plaintiff had to allege that Defendant's contacts with Arizona "are so constant and pervasive as to render it essentially at home" in the state.  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).  Plaintiff makes no such arguments, raising only arguments for specific jurisdiction.  Accordingly, the Court finds it cannot exercise general jurisdiction over Binance.US.

### 1. Personal Jurisdiction Under the CEA

Plaintiff argues that the Court has personal jurisdiction under 7 U.S.C. § 25(c), regardless of Binance.US's minimum contacts with Arizona.  Specifically, Plaintiff argues the CEA allows actions to be brought where the act or transaction constituting the violation occurred.  *See* 7 U.S.C. § 25(c).  Alleging such a violation occurred in Arizona, Plaintiff argues that minimum contacts are not required in federal question cases.  *See Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1127–29 (D. Ariz. 2006) (finding a securities statute authorizing nationwide service of process established personal jurisdiction over defendants).  The CEA statute reads:

> Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs. Process *in such action* may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found.

7 U.S.C. § 25(c) (emphasis added).

Plaintiff cites three cases to assert that the CEA's nationwide service of process provision provides this Court personal jurisdiction over Binance.US.  None of these cases

discuss the CEA. *See Warfield*, 453 F. Supp. 2d at 1127–29 (discussing personal jurisdiction in the context of the Federal Securities and Exchange Acts); *Bulgo v. Munoz*, 853 F.2d 710, 713 (9th Cir. 1988) (same); *Go-Video, Inc., Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989) (discussing the Clayton Act).

The Second Circuit has addressed this issue under the CEA, providing persuasive authority that this Court must first consider 7 U.S.C. § 25(c)'s venue provision by considering Defendant's minimum contacts before considering the national service of process provision. *See Fire & Police Pension Ass'n of Colo. v. Bank of Montreal*, 368 F. Supp. 3d 681, 695 n.11 (S.D.N.Y 2019) (discussing 7 U.S.C. § 25(c) and noting that "[n]o party has addressed the relationship between the venue provision and the service of process provision, and defendants have not challenged this District's venue. Accordingly, this Court considers whether plaintiffs have made a *prima facie* showing that defendants' national contacts are sufficient for this Court to exercise personal jurisdiction." (quoting *Sullivan v. Barclays PLC*, 13-CV-2811 (PKC), 2017 WL 685570, at *42 (S.D.N.Y. Feb. 21, 2017))).

Binance.US *does* raise arguments regarding the statute's relating venue and service of process provisions, and objections to the District of Arizona being the proper venue. Binance.US argues that 7 U.S.C. § 25(c) requires that the venue provision be satisfied before the national service provision may be executed. The Court agrees. In the statute, the venue provision comes first, allowing actions to be "brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs." 7 U.S.C. § 25(c). The national service provision follows and reads, "[p]rocess *in such action* may be served in any judicial district of which the defendant is an inhabitant or wherever the defendant may be found." *Id.* (emphasis added). The statute requires plaintiffs to first satisfy the venue provision, meaning Plaintiff must establish Binance.US has had sufficient minimum contacts with Arizona for this Court to exercise personal jurisdiction. *See Fire & Police Pension*, 368 F. Supp. 3d at 695 n.11. Plaintiff cannot rely on the national service provision

to establish personal jurisdiction.

## 2. Specific Personal Jurisdiction

### a. Prong One

Plaintiff must demonstrate that Binance.US purposefully directed activities towards Arizona or purposefully availed itself to the benefits and protection of Arizona's laws. *See LNS Enters. LLC*, 464 F. Supp. 3d at 1072. To do so, Plaintiff must show that (1) Binance.US committed an intentional act that was (2) expressly aimed at Arizona, and that (3) the act caused harm that Defendant knew would likely be suffered in Arizona. *See Calder v. Jones*, 465 U.S. 783, 789–790 (1984). To prove an intentional act, Plaintiff must demonstrate "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

Plaintiff claims Binance.US committed an intentional act by providing "false statements on its website by directing users to CoinMarketCap.Com's website," and authorizing CoinMarketCap to "proceed on its behalf as a subsidiary and marketing channel in dereliction of regulation requirements." (Docs. 1 at 30 ¶ 164, 32 ¶ 183; 74 at 16.) Binance.US does not argue or dispute this factor. The Court therefore finds that Binance.US committed an intentional act by operating in the United States and allowing CoinMarketCap's rankings on its website. *Schwarzenegger*, 374 F.3d at 806.

Next, Plaintiff must demonstrate that these acts were intentionally directed at Arizona. "[T]he Ninth Circuit has consistently found that 'a mere web presence is insufficient to establish personal jurisdiction.'" *Boehm v. Airbus Helicopters Inc.*, 527 F. Supp. 3d 1112, 1120 (D. Ariz. 2020) (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)). Likewise, corporations do not purposefully avail themselves to a specific forum by "passively target[ing] potential and existing customers across North America." *Id.* It follows that personal jurisdiction is not established when a

defendant is "operating a website that Arizonans could access, especially when Arizonans were not using the website disproportionally and were not singled out for solicitation." *Malcomson v. IMVU, Inc.*, No. 1 CA-CV 18-0596, 2019 WL 2305013, at *3 (Ariz. Ct. App. May 30, 2019); *see also Cybersell*, 130 F.3d at 418 (finding that a website "simply was not aimed intentionally at Arizona").

Plaintiff argues Binance.US's intentional act was directed at Arizona because in addition to operating a website accessible by Arizonans, "Binance.US sought and obtained licensure as a money transmitter from the Arizona Department of Financial Institutions." (Doc. 74 at 16 (citations omitted)).  Furthermore, Plaintiff notes that Binance.US operates legally in Arizona despite being banned in other states.  Binance.US counters that operating a website accessible to Arizona residents does not constitute an express or intentional act directed at Arizona.

The Court notes that Plaintiff alleges no facts to suggest Arizona is being specifically targeted or that Binance.US purposefully availed themselves.  Plaintiff's allegations demonstrate that Biance.US operates its website nationwide, except for an alleged seven states that banned it. (*See* Doc. 1 at 11 ¶ 44.)  Similarly, merely complying with Arizona law does not qualify as intentionally targeting the forum.  Binance.US is responsible for complying with the laws of *every* state its website is accessible, and Plaintiff has failed to allege any intentional acts of Binance.US being conducted in Arizona outside the accessibility of its website—which contains a recommendation for CoinMarketCap.com.  For these reasons, the Court finds Plaintiff failed to satisfy factor two of the *Calder* test.  *See Boehm*, 527 F. Supp. 3d at 1120.

Even if the Court had found there was enough to show an intentional act directed at the forum, Plaintiff still failed to allege that Binance.US knowingly caused Plaintiff harm in Arizona.  *Calder*'s third factor is satisfied when a defendant's intentional act has foreseeable effects or consequences in the forum. *Bancroft & Masters, Inc. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  The forum need not suffer the "brunt" of the harm either because "[i]f a jurisdictionally sufficient amount of harm is suffered in the

forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).  Plaintiff argues that Binance.US caused harm which it knew was likely to be suffered in Arizona because it obtained licensure in Arizona, and therefore knew its misconduct would affect individuals like Plaintiff who acquire or sell HEX in Arizona.  Binance.US argues Plaintiff failed to establish any intentional harm in Arizona because Plaintiff does not allege Binance.US had any contact with Arizona outside its money transmitter state licensure.   Binance.US continues that unspecified potential investors throughout the United States potentially relying on its recommendation of CoinMarketCap's rankings would not lead it to foresee Plaintiff's alleged harm in Arizona.

The Court agrees with Binance.US that Plaintiff neither alleges any contact in Arizona, nor does he allege personal reliance on Binance.US's website.  Because Plaintiff alleges no personal harm or contact with Binance.US, the Court cannot find that it knowingly and foreseeably caused the alleged harm in Arizona.  *See Bancroft*, 223 F.3d at 1087.  For these reasons, the Court finds that Plaintiff fails the first prong of the Ninth Circuit's three-prong test.  *See LNS Enters. LLC*, 464 F. Supp. 3d at 1072.  Because Plaintiff bears the burden of satisfying the first two prongs of the Ninth Circuit's three-prong test, *see Morrill*, 873 F.3d at 1142, the inquiry would ordinarily end here.  However, the Court will complete the analysis.

b. Prong Two

To satisfy the second prong, Plaintiff must demonstrate that but for Binance.US's activity in Arizona, Plaintiff's injuries would not have occurred.  *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).   This test is not satisfied for claims that are "too attenuated."   *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997).  Furthermore, a plaintiff's claims have to arise from "contacts that the 'defendant himself' creates with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  But even then, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is

the basis for its jurisdiction over him." *Id.* at 285.

Plaintiff's only argument for satisfying the second prong is that "Plaintiff's alleged injuries directly arise from and are the result of Defendants' publications of disparaging statements directed at Arizona and its direct contact with Arizona customers. But for that contact, Plaintiff would not have been injured."  Binance.US argues that Plaintiff fails to allege that any artificial deflation of HEX would not have arisen "but for" the alleged activity in Arizona, and that any connection Plaintiff does draw is far too attenuated.

The Court agrees.  Here, Plaintiff alleges that because Binance.US's website directed unidentified potential investors to CoinMarketCap.com's rankings, those potential investors did not purchase HEX because its rankings were artificially deflated, thus harming Plaintiff and his investment interest in HEX.  Plaintiff's connection is far too attenuated to demonstrate that "but for" Binance.US's website being available in Arizona, Plaintiff's allegations as to HEX's artificial deflation would not have arisen. *See Doe*, 112 F.3d at 1051.  Besides the website's accessibility and Plaintiff purchasing and selling HEX in Arizona, Plaintiff fails to allege any specific activity in Arizona that gives rise to his claim that HEX was artificially deflated via its ranking on CoinMarektCap.com. *See Ballard*, 65 F.3d at 1500.  For these reasons, Plaintiff fails to satisfy the second prong. *See LNS Enters. LLC*, 464 F. Supp. 3d at 1072.

### c. Prong Three

Because Plaintiff failed the first two prongs, the Court need not engage in the third, which shifts the burden to Binance.US.  Nonetheless, the Court will conduct the analysis. The Ninth Circuit provides a seven-factor test for courts to exercise specific personal jurisdiction over an out-of-state defendant.  The seven factors are:

> (1) The extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th

Cir. 2003).  No single factor is dispositive.  *Id.*

Binance.US argues all seven factors weigh in its favor.  Binance.US first argues purposeful interjection is similar to "purposeful direction," and should thus weigh in Defendant's favor because the Complaint does not allege how Binance.US. purposefully directed its business in Arizona.  *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485, 1488 (9th Cir. 1993) (finding that even though purposeful availment was satisfied, "[s]ince the [out-of-state defendants'] contacts were attenuated, this factor weighs in their favor").  Second, Binance.US asserts that because it is not located in Arizona, it would be burdened by defending this action.  *See Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995 ("[T]he law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden.").  Third, Binance.US again points to the Complaint's failure to allege minimum contacts with Arizona to argue that an exercise of personal jurisdiction in Arizona would conflict with the sovereignty of Delaware and California, the two states that could exercise personal jurisdiction over it.

Fourth, Binance.US argues Arizona has little interest in adjudicating this dispute because the Complaint does not allege how any Arizona resident, including Plaintiff, has used Biance.US to their detriment.  *See, e.g.*, *Chandler v. Roy*, 985 F. Supp. 1205, 1214 (D. Ariz. 1997) ("[A] state maintains a strong and special interest in exercising jurisdiction over those who commit tortious acts *within its borders* and in providing an effective means of redress *for its residents* who are tortiously injured.").  Fifth, Binance.US argues that the forums' efficiency favors the Defendants because the Complaint alleges only one witness, Plaintiff, who failed to allege any evidence unrelated to himself that is located in Arizona. *Core-Vent Corp.*, 11 F.3d at 1489.

Sixth, Binance.US asserts the Supreme Court and Ninth Circuit do not "give[] much weight to inconvenience to the plaintiff" and Plaintiff's preference for his "home forum" of Arizona "does not affect the balancing."  *Id.* at 1490.  As such, the effectiveness and convenience of relief lean in Binance.US's favor.  Lastly, Binance.US argues that Delaware and California are viable alternative forums.

Plaintiff does not engage in this seven-factor test.  Instead, Plaintiff merely argues

that Binance.US fails to address whether exercising personal jurisdiction would "comport with fair play and substantial justice."  Plaintiff further argues it would not unreasonably burden Binance.US to defend itself in Arizona because it obtained licensure as a money transmitter.  The Court agrees with Binance.US's analysis and arguments under the Ninth Circuit's seven-factor test, and notes Plaintiff failed to offer substantial arguments or objections to the contrary.  *See Cybersell, Inc.*, 130 F.3d at 415 ("[I]t would not comport with traditional notions of fair play and substantial justice . . . for Arizona to exercise personal jurisdiction over an allegedly infringing [out-of-state] website advertiser who has no contacts with Arizona other than maintaining a home page that is accessible to Arizonans, and everyone else, over the Internet." (cleaned up)).

For these reasons, the Court finds that Plaintiff has failed to establish the Court's personal jurisdiction over Binance.US.  The Court will therefore grant Defendant Binance.US's MTD for lack of personal jurisdiction.  Being moot, the Court will not address Binance.US's arguments under Rule 12(b)(6).

### B.    Personal Jurisdiction Over CoinMarketCap

CoinMarketCap argues this Court does not have personal jurisdiction over it, because it is a Delaware corporation that is not alleged to have any place of business, operation, or employees in Arizona.  CoinMarketCap also argues Plaintiff fails to allege any injuries arising from or relating to Arizona, or any of CoinMarketCap's in-forum activities.    As such, CoinMarketCap contends Plaintiff cannot establish specific jurisdiction in Arizona.  Plaintiff again raises the argument that the CEA's national service of process provision confers jurisdiction over CoinMarketCap.  Additionally, Plaintiff argues personal jurisdiction exists under the Ninth Circuit's three-prong test, because CoinMarketCap directs its activities in Arizona through its website, has a partnership with Binance.US to be advertised on that website, and CoinMarketCap cannot show any burden exists by defending this action in Arizona.

Here, the parties also do not dispute that CoinMarketCap is incorporated in Delaware, has no principal place of business in Arizona, and is not alleged to have an agent

for service of process in Arizona, any licensure, mailing addresses, offices, or physical operations in Arizona.  Having no basis to exercise general jurisdiction, the Court will whether it has specific jurisdiction.  *See LNS Enters. LLC*, 464 F. Supp. 3d at 1072.

### 1.  Personal Jurisdiction Under the CEA

Plaintiff raises the exact same arguments here as he did in response to Binance.US's MTD.  The Court rejects this argument for the same reasons stated above.  *See Fire & Police Pension*, 368 F. Supp. 3d at 695 n.11.

### 2.  Specific Personal Jurisdiction

The Court will again apply the Ninth Circuit's three-prong test to determine if specific personal jurisdiction may be exercised over CoinMarketCap.  *See LNS Enters. LLC*, 464 F. Supp. 3d at 1072.

#### a.  Prong One

Plaintiff argues CoinMarketCap committed an intentional act by providing false rankings on its website, which is accessible in Arizona.  CoinMarketCap does not dispute this factor.  The Court finds this factor is satisfied.  *See Schwarzenegger*, 374 F.3d at 806.

However, the parties disagree on whether this act was expressly aimed at Arizona. Plaintiff asserts CoinMarketCap's website was expressly aiming at Arizona because (1) it advertised on Binance.US, a licensed Arizona money transmitter, (2) CoinMarketCap and Binance.US are strategic partners, and (3) Binance.US certified to Arizona consumers that CoinMarketCap.com's information was reliable.

CoinMarketCap counters that its website's mere accessibility in Arizona and/or a third party website's advertisements are not enough to find that its activity was expressly aimed at Arizona.   CoinMarketCap also notes that Plaintiff does not allege that CoinMarketCap.com was involved in any purchase or sale of cryptocurrency, or that any part of its website is specifically directed at Arizona.

The Court agrees with CoinMarketCap.  The Ninth Circuit finds that "express aiming" occurs when a defendant is alleged to have engaged in wrongful conduct "individually targeting a known forum resident."  *Bancroft*, 223 F.3d at 1087.  At most,

- 14 -

Plaintiff alleges that CoinMarketCap.com's rankings were individually targeting Plaintiff when Binance.US advertised CoinMarketCap.com on its own website.  But Plaintiff fails to allege that any part of CoinMarketCap's website is specifically targeting Plaintiff or Arizona residents.  CoinMarketCap.com's accessibility in Arizona does not alone satisfy the second prong.  *See Cybersell, Inc.*, 130 F.3d at 415; *see also Handsome Music v. Etoro USA LLC*, LACV-20-08059(VAP) (JCx), 2020 WL 8455111, at *5 (C.D. Cal. Dec. 17, 2020) (finding a company's "online trading platform" was not "directed at" the forum because plaintiffs did not demonstrate "something more" than the mere operation of the website); *see also JST Performance, Inc. v. Shenzhen Aurora Tech. Ltd.*, No. CV-14-1569-PHX-SMM, 2015 WL 12683958, at *4 (D. Ariz. Sept. 2, 2015) (operating "a passive website, even if it displays advertisements that include infringing material, is insufficient to establish personal jurisdiction").

Plaintiff further argues that CoinMarketCap caused harm it knew Plaintiff would suffer in Arizona because their "intentional act has foreseeable effects in the forum." *Bancroft*, 223 F.3d at 1087.  Plaintiff argues that because CoinMarketCap.com is accessible in Arizona and because CoinMarketCap artificially deflated the ranking of HEX—which Plaintiff acquired and sold in the forum—the harm alleged was foreseeable.  Even if the Court were to agree with Plaintiff, the Court cannot find that Plaintiff demonstrates purposeful direction because he failed to establish CoinMarketCap intentionally targeted Arizona.  *See Calder*, 465 U.S. at 789–90; *LNS Enters. LLC*, 464 F. Supp. 3d at 1072.  Any alleged harm is too attenuated because Plaintiff's allegations center on a third party's (Binance.US) advertisements of CoinMarketCap.com as a website with reliable cryptocurrency rankings—not any conduct CoinMarketCap directed at Arizona.  *Bancroft*, 223 F.3d at 1087.

The Court must therefore turn to whether Plaintiff presented any evidence of purposeful availment that would justify the Court to exercise personal jurisdiction.  *See Pebble Beach Co.*, 453 F.3d at 1154 (purposeful availment "is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum").  As

previously discussed, Plaintiff does not dispute that CoinMarketCap is incorporated in Delaware, has no principal place of business in Arizona, and has no agent for service of process in Arizona, any licensure, mailing addresses, offices, or physical operations in Arizona. As such, the Court cannot justify exercising personal jurisdiction over CoinMarketCap. *See Cybersell, Inc.*, 130 F.3d at 415. Despite failing the first prong in the Ninth Circuit's three-prong test, the Court will continue the analysis.

**b.** Prong Two

Plaintiff bears the burden of demonstrating that "but for" CoinMarketCap's activity in Arizona, Plaintiff's claim would not have arisen. *See Ballard*, 65 F.3d at 1500. Plaintiff offers no specific arguments to satisfy this prong. Plaintiff broadly asserts that his "alleged injuries directly arise from and are the result of Defendants' publications of disparaging statements directed at Arizona and its direct contact with Arizona consumers. But for that conduct, Plaintiff would not have been injured." (Doc. 75 at 16.) CoinMarketCap counters that the Complaint fails to allege that the administration of the website's ranking system occurred in or was directed in Arizona. CoinMarketCap also notes that Plaintiff alleges no personal contact with CoinMarketCap or its website. CoinMarketCap thus argues that the only connection to Arizona is that Plaintiff in Arizona when his alleged injury occurred.

The Court finds that Plaintiff has failed to demonstrate that his claim arose out of CoinMarketCap's activities in Arizona. Plaintiff's "challenged conduct" of CoinMarketCap have nothing to do with Arizona. *See Walden*, 571 U.S. at 289; *see also Morrill*, 873 F.3d at 1142 (where the "sole connection to the forum state" is that plaintiff resides there, that connection is insufficient to establish specific jurisdiction over a non-resident corporation); *see also Shaw v. Vircurex*, No. 18-cv-00067-PAB-SKC, 2019 WL 2636271, at *4 (D. Colo. Feb. 21, 2019) (finding a lack of specific jurisdiction in a cryptocurrency case in which "[t]he only alleged connection between defendants and Colorado is harm suffered by a Colorado resident").

For these reasons, the Court does not find that CoinMarketCap's alleged conduct is "tethered to [Arizona] in any meaningful way," *Picot*, 780 F.3d at 1215, and that the only

connection between that alleged conduct and Arizona is that Plaintiff's injury occurred in Arizona. *See Shaw*, 2019 WL 2636271, at *4. Furthermore, because Plaintiff never alleges any personal contact with CoinMarketCap or its website, it is far too attenuated to demonstrate that "but for" Defendant's website being available in Arizona, HEX's artificial deflation would not have arisen. *See Doe*, 112 F.3d at 1051. Because Plaintiff does not allege claims that arise out of or relate to any in-forum activities, Plaintiff fails to satisfy prong two of the Ninth Circuit's test. *See LNS Enters. LLC*, 464 F. Supp. 3d at 1072.

### c. Prong Three

Because Plaintiff failed to meet his burden of demonstrating the first two prongs, the Court need not consider the third. *See Morrill*, 873 F.3d at 1142. However, the Court will address this prong regardless. Neither party addressed the Ninth Circuit's seven-factor test, *see* supra section III(A)(2)(c). CoinMarketCap does argue that: (1) exercising jurisdiction over it would violate "traditional notions of fair play and substantial justice, *see Int'l Shoe Co.*, 326 U.S. at 310; (2) under Plaintiff's theory, CoinMarketCap could be subject to any state that a user can access their website and allege harm from out-of-state conduct with no connection to the forum, *see id.* at 316; and (3) Defendant should not be subjected to litigation in Arizona, where it does not "reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and where the form has no connection to the suit other than the Plaintiff's residence.

Plaintiff contends CoinMarketCap Defendants intentionally availed itself to Arizona by partnering with Binance.US, because of its Arizona license as a money transmitter. Plaintiff therefore believes it is not unreasonable to burden Defendant with defending itself in Arizona. In Reply, CoinMarketCap asserts Plaintiff baselessly describes CoinMarketCap and Binance.US as a "partnership" based only on a referral website link. CoinMarketCap continues that a referral link alone does not create a partnership under the law, nor does it subject CoinMarketCap to personal jurisdiction in any forum that Binance.US transacts business. And notably, neither CoinMarketCap nor Binance.US are alleged to be Arizona corporations.

Although the parties did not brief the relevant seven-factor test, the Court will nonetheless weigh those factors. Factor one weighs in CoinMarketCap's favor because the only traceable act in Arizona is the accessibility of CoinMarketCap.com. Next, CoinMarketCap would be burdened by defending itself in Arizona because it has virtually no presence here—it is not an Arizona company, and it has no offices, employees, or service of process agents here. Factor three weighs in CoinMarketCap's favor because it is incorporated in Delaware. Factor four also weighs in CoinMarketCap's favor because the only interest Arizona has in this litigation is tied to Plaintiff's status as an Arizona resident and his alleged injury occurred here. The law dictates that this alone is not enough. Additionally, Plaintiff does not allege that he relied on CoinMarketCap's rankings, or that he ever looked at their website before purchasing HEX. It follows that Arizona is not the most efficient judicial resolution of the controversy, as CoinMarketCap has no ties to Arizona beyond its website's accessibility. Factor six, however, weighs in Plaintiff's favor because as a resident of the forum, Arizona would be the most convenient forum for him. Finally, an alternative forum exists in Delaware, where CoinMarketCap is incorporated. Weighing all factors, CoinMarketCap prevails in demonstrating that it would be unreasonable for the Court to exercise specific jurisdiction over it.

For these reasons, the Court finds that Plaintiff has failed to allege personal jurisdiction over Defendant CoinMarketCap. The Court will therefore grant Defendant CoinMarketCap's MTD for lack of personal jurisdiction. The Court need not reach Defendant's arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6) as they are moot.

**C.    Personal Jurisdiction Over BCM and Individual Defendants**

BCM moves to Dismiss Plaintiff's Complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). BCM argues that besides acquiring CoinMarketCap in 2020, Plaintiff's claims have nothing to do with BCM. First, BCM contends no personal jurisdiction can be established because it is a foreign investment company with no alleged offices, employees, or operations anywhere in the United States. Next, BCM argues that

specific jurisdiction does not exist because Plaintiff did not allege that the alleged suppression of HEX is tied to BCM's actions with Arizona, nor do Plaintiff's alleged injuries arise from, or relate to, any alleged contacts by BCM with Arizona.  BCM also argues that Plaintiff conflates BCM with Binance Holdings Ltd., a separate and distinct entity.

Plaintiff again claims that the Court can exercise personal jurisdiction over BCM under the national service of process provision of the CEA.  *See* 7 U.S.C. § 25(c).  Plaintiff in his Response also raises for the first time that the Court has personal jurisdiction over BCM because it acted as the alter ego of Binance.US.  Plaintiff contends that BCM could influence market prices by knowingly directing users to false rankings set by CoinMarketCap, which is allegedly BCM's subsidiary and strategic partner.  Lastly, Plaintiff claims that:

> (1) Binance misrepresented the true ranking of HEX through CoinMarketCap.com, which is deemed as "objective" (while other websites ranked HEX at 201)[,] (2) Binance's misrepresentations occurred in connection with advertising itself as a place to buy and sell cryptocurrency, and (3) Plaintiff occurred injury when Binance failed to disclose the true ranking of HEX, which he relied on to sell HEX during the Suppression period.

(Doc. 73 at 5.)

However, outside his claims for personal jurisdiction under the CEA, and BCM's acting as an alter-ego for Binance.US, Plaintiff fails to assert whether the Court has general jurisdiction or if specific jurisdiction can be exercised under the Ninth Circuit's test.

### 1. General Personal Jurisdiction

Plaintiff does not allege that BCM is incorporated anywhere in the United States or where its principal place of business is.  Plaintiff also does not argue general jurisdiction over Defendant.  Absent sufficient factual allegations, general jurisdiction may only be established whether BCM's contacts with Arizona are so "continuous and systematic as to render [it] essentially at home in the forum State."  *Daimler*, 571 U.S. at 139 (internal quotation marks omitted).  BCM provides some evidence that it is a foreign investment company organized under the laws of the British Virgin Islands.  (*See* Doc. 71 at 4.)

1    Plaintiff does not dispute this.  Plaintiff does, however, allege that it is unclear where BCM

2    is headquartered.   BCM counters that the "lack of any headquarters does not make

3    [Arizona] its jurisdictional home."  *See Reynolds v. Binance Holdings Ltd.*, 481 F. Supp.

4    3d 997, 1003 (N.D. Cal. 2020).

5        The Court finds that Plaintiff failed "to identify other facts, alleged or otherwise,

6    that would make this case exceptional under *Daimler* and place [BCM] 'at home' in

7    [Arizona]."  *Id.*  Furthermore, where factual allegations could be drawn from the Complaint

8    to suggest Plaintiff satisfies *Daimler*, BCM argues that Plaintiff has improperly conflated

9    BCM with Binance Holdings, Ltd., a non-party that operates a foreign cryptocurrency

10   exchange.  (*See, e.g.*, Doc. 1 at 10 ¶ 35) ("Binance has regularly and intentionally engaged

11   in numerous online cryptocurrency transactions inside the United States, with United States

12   residents. In addition, Binance has promoted, inside the United States, the sale of digital

13   assets on its exchange.").   Plaintiff does not refute these assertions in his Response to

14   BCM's MTD.[2]  (*See* Doc. 73.)

15       Finally, BCM notes that non-party Binance Holdings Ltd. has been involved in other

16   federal lawsuits like the one here, and the courts have found no personal jurisdiction over

17   the non-party.  *See Reynolds*, 481 F. Supp. 3d 997.  Accordingly, the Court has no basis to

18   find general jurisdiction.

19       **2.  Specific Personal Jurisdiction**

20       The Court will analyze the Ninth Circuit's three-prong test to determine whether it

21   can exercise specific jurisdiction over BCM.  *See LNS Enters. LLC*, 464 F. Supp. 3d at

22   ---

[2] *See also* BCM's further arguments regarding Plaintiff's allegations: "Plaintiff's assertion

23   that Binance Holdings Ltd. regularly engages in transactions with U.S. customers is belied
     by his very own allegations.  As alleged in the Complaint, Binance.com has not been

24   available to U.S. users since 2019—well before the alleged suppression period began in
     September 2020. [(Doc. 1 at 10 ¶ 36.)]  During the time period relevant to the allegations

25   in the Complaint, Plaintiff alleges that U.S. users have bought, sold, and traded
     cryptocurrencies on the Binance.US platform, which is owned and operated by Defendant

26   [Binance.US] Trading Services Inc. [(*Id.* ¶ 41.)]  Plaintiff then questions 'whether there is
     any meaningful distinction' between Binance Holdings Ltd and [Binance.US] Trading

27   Services. [(*Id.* ¶ 67.)]  There is no basis to equate [Binance.US] with Binance Holdings
     Ltd., and then to equate Binance Holdings Ltd. with BCM. Allegations must be supported

28   by facts, not innuendo.  *See Barba v. Seung Heun Lee*, No. CV 09-1115-PHX-SRB, 2009
     WL 874768, at *4 (D. Ariz. Nov. 4, 2009)."  (Doc. 71 at 8 n.5.)  Plaintiff does not rebut
     this or provide an argument to the contrary.

1072.

### a. Prong One

Despite bearing the burden to establish this prong, Plaintiff does not analyze this prong. *See Morrill*, 873 F.3d at 1142. BCM does argue that Plaintiff has failed to allege purposeful direction and availment. BCM also argues that Plaintiff fails to allege that any of its conduct regarding the suppression of HEX and the administration of CoinMarketCap's rankings was directed at Arizona specifically.

BCM also argues that Plaintiff erroneously conflates BCM with Binance Holdings Ltd. to allege that BCM "has regularly and intentionally engaged in numerous online cryptocurrency transactions inside the United States" and "has promoted, inside the United States, the sale of digital assets on its exchange. (*See* Docs. 71 at 9; 1 at 10 ¶ 35.) BCM contends there is no factual or legal basis to merge these two entities, nor does Plaintiff set forth a basis to do so in his Response.

Because mere accessibility of a website in the United States does not give rise to specific jurisdiction, see *Cybersell, Inc.*, 130 F.3d at 415, and because Plaintiff does not refute the supposed improper conflation of BCM and Binance Holdings Ltd., the Court finds that Plaintiff has not established that BCM directed an act directed at Arizona or purposefully availed itself to the forum. *See Matus v. Premium Nutraceuticals, LLC*, No. EDCV 15-01851 DDP (DTBx), 2016 WL 3078745, *3 (C.D. Cal. May 31, 2016) ("Absent 'something more' than the maintenance of a minimally interactive website, Plaintiff has not met its burden to satisfy even the purposeful availment prong of the specific jurisdiction test.").

### b. Prong Two

To satisfy the second prong, Plaintiff must demonstrate that "but for" BCM's activity in Arizona, Plaintiff's claim wouldn't have arisen. *See Ballard*, 65 F.3d at 1500. Again, Plaintiff fails to make any arguments under this prong. BCM notes that Plaintiff does not allege that his claims arise out of or relate to BCM's activity directed at Arizona. The Court agrees that Plaintiff did not meet his burden to allege that his injuries would not

have occurred but for BCM's Arizona activity.  Plaintiff's only allegation tying any of BCM's conduct to Arizona was that he resided there at the time he purchased, sold, and was allegedly harmed by the suppression of HEX.  But an injury to a forum resident is insufficient, "rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Walden*, 571 U.S. at 1122; *see also Shaw*, 2019 WL 2636271, at *4 (finding a lack of specific jurisdiction in a cryptocurrency case in which "the only alleged connection between defendants and Colorado is harm suffered by a Colorado resident").  Prong two is thus not satisfied.

### c. Prong Three

Despite Plaintiff not meeting his burden under prongs one and two, the Court will nonetheless analyze the third, weighing the seven factors articulated by the Ninth Circuit. *See Harris Rutsky & Co. Ins. Servs., Inc.*, 328 F.3d at 1132.

First, Plaintiff fails to allege any facts that satisfy factor one.  Second, BCM's burden to defend itself in Arizona would be substantial because BCM is an international company that conducts no business in the United States.  Third, there are no allegations that any state has had any contacts with BCM.  Fourth, Plaintiff fails to allege facts to support this factor, as the only tie to Arizona is that his alleged injury occurred in the forum. Fifth, Plaintiff does not allege that Arizona would provide the most efficient resolution of this controversy, and the Court finds no reasons to support that.  Sixth, the Court acknowledges that Arizona would be the most convenient for Plaintiff because it is where he resides.  Lastly, the Court finds that Plaintiff fails to allege any other forum in the United States where Defendant BCM has had any connection.

As such, the Court finds that almost all seven factors weigh in BCM's favor and thus specific jurisdiction cannot be exercised under the Ninth Circuit's three-prong test. *See LNS Enters. LLC*, 464 F. Supp. 3d at 1072.

### 3. Personal Jurisdiction Under the CEA

Plaintiff also raises the exact same arguments here as he did in response to Binance.US and CoinMarketCap's MTD under the CEA's national service of process

- 22 -

provision.  For the same reasons stated above, the Court rejects this argument.  *See also Fire & Police Pension*, 368 F. Supp. 3d at 695 n.11.

### 4.  Personal Jurisdiction Under Plaintiff's Alter-Ego Assertions

In his Response, Plaintiff for the first time argues that BCM is the alter ego of Binance.US, and that the Court may therefore exercise personal jurisdiction over it via Binance.US's contacts with Arizona.  Despite the Court dismissing Binance.US as a party to this suit for lack of personal jurisdiction, the Court will still engage in an analysis.

"[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate."  *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)).   Under this test, Plaintiffs must make out a prima facie case that "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate entities would result in fraud or injustice."  *Harris Rutsky & Co. Ins. Servs., Inc.*, 328 F.3d at 1134 (cleaned up).  "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each.  *Rodriguez v. Whole Foods Mkt. Inc.*, No. CV-18-08301-PCT-SMB, 2019 WL 3220538, at *4 (D. Ariz. July 17, 2019) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2013)).

### a.  Unity of Interest

Arizona courts generally consider several factors in considering unity of interest.  These include: (1) the parent's stock ownership; (2) common officers or directors; (3) financing of subsidiary by the parent; (4) the parent's payment of salaries and other expenses of subsidiary; (5) any failure of the subsidiary to maintain formalities of separate corporate existence; (6) similarity of logo; and (7) plaintiff's lack of knowledge of the subsidiary's separate corporate existence.  *Id.* at *3.  Furthermore, "corporate status will not be lightly disregarded" because the test envisions "substantially total control over the

management and activities" and "isolated occurrences of some of these factors are not enough." *Id.* (cleaned up).

When countering this claim, BCM again asserts that Plaintiff confuses BCM with Binance Holdings Ltd., a foreign cryptocurrency exchange platform that has already been found to not be an alter ego of Binance.US, when it refers to actions of "Binance" or "BCM." *See Reynolds*, 481 F. Supp. 3d at 1004–09.

### 1. Stock Ownership

Plaintiff alleges that "on information and belief" BCM and Individual Defendant Changpeng Zhao own a significant portion of Binance.US. (Doc. 1 at 11 ¶ 42.) BCM counters that Plaintiff never alleges that Binance.US is a subsidiary of BCM, only that Binance.US is an "affiliate." (*See* Doc. 1 at 2 ¶ 5(c)). BCM further argues that even if it had an ownership interest in Binance.US, "total ownership" is "alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073. Lastly, BCM contends that even if Zhao had an ownership interest in Binance.US, it "does not support an inference that [BCM] has an ownership interest in [Binance.US]." *Reynolds*, 491 F. Supp. 3d at 1008 n.7. Without more from Plaintiff, the Court agrees that there are insufficient allegations that BCM exercises the requisite level of control over Binance.US. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (rejecting conclusory allegations of a unity of interest between two corporate entities founded upon "information and belief").

### 2. Common Officers and Directors

Plaintiff alleges that the CEO of Binance.US stated in an interview that she reports to Binance.US's board of directors, which included Individual Defendants Zhao and Wei Zho (Binance's then CFO). (Doc. 1 at 35 ¶ 201.) BCM argues that the mere sharing of officers and directors "does not undermine the entities' formal separation." *Ranza*, 793 F.3d at 1074; *see also Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (finding there was no alter ego relationship even where parent and subsidiary had overlapping directors); *see also AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC, 2016 WL 5851622, at *4 (D. Ariz. Oct. 6, 2016) ("[Plaintiff]

does identify some common officers and directors, but such overlap is not sufficient to establish an alter ego relationship").  The Court finds that this factor weighs in Plaintiff's favor but acknowledges BCM's point that it is not alone dispositive.

### 3.  Financing

Plaintiff makes no allegations regarding BCM financing Binance.US, paying any of its debts, or that Binance.US is inadequately capitalized.  The Court therefore agrees with Defendant's argument that "[a] plaintiff's failure to discuss a unity of interest factor weighs against the finding of alter ego liability."  *Reynolds*, 481 F. Supp. 3d at 1007.

### 4.  Payments

Plaintiff fails to allege that BCM pays any of Binance.US's expenses, salaries, or that the two entities commingle funds and assets.  This factor thus favors BCM.

### 5.  Corporate Formalities

Plaintiff alleges that Binance.US "uses Binance's wallet, matching engine, and other technologies" and "offers a very similar interface."  (Doc. 1 at 11 ¶¶ 41, 43.)  However, BCM argues that Plaintiff has conflated BCM with Binance Holdings Ltd., and that Plaintiff does not allege how this arrangement demonstrates BCM's disregarding corporate formalities in a way that makes Binance.US a "mere instrumentality" of BCM.  *See Rodriguez*, 2019 WL 3220538, at *3.  Moreover, Defendant argues that even if Binance.US licenses the name "Binance" and certain technologies from Binance, a licensing arrangement is insufficient to confer personal jurisdiction.  *See Bancroft*, 223 F.3d at 1086. The Court notes that Plaintiff again fails to dispute BCM's assertions that it is erroneously conflated with Binance Holdings Ltd., when Plaintiff refers to "Binance."  Plaintiff also fails to cite any law demonstrating that this factor should weigh in his favor.  Therefore, the Court finds this factor weighs in favor of BCM.

### 6.  Similarity of Logo

Plaintiff argues that:
Binance takes American users to Binance.US's website (assuming that there is a distinction at all) and Binance.US provides Binance Services, as that phrase is defined in the Binance Terms, in that it utilizes internet or

blockchain technologies developed by Binance and one or more Binance ecosystem components such as 'digital asset trading platform.'

(Docs. 73 at 13; 1 at 34–35 ¶ 200.)  Plaintiff also alleges that "[a]s a Binance Operator, Binance.US currently lacks a CEO and the only individuals remaining on its board are Binance executives." (Doc. 1 at 35 ¶ 203.)  BCM again counters that Plaintiff has conflated BCM with Binance Holdings Ltd., and that a federal court has already held that the allegations concerning Binance Holdings Ltd. and Binance.US's "websites and technological platforms do not weigh in favor of finding alter-ego liability." *Reynolds*, 481 F. Supp. 3d at 1007.  BCM further argues that even separate entities representing themselves "as one online does not rise to the level of unity of interest required to show companies are alter egos." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016).  Because Plaintiff does not dispute that he has conflated BCM with Binance Holdings Ltd. and fails to cite any law supporting his argument, the Court agrees with BCM that this factor weighs in BCM's favor.

### 7.  Lack of Knowledge

Plaintiff alleges that he is unsure where "Binance ends and Binance.US begins or even whether there is any meaningful distinction between the two at all." (Doc. 1 at 16 ¶ 67.)  BCM counters that Plaintiff "must do more [than] make conclusory statements regarding an alter ego relationship . . . the plaintiff must allege specific facts supporting application of the alter ego doctrine." *Barba v. Seung Heun Lee*, No. CV-09-1115-PHX-SRB, 2009 WL 8747368, at *4 (D. Ariz. Nov. 4, 2009).  The Court agrees that Plaintiff's allegations are merely conclusory statements, and that this factor weighs in BCM's favor. For these reasons, the Court finds Plaintiff has failed to establish a unity of interest.  *See Rodriguez*, 2019 WL 3220538, at *3.

### b.  Fraud or Injustice

The second prong of the alter ego test requires a showing that failure to disregard the separate corporate identities "would result in fraud or injustice." *Williams*, 851 F.3d at 1021.  Plaintiff alleges that:

As a Binance Operator, Binance.US is bound by the Binance Terms as well

as by the terms of its supposed "brand partnership" with Binance and any technology licenses with Binance. Binance.US is also responsible for ensuring that Binance's US operations, including those of its Operator and strategic partner CoinMarketCap.com, comply with American law.

(Doc. 73 at 13.)

BCM counters that Plaintiff fails to allege any facts under the second prong that demonstrate fraud or an inequitable result. The Court agrees. Plaintiff makes mere conclusory statements without factual allegations to assert fraud or injustice. *See Rodriguez*, 2019 WL 3220538, at *4 (noting that Plaintiff does not even address how it would sanction a fraud or promote injustice"); *see also Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 465 (N.D. Cal. 2019) (finding that alter-ego theory failed because the Complaint failed to even "mention[] a possible inequitable result"). Plaintiff does not mention how the alleged partnership creates a fraud or injustice, which "must relate to the forming of the corporation or abuse of the corporate form, not a fraud or injustice generally." *In re Western W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1133 (D. Nev. 2009). Because Plaintiff fails to allege such facts, the Court finds Plaintiff's claims fail under both prongs of the alter ego test. *See Rodriguez*, 2019 WL 3220538, at *4.

### 5. Personal Jurisdiction Over Binance Individual Defendants

The Binance Individual Defendants assert that there is no personal jurisdiction over them because—as Plaintiff alleges—they live in Taiwan, Malta, and outside of Arizona. (*See* Doc. 1 at 9–10 ¶¶ 32–34.) Furthermore, the Binance Individual Defendants argue that there are no allegations that any of them had any contact with Arizona, none of them live in the United States, and that the fiduciary shield doctrine prevents the assertion of personal jurisdiction over them. Plaintiff offers no competing arguments and fails to defend personal jurisdiction in his Response. The Binance Individual Defendants describe Plaintiff's allegations as nothing more than vague descriptions of their alleged positions in Binance.

The Complaint alleges that the Binance Individual Defendants are "control persons

1   of the Corporate Defendants," with "significant knowledge" and "financial interests" in
2   certain cryptocurrencies. (*See* Doc. 1 at 12 ¶¶ 50–51, 23 ¶ 104.) However, the Binance
3   Individual Defendants note that the Complaint does not identify any affirmative conduct
4   attributable to them or any conduct connecting them with the suppression of HEX.

5       Defendants argue that a *prima facie* case for general jurisdiction cannot be
6   established because none of the Binance Individual Defendants reside in Arizona. The
7   Complaint alleges that Changpeng Zhao resides in Taiwan, Yi He resides in Malta, and
8   that although Plaintiff does not know where Ted Lin resides, that he was not a resident of
9   Arizona. (*Id.* at 8–9, 33–34 ¶¶ 27, 32–34, 186–87, 198.) The Court thus agrees that it does
10  not have general jurisdiction over these defendants. *See Daimler*, 571 U.S. at 137. The
11  Complaint is similarly devoid of allegations of affirmative conduct that would give rise to
12  specific jurisdiction. With no alleged facts, and no arguments made by Plaintiff in his
13  Response, the Court agrees that there is no *prima facie* case for specific personal
14  jurisdiction either.

15      The Binance Individual Defendants also object to personal jurisdiction based on an
16  attenuated association with BCM, arguing such an exercise is not available under the
17  fiduciary shield doctrine. The fiduciary shield doctrine provides personal jurisdiction over
18  nonresident corporate directors and officers based on the contacts with their employer. *See*
19  *M2 Software Inc. v. M2 Comms., L.L.C.*, 149 F. App'x 612, 615 (9th Cir. 2005); *Davis v.*
20  *Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). For Plaintiff to overcome the
21  fiduciary shield doctrine, he must establish that (1) CoinMarketCap or BCM are alter egos
22  of the Binance Individual Defendants, or (2) the Binance Individual Defendants were the
23  "guiding spirit" behind the wrongful conduct, *see Davis*, 885 F.2d at 521, 523 n.10, in that
24  they "personally directed the activities toward the forum state giving rise to the complaint."
25  *Ind. Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 750 (C.D. Cal.
26  1995). Likewise, the corporate officer must be the "primary participant in the alleged
27  wrongdoing" or have "had control of, and direct participation in the alleged activities."
28  *AMA Multimedia LLC*, 2020 WL 5988224, at *2 (citation omitted).

Plaintiff fails to allege any of these claims.  To start, Plaintiff does not allege that BCM or CoinMarketCap are alter egos of the Binance Individual Defendants.  *See Success Is Yours, Inc. v. LifeSuccess Publ'g.*, LLC, No. CV10-0758-PHX DGC, 2010 WL 4225880, at *3 (D. Ariz. Oct. 21, 2010) (finding that conclusory allegations about defendants being "the guiding spirit and driving force behind" the alleged wrongdoing are "not sufficient").  To the extent Plaintiff intended the Binance Individual Defendants to be included in the argument for BCM being an alter ego of Binance.US, the Court has already determined in this Order that Plaintiff failed to allege such a claim.

Lastly, Plaintiff never alleges that the Binance Individual Defendants directed the suppression of HEX.  Rather, at most Plaintiff alleges that the Binance Individual Defendants were "aware at the time Binance purchased CoinMarketCap.com that there were issues with its rankings" and that, "[u]pon information and belief," the Binance Individual Defendants have "large holdings" in certain cryptocurrencies that compete with HEX.  (*See* Doc. 1 at 12 ¶ 50, 25 ¶ 130.)  But as the Binance Individual Defendants note, mere awareness or incentives to suppress HEX is not the same allegation as stating that they personally directed, ratified, or even participated in the alleged suppression.  *See Tangiers Invs., L.P. v. Americhip Int'l, Inc.*, No. 11CV339 JLS BGS, 2011 WL 3299099, at *2 (S.D. Cal. Aug. 1, 2011) (plaintiff's conclusory allegations that fraud occurred with CEO's "knowledge and support" was insufficient to conclude that he "was the driving force or primary participant in the alleged wrongdoing").  The same applies here.  For all these reasons, the Court finds that Plaintiff has failed to establish personal jurisdiction over the Binance Individual Defendants.

### 6.  Plaintiff's Request for Additional Discovery

Finally, Plaintiff argues that if the Court is inclined to grant BCM's MTD for lack of personal jurisdiction, which it is, that Plaintiff first be given time to conduct further jurisdictional discovery.  *See Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts

is necessary." (quoting *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

On the other hand, Defendants BCM and Binance Individual Defendants argue that Plaintiff's request should be denied because his jurisdictional allegations are fundamentally flawed, and Plaintiff fails to make a showing that discovery would produce facts establishing personal jurisdiction. *See Pebble Beach Co.*, 453 F.3d at 1160 ("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." (cleaned up)). As such, to obtain additional discovery Plaintiff must demonstrate "more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

Here, Plaintiff's entire argument for personal jurisdiction over BCM relies on his arguments under the CEA, which the Court rejects as a matter of law, and alter ego claim— essentially conceding that the Court lacks general or specific personal jurisdiction over BCM in Arizona. Furthermore, Plaintiff does not even attempt to argue personal jurisdiction for the Binance Individual Defendants in his Response. Like the *Reynolds* court, which denied jurisdictional discovery on an alter ego theory between Binance Holdings Ltd. and Binance.US because the plaintiff's "bare allegations [were] insufficient to justify jurisdictional discovery," the Court finds the same true here. 481 F. Supp. 3d at 1010. Just like in *Reynolds*, here Plaintiff fails "to offer any details supporting the assertion that discovery will establish facts supporting this Court's jurisdiction over [BCM] under Plaintiff's alter ego theory." *Id.*; *see also Armstrong v. Gen. Motors LLC*, No. CV-20-00284-PHX-DLR, 2020 WL 8024424, at *3 (D. Ariz. Oct. 29, 2020) (denying jurisdictional discovery where plaintiff merely "postulates" that defendant "might not have followed all the corporate formalities"); *see also Sutcliffe v. Honeywell Int'l, Inc.*, No. CV-13-01029-PHX-PGR, 2015 WL 1442773, at *10 (D. Ariz. Mar. 30, 2015) (denying "jurisdictional discovery related to the internal relationships among the various Airbus-related entities").

1   Therefore, the Court will deny Plaintiff's request for jurisdictional discovery and

2   grant BCM's MTD for lack of personal jurisdiction.  As such, the Court need not reach

3   BCM and the Binance Individuals' arguments for failure to state a claim and failure to

4   provide proper service, as they are moot.

5   **IV.     DISMISSED WITH PREJUDICE**

6       "A district court should grant leave to amend even if no request to amend the

7   pleading was made, unless it determines that the pleading could not possibly be cured by

8   the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned

9   up).  Plaintiff's Complaint, Response, and oral argument assertions fail to assert any facts

10  that could satisfy personal jurisdiction.  Plaintiff's Complaint will therefore be dismissed

11  with prejudice.

12  **V.      CONCLUSION**

13      **IT IS ORDERED** granting Defendants Binance.US, CoinMarketCap, and BCM's

14  MTD.  (Docs. 70; 71; 72.)

15      **IT IS FURTHER ORDERED** dismissing Plaintiff's Complaint **with prejudice**.

16  (Doc. 1.)

17      **IT IS FURTHER ORDERED** instructing the Clerk of Court to terminate this case.

18  Dated this 10th day of February, 2023.

19

20

21

22      Honorable Susan M. Brnovich
        United States District Judge

23

24

25

26

27

28